**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

IN RE SOLAREDGE TECHNOLOGIES,
INC. SECURITIES LITIGATION

---------------------------------------------------------

THIS DOCUMENT RELATES TO: ALL
ACTIONS

---------------------------------------------------------

X
:
:
:
:
:
:
:
:
:
:
:
:
X

No. 1:23-cv-09748-GHW

**CLASS ACTION**

**ORAL ARGUMENT REQUESTED**


**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR**
**MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**


GIBSON, DUNN & CRUTCHER LLP

Christopher D. Belelieu
Nathan C. Strauss
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    A.    PLAINTIFFS HAVE FAILED TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS FOR SECURITIES FRAUD ............................ 3

        1.    *The Allegations of the Purported Confidential Witnesses Lack Sufficient Particularity.* ................................................................... 3

        2.    *Plaintiffs Fail to Address the Temporal Defects of the CW Statements.* .... 5

        3.    *Plaintiffs Fail to Establish the CWs' Personal Knowledge of Facts Underlying the Alleged Practices.* ............................................. 6

    B.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISREPRESENTATION ................................................................................ 8

        1.    *Plaintiffs Fail to Allege Any Statement Was False When Made.* ................ 9

        2.    *Plaintiffs Fail to Plead That Defendants Had a Duty to Disclose Any Additional Information During the Class Period.* ................................... 12

    C.    PLAINTIFFS FAIL TO DISPUTE THAT SEVERAL OF DEFENDANTS' STATEMENTS ARE PROTECTED FORWARD-LOOKING STATEMENTS .................................................................................... 15

    D.    MANY OF DEFENDANTS' STATEMENTS ARE INACTIONABLE CORPORATE OPTIMISM AND PUFFERY. ..................................................... 16

    E.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED SCIENTER .............. 17

        1.    *The CAC Fails to Allege That Any of the Individual Defendants Engaged in Conscious Misbehavior or Recklessness.* .............................. 17

            a.    Plaintiffs Do Not Allege That Inventory Reports and Meeting Information Contradicted Defendants' Public Statements ........... 17

b. The CAC Does Not Sufficiently Allege Any Defendant Was Aware of the Allegedly Aggressive Sales Tactics ........................ 19

c. Defendants' Statements About Changing Market Dynamics Are Not Evidence of Scienter ................................................................ 20

d. The CAC Does Not Sufficiently Allege Any Defendant Was Aware of the Allegedly Inflated Sell-Through Forecasts ............. 21

2. *Plaintiffs' Reliance on the Magnitude of Difference Between Projected and Actual Revenue in Q3 2023 Is Misplaced.* ........................................... 21

3. *Plaintiffs' Arguments Regarding the Company's Core Operations and Defendant Lando's Qualities Fail.* ........................................................ 22

4. *Plaintiffs Do Not Adequately Allege Corporate Scienter.* ........................ 23

5. *Even Under a "Holistic View," the CAC Does Not Create a Strong Inference of Scienter.* ................................................................................. 24

6. *Plaintiffs Have Not Pleaded Any Scienter Allegations Against Defendants Lowe or Danziger.* ................................................................. 25

F. PLAINTIFFS FAIL TO STATE A 20(a) CLAIM ............................................. 25

CONCLUSION ................................................................................................................ 25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AT&T/DirecTV Now Sec. Litig.*,
　480 F. Supp. 3d 507 (S.D.N.Y. 2020)...................................................................................19

*In re ATI Techs., Inc. Sec. Litig.*,
　216 F. Supp. 2d 418 (E.D. Pa. 2002) ...................................................................................9

*In re Atlas Air Worldwide Holdings, Inc.*,
　324 F. Supp. 2d 474 (S.D.N.Y. 2004).................................................................................23

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
　456 F. Supp. 2d 576 (S.D.N.Y. 2006).................................................................................8

*Barilli v. Sky Solar Holdings, Ltd.*,
　389 F. Supp. 3d 232 (S.D.N.Y. 2019).................................................................................15

*Bialic v. Enphase Energy Inc.*,
　No. 5:24-cv-03216 (N.D. Cal.) (July 23, 2024)...................................................................2

*In re Burlington Coat Factory Sec. Litig.*,
　114 F.3d 1410 (3d Cir. 1997).................................................................................................5

*Chapman v. Mueller Water Prods., Inc.*,
　466 F. Supp. 3d 382 (S.D.N.Y. 2020)..............................................................................7, 24

*In re Citigroup Inc. Sec. Litig.*,
　753 F. Supp. 2d 206 (S.D.N.Y. 2010).................................................................................19

*City of Providence v. Aeropostale, Inc.*,
　2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ......................................................................15

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*,
　477 F. Supp. 3d 123 (S.D.N.Y. 2020).................................................................................6

*In re Complete Mgmt. Inc. Sec. Litig.*,
　153 F. Supp. 2d 314 (S.D.N.Y. 2001).................................................................................22

*In re Dentsply Sirona, Inc. Sec. Litig.*,
　665 F. Supp. 3d 255 (E.D.N.Y. 2023) .................................................................................5

*In re DraftKings Inc. Sec. Litig.*,
　650 F. Supp. 3d 120 (S.D.N.Y. 2023).................................................................................5, 6

*Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
　794 F.3d 297 (2d Cir. 2015)...............................................................................................5, 9

*Fogel v. Wal-Mart de Mex. SAB de CV*,
　2017 WL 751155 (S.D.N.Y. Feb. 27, 2017)...........................................................................16

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

*Francisco v. Abengoa, S.A.*,
   481 F. Supp. 3d 179 (S.D.N.Y. 2020)................................................................6

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010).................................................................7

*In re Frontier Comm'cns, Corp. S'holder Litig.*,
   2020 WL 1430019 (D. Conn. Mar. 24, 2020) ......................................................7

*Further v. Ericsson LM Tel. Co.*,
   363 F. App'x 763 (2d Cir. 2009) ........................................................................2

*Gavish v. Revlon, Inc.*,
   2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)................................................4, 6

*In re Gen. Elec. Co. Sec. Litig.*,
   857 F. Supp. 2d 367 (S.D.N.Y. 2012).................................................................23

*In re Gentiva Sec. Litig.*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...............................................................19

*Gross v. AT&T Inc.*,
   2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021)..................................................3, 4

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
   2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022), *report and recommendation
   adopted*, 2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023).............................3, 4, 11, 12

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
   422 F. Supp. 3d 821 (S.D.N.Y. 2019)..................................................................7

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*,
   445 F. App'x 368 (2d Cir. 2011) ...............................................................17, 25

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
   34 F. Supp. 3d 298 (S.D.N.Y. 2014)..................................................................25

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020)...............................................................................24

*Karimi v. Deutsche Bank Aktiengesellschaft*,
   607 F. Supp. 3d 381 (S.D.N.Y. 2022)................................................................20

*Lewis v. YRC Worldwide Inc.*,
   2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) ......................................................6

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020)..............................................................3, 5

*Lowe v. Tandem Diabetes Care Inc.*,
   2024 WL 1898473 (S.D. Cal. Apr. 30, 2024)......................................................7

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

*Lozada v. TaskUs, Inc.*,
   2024 WL 68571 (S.D.N.Y. Jan. 5, 2024) ...................................................................................3

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ......................7

*Menora Mivtachim Insurance Ltd. v. Int'l Flavors & Fragrances Inc.*,
   2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ...........................................................................8

*Moshel v. Sasol Ltd.*,
   481 F. Supp. 3d 280 (S.D.N.Y. 2020)......................................................................................20

*Nandkumar v. AstraZeneca PLC*,
   2023 WL 3477164 (2d Cir. May 16, 2023) ..............................................................................20

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*,
   2013 WL 1188050 (D. Conn. Mar. 23, 2013) ............................................................................4

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
   455 F. App'x. 10 (2d Cir. 2011) ...............................................................................................18

*In re Nielsen Holdings PLC Sec. Litig.*,
   510 F. Supp. 3d 217 (S.D.N.Y. 2021)......................................................................................22

*In re Nokia Oyj Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006).........................................................................................4

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)...............................................................................................16, 17

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018)......................................................................................17

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019)........................................................................................13

*Ortiz v. Canopy Growth Corp.*,
   537 F. Supp. 3d 621 (D.N.J. 2021) .....................................................................................15, 16

*In re Pareteum Sec. Litig.*,
   2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021).........................................................................22

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) .................................................................................................18

*Robeco Cap. Growth Funds SICAV - Robeco Glob. Consumer Trends v. Peloton
   Interactive, Inc.*,
   665 F. Supp. 3d 522 (S.D.N.Y. 2023)...........................................................................9, 14, 17

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)......................................................................................................2

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)..................................................................................22

*In re Sadia, S.A. Sec. Litig.*,
643 F. Supp. 2d 521 (S.D.N.Y. 2009)...................................................................7

*In re Salix Pharms., Ltd.*,
2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).....................................................16

*Schiro v. Cemex, S.A.B. de C.V.*,
396 F.Supp.3d 283 (S.D.N.Y. 2019)...........................................................9, 10, 14

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
239 F. Supp. 2d 1351 (N.D. Ga. 2002) ...............................................................10

*Sgalambo v. McKenzie*,
739 F. Supp. 2d 453 (S.D.N.Y. 2010)..................................................................18

*Siegel v. Bos. Beer Co., Inc.*,
2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022) ................................................14, 15

*In re Sierra Wireless, Inc. Sec. Litig.*,
482 F. Supp. 2d 365 (S.D.N.Y. 2007)....................................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)........................................................7

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
248 F. Supp. 3d 428 (S.D.N.Y. 2017)..................................................................24

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
417 F. Supp. 3d 379 (S.D.N.Y. 2019)..................................................................18

*Steinberg v. Ericsson LM Tel. Co.*,
2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ...................................................6, 7

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
675 F. Supp. 3d 273 (E.D.N.Y. 2023) .................................................................14

*Total Equity Cap., LLC v. Flurry, Inc.*,
2016 WL 3093993 (S.D.N.Y. June 1, 2016) .......................................................22

*In re Urb. Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015) .....................................................................9

*Weston v. DocuSign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023) .................................................................18

*In re Yukos Oil Co. Secs. Litig.*,
2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ........................................................9

## PRELIMINARY STATEMENT

Plaintiffs' Consolidated Amended Complaint ("CAC") advances a theory of securities fraud that finds no support in its own factual allegations, the law, or simple common sense. Plaintiffs' Opposition ("Opp.") doubles down on this baseless theory, pushing the same false narrative that SolarEdge "forced" and "pushed" unwanted product on customers in an effort to inflate its revenue. But conclusory and fanciful allegations do not pass muster under the PSLRA and Second Circuit law. They each require much more.

Plaintiffs have not, and cannot, plead an actionable misrepresentation. Whether because the statements were not false, there was no duty to disclose additional facts, the purported misstatements are protected forward-looking statements or mere puffery, or the heightened pleading standard of Rule 9(b) and the PSLRA have not been met, Plaintiffs' allegations suffer from a number of uncorrectable deficiencies. Looking more broadly at Plaintiffs' case, it is clear why they cannot make out an actionable misrepresentation. This case hinges on allegations that Defendants failed to disclose a supposed scheme to force product on customers to pad quarterly revenues. Plaintiffs allege that for quarter *after* quarter *after* quarter—indeed, allegedly stretching back to when Defendant Lando led the sales division in 2019—SolarEdge sought to aggressively sell as much product as it could. Based on this allegation, Plaintiffs spin an elaborate tale of a company that allegedly knew that demand for its products would decline in Europe, knew exactly when that decline would occur, and knew exactly how much the decline would be, but hid this information from investors. The CAC and Opposition, however, fail to adequately plead a single fact related to undisclosed declining European demand for SolarEdge's products, any untoward sales tactics, any customer complaints, or "skyrocketing" inventories in Europe. Indeed, Plaintiffs'

1

star confidential witnesses ("CW") were all based in the United States (not Europe) and worked[1] for the Company's North American division. Moreover, Plaintiffs do not, and cannot, point to a single instance in which Defendants caused a customer to take product that it was not under contract to purchase. It is telling that at the same time that plaintiff's counsel in a similar purported securities class action against one of SolarEdge's main competitors voluntarily dismissed its lawsuit, *see Bialic v. Enphase Energy Inc., et al.*, Case No. 5:24-cv-03216 (N.D. Cal.) (July 23, 2024 dismissal), Plaintiffs here continue to peddle and spin a non-sensical narrative that seeks to place blame on Defendants for certain macroeconomic conditions that adversely affected the Company (and the entire industry).

In addition, Plaintiffs have not pleaded scienter. Plaintiffs allege that Defendants had access to data and reports about the market but do not allege that those reports contained any information contradicting Defendants' public statements, an omission that is fatal to their claims.

In short, Plaintiffs have not alleged "with specificity why and how" SolarEdge should have known about the sudden decline in demand for its products. *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). "Where the allegation of recklessness is supported by nothing other than the fact of inaccuracy, and the statements are, at worst, only slightly inaccurate, the inference of reckless disregard for the truth is not likely to be compelling." *Further v. Ericsson LM Tel. Co.*, 363 F. App'x 763, 765 (2d Cir. 2009).

For the reasons set forth herein and in Defendants' opening brief, the CAC should be dismissed in its entirety with prejudice.

---

[1] With the exception of those CWs whose employment ended *before* the Class Period or those who *never* worked at the Company.

**ARGUMENT**

A.    **PLAINTIFFS HAVE FAILED TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS FOR SECURITIES FRAUD**

1.    ***The Allegations of the Purported Confidential Witnesses Lack Sufficient Particularity.***

The CAC fails to plead the CW allegations with the requisite particularity.  *See* Br. at 13-15.  Plaintiffs' Opposition attempts to circumvent this clear requirement by claiming that similarity among a number of vague statements somehow dispenses with the particularity requirement with respect to each one.  *See* Opp. at 13-16.  But the mere number of statements does not make them any more persuasive if, as here, not a single statement is based on relevant personal knowledge.  *See, e.g.*, *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 803 (S.D.N.Y. 2020) (holding allegations lack reliability where they do not include "independent [well-pled] factual allegations that corroborate [the] confidential source[s's] statements" (internal marks omitted)).

Plaintiffs' reliance on dicta in other cases mentioning "corroboration" does not dispense with the particularity requirement.  *See* Opp. at 13-15.  For example, in *Lozada*, the court did not hold that corroboration among CWs' testimony loosens the requirement that CW allegations be "sufficiently particular"; rather, the court alluded to corroboration only where certain allegations were already pled in "considerable detail."  *Lozada v. TaskUs, Inc.*, 2024 WL 68571, at *25 (S.D.N.Y. Jan. 5, 2024).  And *Lozada* is consistent with other courts in this Circuit, which do not credit CW allegations that are insufficiently particular just because they are similar to other vague alleged statements.  *See, e.g.*, *Gross v. AT&T Inc.*, 2021 WL 9803956, at *6-7 (S.D.N.Y. Sept. 27, 2021) (discounting mutually consistent, "hyperbolic" accounts of 70 CWs claiming widespread fraudulent sales practices because their allegations could not provide "a companywide view of" defendant's business); *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *28-29 (E.D.N.Y. Nov. 4, 2022), *report and recommendation adopted*, 2023 WL 6360345 (E.D.N.Y.

Sept. 29, 2023) (discounting a series of mutually consistent but otherwise vague and speculative CW allegations because even the most concrete allegation was "bereft of particulars").[2]

Plaintiffs' reliance on "documentary sources" to corroborate certain CW allegations fares no better. Plaintiffs rely heavily on a vague statement from CW2 regarding a conversation in which someone purportedly said that Europe "wasn't going well." Plaintiffs claim that this vague statement is sufficient for pleading purposes because it is corroborated by an analyst question at a conference that referenced "some flattening in the market." *See* Opp. at 15; Compl. ¶ 96. Not only is the analyst's statement not an indication that SolarEdge's demand was falling in Europe at that time, but it also cannot alter the fact that a vague, conclusory, second-hand statement made in February or March 2023 that "Europe wasn't going well" fails to establish with particularity that demand in Europe was falling in the second and third quarters of 2023. *Id.*

Similarly, the Company's finished goods inventories (*which were publicly disclosed*) do not "corroborate" the CW rumor that "Europe wasn't going well." *See, e.g.*, *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 375-76 (S.D.N.Y. 2007) (excess inventory "does not support plaintiffs' channel-stuffing claim"). Plaintiffs rely on *In re Dentsply Sirona, Inc. Sec. Litig.*, 665

---

[2] Plaintiffs fail to distinguish *Gross*, 2021 WL 9803956, at *6. Even with more allegations regarding sales practices, the *Gross* court still found the statements could not cure that plaintiffs' "kitchen sink" allegations did not go "beyond anecdotes and isolated conduct." *Id.* There, as here, the plaintiffs were unable to establish that the purported, undisclosed sales practices, if they existed at all, were of "a sufficient magnitude" to incur securities liability. *Id.* at *6-7 (citation omitted). Plaintiffs criticize Defendants' reliance on *Gavish* by citing a single out-of-circuit case that did not undermine its central holding: that allegations of retailers overburdened with inventory, without more, cannot meet the pleading requirements applicable to an "allegation of an undisclosed channel stuffing trend on information and belief." *Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *17 (S.D.N.Y. Sept. 30, 2004). Further, courts in this Circuit have continued to cite *Gavish* in explaining why conclusory allegations fail to establish a securities claim. *See In re Nokia Oyj Sec. Litig.*, 423 F. Supp. 2d 364, 408 (S.D.N.Y. 2006); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 376 (S.D.N.Y. 2007); *NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050, at *36 (D. Conn. Mar. 23, 2013); *In re Hain*, 2022 WL 18859055, at *29.

F. Supp. 3d 255, 283 (E.D.N.Y. 2023), to argue that Defendants' company-wide finished goods inventory figures over the Class Period create an inference that demand was falling in Europe. *See* Opp. at 15. But the court in *Denstply* did not draw that inference. In *Dentsply*, the plaintiff alleged a $112.9 million increase in the amount of inventory in a *single quarter* at a single *distributor*, and the court inferred lackluster end-user demand. Here, Plaintiffs ask the Court to draw the same inference based on an entirely different input: SolarEdge's finished goods inventory figures *worldwide*. Plaintiffs cannot substitute one high-level, company-wide data point for the downstream, distributor-level data alleged in *Dentsply* and ask this Court to reach the same conclusion about end-user demand anywhere, let alone in Europe specifically. Further, this argument appears to be an admission that Plaintiffs' CWs are merely corroborating the facts (finished goods inventory levels) that SolarEdge fully disclosed in its public filings—hardly evidence of an actionable misrepresentation.[3]

### 2. *Plaintiffs Fail to Address the Temporal Defects of the CW Statements.*

Plaintiffs cannot anchor any CW statement in the Class Period, which is fatal. *See* Br. at 15-16; *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154-55 (S.D.N.Y. 2023); *Long Miao*, 442 F. Supp. 3d at 803. The Opposition fails to cure the CW allegations' temporal defects. For

---

[3] In a last-gasp attempt to salvage their CW allegations, Plaintiffs rely on an out-of-circuit case that mentioned (but did not endorse) the potential of a lower pleading standard for information "peculiarly within the defendants' knowledge or control." *See* Opp. at 16 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). Not only is that not the relevant law in this Circuit, but Plaintiffs also fail to explain why the eight former employee CWs cannot allege a single specific incident, date, or statement by Defendants that directly contradicts the public representations referenced in the CAC. Plaintiffs similarly fail to claim that they need not identify specific instances of the alleged conduct, but cite to cases where plaintiffs either did allege specific instances of "channel stuffing" or otherwise met the particularity requirement by pleading far more concrete facts than those pled here. *See, e.g.*, *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 302, 307 (2d Cir. 2015) (confidential witnesses "recalled a second quarter QVC order where 500,000 brewers were loaded onto trucks right before an audit," alleged other misconduct around audits, and described the purchase of real estate used to hide excess inventory (marks altered)). Plaintiffs' allegations do not approach that level of particularity.

example, of the six CWs alleged in the Complaint to be employed at the Company during the Class Period, four began working at the Company at least four years prior to the start of the eight-month Class Period.  Merely stating that a CW's period of employment overlapped with the Class Period is insufficient.  *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *7 (N.D.N.Y. Mar. 27, 2020) (rejecting as insufficiently particular the allegations of two CWs employed for part of the class period where plaintiffs pled only that the alleged wrongful practices "occurred during" the CWs' tenure); *see also Gavish*, 2004 WL 2210269, at *18.  Plaintiffs rely only on the generalized assertion that allegations in one period can support an inference of similar conduct in another period, *see* Opp. at 17 n.7, but that statement ignores the case law cited in Defendants' opening brief, *see* Br. at 15-16, that explicitly rejects statements of CWs whose knowledge was stale, *see, e.g.*, *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 208 (S.D.N.Y. 2020).

### 3. *Plaintiffs Fail to Establish the CWs' Personal Knowledge of Facts Underlying the Alleged Practices.*

Plaintiffs do not dispute that every single CW was based in North America.  This alone makes it "not plausible that they would have direct knowledge about" European sales tactics, customers, and/or demand.  *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *5-6 (S.D.N.Y. Dec. 10, 2008); *see also DraftKings*, 650 F. Supp. 3d at 154-55.  Plaintiffs' cases are not to the contrary.  *Cf. City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, 477 F. Supp. 3d 123, 132-33 (S.D.N.Y. 2020) (finding CW could possess relevant knowledge because, unlike the CWs here, he worked "specifically on analysis related to the" agreement to which the alleged misrepresentations pertained).

Plaintiffs further counter that courts credit CWs who lack a view of an entire company's operations, *see* Opp. at 17, but in each of the cases Plaintiffs cite, the CWs held positions that would provide them with direct knowledge of the alleged facts.  *See, e.g.*, *In re Signet Jewelers*

*Ltd. Sec. Litig.*, 2018 WL 6167889, at *8, *13 (S.D.N.Y. Nov. 26, 2018) ("employees[] possessed first-hand knowledge" of the practices alleged); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 851 (S.D.N.Y. 2019) (IT employee testifying about company's IT infrastructure and district manager testifying about conditions in his theaters); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196-97 (S.D.N.Y. 2010) (crediting that plaintiffs pled with particularity knowledgeable positions occupied by each CW, including "first-hand interactions with the Defendants *concerning the matters alleged in the Complaint*." (emphasis added)); *In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 534 (S.D.N.Y. 2009) (CWs occupied positions through which they were privy to company's internal controls).  The CWs here were not privy to *any* of the relevant facts to which they are attesting.[4]

Lastly, the Opposition makes clear that the CW statements about demand in Europe are nothing more than impermissible rumors and hearsay.  But "rumors cannot reasonably satisfy the requirement that the facts alleged provide an adequate basis for believing that the defendants' statements were false."  *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 399 (S.D.N.Y. 2020) (rejecting a series of CW allegations as rumor); *see also Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 140 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ("[R]umor or conjecture are undisputedly insufficient.").  Further, courts routinely dispose of CW claims based on impermissible hearsay.  *See, e.g.*, *Menora Mivtachim Insurance Ltd. v. Int'l Flavors &*

---

[4] Plaintiffs fail to address any of the cases explaining that courts routinely grant motions to dismiss where CWs lack direct knowledge of the matters in the case due to geography. *See, e.g.*, *Steinberg*, 2008 WL 5170640, at *5-6 (S.D.N.Y. Dec. 10, 2008) ("not plausible" CWs who report to chief of North America "would have direct knowledge about" foreign contracts); *In re Frontier Comm'cns, Corp. S'holder Litig.*, 2020 WL 1430019, at *15-16 (D. Conn. Mar. 24, 2020) (rejecting testimony of CWs where "the issues they personally dealt with were" not "representative of overall issues in [the relevant] regions"); *Lowe v. Tandem Diabetes Care Inc.*, 2024 WL 1898473 at *6-7 (S.D. Cal. Apr. 30, 2024) (discrediting testimony of CW "responsible for only one region" because "not clear how [he] would have personal knowledge regarding sales in other regions").

*Fragrances Inc.*, 2021 WL 1199035, at *12 (S.D.N.Y. Mar. 30, 2021) (rejecting CW hearsay allegations "sourced second- or even thirdhand").

## B.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISREPRESENTATION

The Opposition reiterates the CAC's allegations that Defendants (1) misled investors regarding revenues; (2) misled investors about inventory growth; (3) misrepresented channel inventory levels in Europe; (4) misrepresented demand in Europe; and (5) misled investors regarding sell-through forecasts. Opp. at 18-31. While Plaintiffs' arguments are not entirely clear, they appear to be asserting that certain of these alleged misrepresentations were half-truths, while others were outright false. But regardless, the Opposition fails to address the most fundamental pleading defect in the CAC: there are no particularized factual allegations in the CAC contradicting any of the challenged statements. Plaintiffs' theory of falsity is that Defendants pushed products on customers at the end of each quarter to inflate quarterly revenues in the face of declining demand in Europe and that by making routine disclosures about SolarEdge's current and projected financial performance, SolarEdge was obligated to disclose its purported scheme to push product. All of Plaintiffs' alleged misstatements and omissions are entirely dependent upon three predicate allegations: (1) the Company schemed to "force [customers] to take delivery of unneeded products at the end of fiscal quarters," Opp. at 1; (2) demand in Europe was "declining sharply" from the end of 2022 through 2023, *id.* at 1-2; and (3) channel inventory in Europe was "saturated," *id.* at 25. The Opposition, however, makes clear that Plaintiffs cannot plead sufficient facts regarding these predicate allegations. "If the complaint fails to allege facts which would establish such a [ ] scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed." *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) (emphasis in original); *see also In re Yukos Oil Co. Secs. Litig.*, 2006 WL 3026024, at *14 (S.D.N.Y. Oct. 25, 2006) ("tax strategy" scheme not pled with sufficient particularity).

8

1.      *Plaintiffs Fail to Allege Any Statement Was False When Made.*

Plaintiffs argue that statements concerning the stability of demand in Europe were false because "Defendants made them when demand was declining," Opp. at 27, while also supposedly lying to investors that channel inventories in Europe were "not relatively high" during the Class Period, *id.* at 25. Plaintiffs, however, do not tie their assertion that demand was "sharply declining" in Europe to the time of the alleged misstatements—*i.e.*, from Q4 2022 through Q3 2023. *See Robeco Cap. Growth Funds SICAV - Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 540 (S.D.N.Y. 2023) (dismissing securities fraud claims where plaintiffs failed to plead that the alleged misstatements were false "at the time [the statements] w[ere] made"). As noted (*supra* Section A.1), Plaintiffs suggest that demand was declining because CW2 (a regional manager working in North America) heard a rumor from other U.S.-based colleagues that "Europe wasn't going well" before he left the Company in March 2023. Opp. at 27. Such a vague statement cannot possibly amount to evidence of declining demand for the Company's products across the European market. It is a paradigmatic "conclusory allegation[] based upon rumor[s]" that courts find insufficient to satisfy heighted pleading standards. *Schiro v. Cemex, S.A.B. de C.V.*, 396 F.Supp.3d 283, 306 (S.D.N.Y. 2019).[5]

Plaintiffs' pleading deficiencies are not cured by Plaintiffs' citation to analysts' statements

---

[5] Plaintiffs' out-of-circuit cases are factually distinct, and concern much more particularized allegations about customer demand. *See Blanford*, 794 F.3d at 306 (actionable misstatement about inability to meet existing demand for Company's product when defendants were simultaneously stockpiling products in warehouses); *In re Urb. Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 648 (E.D. Pa. 2015) (quoting *In re ATI Techs., Inc. Sec. Litig.*, 216 F. Supp. 2d 418, 435-36 (E.D. Pa. 2002)) (actionable misstatement when defendant lied about strong demand for its product and plaintiffs also pled "specific facts showing significant problems" with that product and resulting "poor sales"); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1359 (N.D. Ga. 2002) (actionable misstatement about accelerating demand for Company's product when plaintiffs were receiving declining orders and a report specifically forecasted fewer future orders).

about "chatter."   Opp. at 27.   Plaintiffs refer to an analyst's question about "chatter" of "a slowdown in Europe" during the Q1 2023 Earnings Call, in addition to an analyst's question in June 2023 about "forecasts" of the market "flattening" in Europe.  *Id.* (citing Compl. ¶¶ 154, 156). References to "chatter," much like an unsubstantiated rumor, are not enough to show that demand for the Company's products was sharply declining in Europe.  *Schiro*, 396 F. Supp. 3d at 306.  In any event, the Company truthfully explained that any rumored or potential "slowdown" was likely a reference to increased competition for solar energy products across the European market.  *See* Belelieu Decl. Ex. 5 at 9.[6]

In addition, the Opposition refers to generalized and vague statements to try to support Plaintiffs' allegations that Defendants supposedly misrepresented channel inventory levels in Europe.   But the hyperbolic rhetoric in Plaintiffs' Opposition is not supported by the CW statements they rely upon.  A statement by CW4 (a North American employee) that "SolarEdge's commercial inventories were sharply rising during the first half of 2023" in an undefined market, Compl. ¶ 82, and a statement by CW7 (also a North American employee) about unnamed distributors having "too much equipment," without more, do not get Plaintiffs any closer to pleading facts suggesting undisclosed "*skyrocketing*" channel inventories *in Europe*, Compl. ¶ 64. Plaintiffs' theory that the Company began to acknowledge "saturated" channel inventories on the Q2 2023 Earnings Call but did not disclose the "whole" truth also fails to meet the heightened pleading standard.   Opp. at 25-26.   If Plaintiffs actually considered the Company's entire

---

[6] A single suggestion by an analyst of a "flattening" market does not equate to sharply declining demand.  Opp. at 28 (citing Compl. ¶ 156).  Relatedly, describing a "shift in pattern" for installation rates in the third quarter after the "highest ever sell-through month . . . in Europe [] ever" (*i.e.*, the second quarter) is not an "admission" of sharply declining demand.  *See* Belelieu Decl. Ex. 7 at 21.  Lastly, alleging excess finished goods inventory worldwide does not create an inference of declining demand in Europe, and the case Plaintiffs rely upon—*In re Dentsply Sirona, Inc. Sec. Litig.*—does not suggest otherwise.

statement, they would have seen that the Company acknowledged that inventory correction "within the distributors should be relatively quick."  During the call, Defendants elaborated for shareholders that this could be expected due to "sell-through from the channel," and "record-high point-of-sale data."  Opp. at 25 (citing Compl. ¶¶ 141, 143).[7]  Plaintiffs have pled no facts to suggest that this complete statement is untrue or misleading—in fact, the Company experienced its **highest ever** sell-through month in Europe during that quarter.  *See* Belelieu Decl. Ex. 7 at 21.  Relatedly, Plaintiffs have pled no facts to suggest that Defendants were not telling the truth when describing European distributors' behavior "over the ***past two years***"—when inventory supply was low—and the resulting "overstock" that the Company attempted to clear through the third quarter of 2023.  Opp. at 26 (citing Compl. ¶ 146).  When reviewing Defendants' complete statements related to channel inventories in Europe, not just hand-selected phrases, it is clear that Plaintiffs have failed to plead any falsity.  Opp. at 25-26 (citing Compl. ¶¶ 141-46).

Finally, the Opposition cannot overcome the fact that Plaintiffs have failed to allege that the Company forced products on its customers to meet quarter-end targets.  It is not enough for CWs to simply allege that the Company was "shov[ing] product down [customers'] throat[s]" to "hit quarter-end numbers," Opp. at 19 (citing Compl. ¶ 66), without pleading a single fact to suggest this practice was happening.  "CW allegations [that] are too conclusory and generic to support [the underlying] allegation" warrant dismissal.  *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *21 (E.D.N.Y. Nov. 4, 2022).  In *Hain*, a case cited by Plaintiffs, "[a]t the heart of Plaintiffs' claims [was] the allegation that [Defendant] drove sales by granting distributors a right to return [e]xcess [i]nventory, the exercise of that right [impacted the accounting], and the

---

[7] Plaintiffs' citation to Defendants' generalized statements about distributors at the Oppenheimer Conference do not concern *European* distributors or channel inventory levels in *Europe*.

failure to disclose this circumstance rendered public statements materially false or misleading." *Id.* at \*21. The *Hain* court held that the CW statements were "too conclusory and/or vague to sufficiently plead that [the defendant] generated sales by relying on such a right of return." *Id.* Critically, it was not enough for a CW to simply "report[ ] that he 'constantly' saw products being returned," or for another CW to report that "[the company] would ship inventory to distributors to increase reported revenue and then 'de-load' . . . in the following quarter and that he 'knew' unspecified quarter-end transactions 'could not be real.'" *Id.* (punctuation altered). The Court held that plaintiffs failed to plead the existence of a scheme to drive sales at the end of each quarter. *Id.* Here, the Opposition spins a theory with *fewer* facts evidencing a concerted effort to push products on customers than the *Hain* plaintiffs. Plaintiffs fail to plead a single fact about the conduct of European sales teams and their allegedly unwanted interactions with these mystery distributors—no statements from distributors, no examples of the allegedly "aggressive" tactics or ploys, or violations of company policy or sales agreements. There are simply no facts to support Plaintiffs' predicate allegation of a scheme to push product to pad quarterly revenues.[8]

### 2. Plaintiffs Fail to Plead That Defendants Had a Duty to Disclose Any Additional Information During the Class Period.

Plaintiffs argue in the Opposition that by addressing revenues, inventory levels, and sell-through forecasts in its public disclosures, the Company had a duty to disclose the "real" reasons for revenue growth and rising inventories. But even if the purported "real" reason—*i.e.*, that SolarEdge was "forcing" product on customers—were true (and Plaintiffs fail to establish that it was), Plaintiffs do not cite to a single case supporting the proposition that the Company had a duty to disclose its purportedly aggressive sales practices.

---

[8] Furthermore, the majority of the Company's statements about demand are paradigmatic forward-looking statements or expressions of corporate optimism entitled to safe harbor protection. *See infra* Sections C & D.

***SolarEdge's Revenue Statements Did Not Trigger a Duty to Disclose Further Information.*** Plaintiffs cherry-pick statements from the Company's Q4 2022, Q1 2023 and Q2 2023 earnings calls relating to reported revenues in Europe to suggest that Defendants did not disclose the entire truth about *how* the Company met its revenue targets. Opp. at 18 (citing Compl. ¶¶ 121-25). Plaintiffs, however, fail to allege why Defendants had a duty to disclose in-the-weeds reasons for reported revenue during the Class Period—including an alleged (and untrue) practice of forcing products on customers—while also failing to allege a single fact to suggest that the Company was actually forcing product on distributors to meet quarter-end revenue targets. Defendants' statements about revenues attributed performance to "growth in the United States," an "increase in power prices" in Europe, "expansion of our portfolio," "record revenues in Europe," and shipments of batteries and inverters. Compl. ¶¶ 122, 124, 126. Unlike the only Second Circuit cases to which Plaintiffs cite, the Company did not misattribute revenue growth to end-user demand as the "primary driver" of financial success triggering a duty to disclose the true source of growth. *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 31 (S.D.N.Y. 2019) (duty to disclose where Defendants attributed "end-user demand as the 'primary driver' of year-to-year growth" when sales were in fact decreasing).

***SolarEdge's Statements About Inventory Growth Did Not Trigger a Duty to Disclose Further Information***. The Opposition further highlights the CAC's failure to allege that the Company misrepresented inventory growth in a way that triggered a duty to disclose further information about supposedly aggressive sales tactics. Plaintiffs point to Defendants' statements that finished good inventory figures resulted from "streamlined manufacturing," Compl. ¶¶ 129, 133, a "normal mode of operation," *id*. ¶ 131, and "slower growth rates in Europe," *id*. ¶ 133— and suggest that these disclosures put the Company's allegedly improper sales practices at issue,

13

Opp. at 21-23. But viewing these statements in their full context makes clear that the statements are not related to sales practices. For example, on the Q1 2023 earnings call, Faier stated, "Over the last two years, we have dealt with challenges around components availability, supply chain issues and logistic constraints. The general improvement in the market combined with the actions that we have taken have allowed us to return to a *more normal mode of operation*." Compl. ¶ 130; *see* Opp. at 21. When "a full review of Defendants' public disclosures would have given the investing public the information it needed," there is no actionable falsity. *Robeco Cap. Growth Funds SICAV*, 665 F. Supp. 3d at 542. Further, Plaintiffs do not explain how their allegations fall outside the general rule that vague statements (as these are) fail to trigger a duty to disclose further information. *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 290 (E.D.N.Y. 2023); *Schiro*, 396 F. Supp 3d at 306.[9]

**SolarEdge's Statements About Sell-Through Forecasts Did Not Trigger a Duty to Disclose Further Information**. The Opposition does not dispute the finding of this Court in *Siegel v. Bos. Beer Co., Inc.*, 2022 WL 17417111, at *8 (S.D.N.Y. Dec. 5, 2022), and instead reiterates Plaintiffs' vague and unsubstantiated allegation that the Company's executives did not consult certain unnamed "sources" and, instead, "made up" sell-through forecasts. Opp. at 30-31. However, without pleading particularized facts about the Company's forecasting efforts, there is no "independent duty to describe the sufficiency of its forecasting processes to the public" or to

---

[9] Plaintiffs incorrectly contend that the public disclosures of defendants in *Telefonaktiebolaget* and *Schiro* are distinguishable. Opp. at 20. The *Telefonaktiebolaget* court disregarded allegations related to growth as too general when the Company "did not delve into specific details in their recitations of the sources of [their] growth." *Telefonaktiebolaget*, 675 F. Supp. 3d at 290. The *Schiro* court did not find statements about the Company's conduct misleading when stating that the Company was "strengthening its footprint with expansion projects" and had a "solid asset base . . . [and] unique portfolio of business solutions." *Schiro*, 396 F. Supp. 3d at 297.

14

"describe the reliability of its forecasting mechanisms in order to prevent any particular disclosure it [does] make from being misleading." *Siegel*, 2022 WL 17417111, at *8. Broad and unspecific allegations by CW4 that "executives reporting directly to Defendants insisted on adopting unsupported forecasts" are not enough to adequately plead that the Company was "making up" sell-through forecasts. Opp. at 31-32. Finally, Plaintiffs cannot dispute that these statements are paradigmatic forward-looking statements. *See infra* Section I.C.

## C. PLAINTIFFS FAIL TO DISPUTE THAT SEVERAL OF DEFENDANTS' STATEMENTS ARE PROTECTED FORWARD-LOOKING STATEMENTS.

Plaintiffs do not dispute that when companies "anticipate" how "demand will develop in the future," their statements are forward-looking. *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 642-43 (D.N.J. 2021); *see Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 256-57 (S.D.N.Y. 2019).[10] Plaintiffs advance two arguments in an attempt to evade the PSLRA's forward-looking statement safe harbor; both fail.

*First*, the Opposition acknowledges that "mixed statements that have both a forward-looking aspect and a representation of present or historical fact are not protected ***with respect to the latter***," *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013) (emphasis added) (citations omitted), but Plaintiffs misconstrue relevant case law, claiming that because certain disclosures are "mixed" statements, safe harbor protections do not apply to *anything* in the statement. The law in this Circuit is clear that even when statements about future demand are "tied to historical and present facts," they are "still protected under the Safe Harbor provision because that provision extends not only to statements containing a projection of revenues and of future economic performance, but also to any statement of the assumptions underlying or

---

[10] Plaintiffs do not dispute that the statement as described at Compl. ¶ 151 is a forward-looking statement and therefore entitled to safe harbor protection.

15

relating to such statements." *Oritz*, 537 F. Supp. 3d at 642 (internal marks and citation omitted).

*Second*, Plaintiffs claim that other statements, *see* Compl. ¶¶ 128, 134, 150, 155, were not accompanied by meaningful cautionary language and are therefore not entitled to safe harbor protection. *See* Opp. at 23-24, 29-30. That is simply untrue, and detailed cautionary language is listed in Appendix B to Defendants' opening brief.[11] Plaintiffs suggest that the cautionary language contained in Appendix B is nothing more than a list of "every factor" in the Company's "public statements or SEC filings," like the deficient cautionary language in *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016). Here, however, safe harbor protection is warranted for the statements cited in the Appendix because the cautionary language ties back directly to the specific statements about "future demand for [ ] solar energy solutions," "performance of distributors and large installers in selling our products" and the ability for "our largest customers" to "cancel . . . after a relatively short notice period." Br. App. B.

## D.     MANY OF DEFENDANTS' STATEMENTS ARE INACTIONABLE CORPORATE OPTIMISM AND PUFFERY.

The Opposition also fails to defend the list of alleged misstatements that are merely statements of corporate optimism and therefore protected by the PSLRA. "[A]s long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Statements about strong demand in Europe at the start of 2023, Compl. ¶ 149, describing the region as the likely "fastest-growing geograph[y]," *id.* ¶ 151, and acknowledging that the state of the market was not a "crisis" at the end of Q3 2023, *id.* ¶ 159, are

---

[11] Plaintiffs allege that Appendix B (and other appendices) should be disregarded because they impermissibly extend the page limits. Courts routinely deny such requests where, as here, the appendices are "intended to serve as mere organizational tools." *Fogel v. Wal-Mart de Mex. SAB de CV*, 2017 WL 751155, at *18 (S.D.N.Y. Feb. 27, 2017). The appendices merely quote documents on which Plaintiffs themselves rely.

16

distinguishable from the statements at issue in cases Plaintiffs cite, and are more analogous to optimistic statements routinely dismissed by courts. *See, e.g.*, *Robeco Cap. Growth Funds SICAV*, 665 F. Supp. 3d at 540 (dismissing "we think 2022 is going to be a fantastic year" and while "COVID has been a tailwind for our demand . . . we see continued momentum in [the] foreseeable future"); *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 569-70 (S.D.N.Y. 2018) (non-actionable puffery where statements suggested "Xerox's confidence in its competitiveness" and "vaguely and enthusiastically described Xerox's performance, [and] expectations of business success").

## E.    PLAINTIFFS HAVE NOT ADEQUATELY PLEADED SCIENTER

### 1.    *The CAC Fails to Allege That Any of the Individual Defendants Engaged in Conscious Misbehavior or Recklessness.*

#### a.    Plaintiffs Do Not Allege That Inventory Reports and Meeting Information Contradicted Defendants' Public Statements

Plaintiffs argue that Defendants' access to inventory reports and attendance at meetings supports an inference of scienter. Opp. at 32-34. However, Plaintiffs still cannot overcome that the CAC does not allege with any *specificity* what Defendants supposedly learned from those inventory reports or meetings that would have alerted them to the alleged misstatements. *Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must *specifically identify* the reports or statements containing this information." (emphasis added)); *see also Inter-Local Pension Fund GCC/IBT v. Gen. Elec. Co.*, 445 F. App'x 368, 370 (2d Cir. 2011) (alleging "access to internal corporate documents and data during the class period, including real-time customer and sales information" is insufficient without allegations "that *the content* of the reports or data to which [Defendants] were privy was inconsistent with their statements in the class period" (emphasis added)) ; *see also* Br. at 32-35. The failure to do so is fatal to any allegation of scienter. Plaintiffs rely on alleged meetings with Europe General Manager Alfred Karlstetter to

17

argue that Defendants Lando and Faier would have received updated information. *See* Opp. at 33. But the CAC does not even allege that the discussions at the meeting contradicted Defendants' statements.[12]

The authorities cited by Plaintiff are inapplicable because plaintiffs in those cases specifically alleged the information available to the defendants that contradicted their statements. *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x. 10 (2d Cir. 2011) (detailing specific discussions at senior manager meetings); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1135, 1145 (9th Cir. 2017) (defendants had access to "real-time sales information *showing a decline in sales*"); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 883 (N.D. Cal. 2023) (alleging content of reports); *Sgalambo v. McKenzie*, 739 F. Supp. 2d 453 (S.D.N.Y. 2010) (same). Indeed, alleging access alone to "various sources of nonpublic (and public) information" is akin to allegations that "[d]efendants must have known based on their roles." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 403 (S.D.N.Y. 2019).

Plaintiffs also rely on a single alleged comment from CW4, a North American sales employee, that "the market was a lot worse than they thought." Opp. at 32-33. This one-off statement is too vague to plead scienter as to any of the Defendants (even if it were contradictory to Defendants' public statements, which it is not). *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 374 (E.D.N.Y. 2013) (finding a "vague" email that "outlines [a] low-level employee's 'thoughts and concerns' about what he or she generally observed, without identifying specific

---

[12] Plaintiffs' reliance on a handful of other CW statements is similarly misplaced. *See* Br. at 16-18. For example, CW3 worked in a secretarial function in the North America group, *see* Compl. ¶ 36, primarily took notes on sales calls, is not alleged to have attended any QBRs at all, much less any European QBRs during the Class Period, and left the Company in August 2022 (*i.e.*, before the Class Period). Yet, CW3 appears to be Plaintiffs' source for what may have happened during those QBRs. *See* Opp. at 9; Compl. ¶¶ 36, 81.

events, individual, or points in time" insufficient for scienter).  And in any event, the CAC does not allege this statement was about the European market, or even about demand.  *See* Compl. ¶ 82; Opp. at 17; *see also AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 525 (S.D.N.Y. 2020).

<blockquote>b.    <u>The CAC Does Not Sufficiently Allege Any Defendant Was Aware of the Allegedly Aggressive Sales Tactics</u></blockquote>

Plaintiffs rely heavily in the Opposition on the allegation that CW7 attended meetings where SolarEdge's sales tactics were discussed, and that CW7 "believed"[13] the substance of these discussions was relayed to Lando.  Opp. at 33.  Plaintiffs' reliance is misplaced.  First, like the allegations of CW4, the context of CW7's statement makes clear these were meetings about North America, not Europe.  *See* Br. at 16-18.  Plaintiffs do not dispute as much, arguing instead that the Court should presume the Company's practices were the same in Europe and North America despite the lack of allegations supporting such an inference.  Opp. at 17.  But the CAC's failure to *concretely* connect information from these meetings to Defendants is "fatal."  *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 244-45 (S.D.N.Y. 2010) ("Plaintiffs cannot rely on assertions that the information presented by confidential witnesses was known or common knowledge within the company.").  Plaintiffs respond that requiring Plaintiffs to allege that Defendants were confronted with the information they supposedly knew unnecessarily calls for "smoking gun" evidence.  Opp. at 33.  But requiring "specificity as to what information the Individual Defendants allegedly knew" cannot be overly burdensome in a case that turns on fraud allegations.  *See Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023).[14]

---

[13] The Opposition asserts CW7's allegation as fact—"the substance of these conversations *were* reported up to Lando," Opp. at 33 (emphasis added)—but the CAC alleges only that CW7 "believed" the substance of these discussions was communicated up to Lando.  Compl. ¶ 67.

[14] The cases Plaintiffs cite are unavailing because the plaintiffs in those cases alleged a higher degree of specificity than here.  *See Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d

c.      Defendants' Statements About Changing Market Dynamics Are Not
        Evidence of Scienter

The Opposition fails to identify any statements by Defendants that actually demonstrate they hid their knowledge of European market dynamics in the third quarter of 2023. For example, Plaintiffs claim that Lando and Faier "admitted" they had concealed adverse information about the market throughout August and September. Opp. at 36; Compl. ¶ 113. But on the August 1, 2023 Q2 Earnings Call, Lando disclosed that "the strength in the [European] market is somewhat more moderate than what was anticipated" and that "distribution channels in Europe are experiencing higher than optimal inventory levels, especially as it relates to solar modules." Belelieu Decl. Ex. 6 at 3. Lando predicted "this inventory adjustment period could continue for the next two quarters." *Id.* At the Barclays Conference on September 6, 2023, Faier reiterated this point, attributing inventory levels to distributors' over-preparation for increased demand and their experience during the COVID-19 pandemic with component shortages. Belelieu Decl. Ex. 15 at 4-5. Lando's later statement that "the magnitude [of the slowdown] grew much greater than we anticipated" in no way suggests prior knowledge—to the contrary, his comments taken together show that he disclosed his then-current beliefs, but the market continued to change unexpectedly.

Plaintiffs also rely heavily on Defendant Lowe's Keybanc Symposium talk on September 21, 2023 to argue that Defendants continued to tout strong demand in Europe just a month before the Q3 earnings press release. Compl. ¶¶ 16, 108, 164, 176, 194, 214; Opp. at 4, 11, 28, 38. But Plaintiffs fail to mention that Lowe's statement that "underlying demand . . . for solar [was] very,

---

381, 398 (S.D.N.Y. 2022) (strong inference of scienter based on allegations by an auditing executive that three key findings from internal audit reports would have found their way to the CEO, including specifics about how they would have reached him); *Moshel v. Sasol Ltd.*, 481 F. Supp. 3d 280 (S.D.N.Y. 2020) (rejecting scienter based, in part, on one CW's allegations that an $11 billion cost estimate was "socialized among senior management" and that one defendant "would have known about the cost issues as the ultimate arbiter of costs").

very strong," was made in the context of a broader statement that included substantial *negative* information regarding the European market. *See* Br. at 9-10; Belelieu Decl. Ex. 16 at 6-7 ("European distributors have . . . too much inventory, especially . . . solar panels," and the recent influx of cheaper Chinese panels was causing "cash flow problems" that would affect their working capital). Further, Lowe also predicted that while "underlying demand" (*i.e.*, end-user demand) remained strong, the market would see a "one to two quarter kind of challenge in the market from an inventory perspective" because distributors were facing cash flow problems.[15] *Id.*

> d.      The CAC Does Not Sufficiently Allege Any Defendant Was Aware of the Allegedly Inflated Sell-Through Forecasts

The Opposition does not address Defendants' argument that the CAC contains no scienter allegations as to the allegedly inflated sell-through reports and forecasts.

> **2.      *Plaintiffs' Reliance on the Magnitude of Difference Between Projected and Actual Revenue in Q3 2023 Is Misplaced.***

Plaintiffs also point to the difference between the Company's Q2 and Q3 revenue as evidence of fraud, Opp. at 35-36, but there is nothing unusual about a company earning different amounts of revenue in different quarters, especially in an industry where seasonality and weather can have a large impact on demand. *See, e.g.*, Belelieu Decl. Ex. 17 at 12. Moreover, the difference between projected and actual revenue is not independent evidence of scienter. *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) ("The fact that management's optimism about a prosperous future turned out to be unwarranted is not circumstantial evidence of conscious

---

[15] Plaintiffs' theory seems to be that Defendants' statements regarding their beliefs about underlying demand contradict their statements about high channel inventory, Opp. at 34-35, but the two are not contradictory. SolarEdge's primary customers were distributors and installers, not end-users. Compl. ¶ 2. This means that underlying market demand from end-users cannot be equated to strong demand for SolarEdge itself. There are many other market dynamics that could affect demand for SolarEdge products, that would not affect underlying demand, and vice versa. These include the number of manufacturers in the market, supply chain disruptions, and product availability, all of which were in flux after the COVID-19 pandemic and the Ukraine-Russia war.

fraudulent behavior or recklessness."); *see Total Equity Cap., LLC v. Flurry, Inc.*, 2016 WL 3093993, at *6 (S.D.N.Y. June 1, 2016) (overly optimistic outlook on company growth was not evidence of scienter).[16]

Plaintiffs also attempt to confuse the magnitude and timing of the Company's disclosures. On August 1, 2023, Defendants disclosed that inventory was rising, Opp. at 3, demand was not as strong as previously thought, Opp. at 6, 7, 11, and Q3 revenue was projected to decline by as much as $97 million, Opp. at 11. On October 19, the Company revised its revenue projections to predict a decrease of $220 million for Q3. Opp. at 4, 12. On November 1, the Company announced that the actual revenue decrease was $222 million, in line with what Defendants projected on October 19. Opp. at 12. Plaintiffs allege that these disclosures evidence fraud, but they do not allege what was in the inventory reports or channel inventory reports that Defendants received, or what Defendants were told at meetings, that would have alerted Defendants to the fact that their initial projection of a $97 million decline was not only wrong, but fraudulent. Nor do they address the fact that Defendants did not receive each month's sell-through data until approximately three weeks into the following month. Belelieu Decl. Ex. 7, at 22-23; Br. at 10.

### 3. *Plaintiffs' Arguments Regarding the Company's Core Operations and Defendant Lando's Qualities Fail.*

Plaintiffs argue that because SolarEdge's business involved selling solar power inverter systems and because Europe was the Company's most important market, Defendants knew or were

---

[16] Plaintiffs' cases are unavailing. *See In re Pareteum Sec. Litig.*, 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) (inference of scienter based on magnitude of change in a *correction* to an *already filed* financial statement, not change between two successive periods); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001) (alleging "with great specificity" defendants' awareness that they were investing in a phony organization); *In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217 (S.D.N.Y. 2021) (assuring "de minimis" impact of new legislation despite numerous client cancellations even though defendants were aware that a substantial number of clients halted campaigns just six days earlier).

reckless in not knowing about sales tactics used by the Company's salespersons, demand trends in Europe, and rising internal and channel inventory levels. Opp. at 37. This argument fails. First, Plaintiffs' core operations theory is premised on an adequately pled misrepresentation, but as explained above, they have failed to plead any misrepresentations. Second, Plaintiffs' cases are inapposite. In *In re Atlas*, the plaintiff put forth *actual details* that contradicted the defendants' statements. *See In re Atlas Air Worldwide Holdings, Inc.*, 324 F. Supp. 2d 474, 491 (S.D.N.Y. 2004). Here, Plaintiffs allege that Defendants attended meetings or had access to reports, but do not allege what was in those reports or what Defendants should have taken from them.[17]

Plaintiffs also allege that Defendant Lando's scienter can be inferred because he "was an unusually detail-oriented CEO," who previously ran SolarEdge's sales division, and who was selected to be CEO because he was "thought to be the person that understood the Company the best." Opp. at 38; *see also* Opp. at 9. But those qualifications cannot be the basis for securities fraud liability. Being a "detail-oriented CEO" does not inherently mean that the CEO knows every single piece of data about a company, particularly when there are no allegations that the data in question even existed at the time that the CEO is alleged to have known the information.

### 4.    *Plaintiffs Do Not Adequately Allege Corporate Scienter.*

Plaintiffs argue that they have alleged scienter as to the Company because (i) they alleged scienter for each Individual Defendant; (ii) they alleged that CW4's forecasts were criticized by certain employees; and (iii) "corporate officials" would have approved statements about demand and inventories. Opp. at 39. But, as discussed above, Plaintiffs do not allege what information was available to the Individual Defendants (or to Amit Cohen or Peter Matthews) that would have

---

[17] Plaintiffs' reliance on *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367 (S.D.N.Y. 2012), is unavailing. In that case, the court explained that "the flaw" in the plaintiffs' internal reporting allegations was that they only vaguely described what specific information would have been included in "underwriting results" or "information on bad debts." *Id.* at 395.

contradicted the Company's statements. Cohen and Matthews were North America market managers who allegedly attended meetings where SolarEdge's sales strategies and the European market were discussed. *Id.* As discussed above, however, the CAC does not allege any connection between sales strategies in North America and the misstatements about Europe. And in any case, "[s]uch rumors cannot reasonably satisfy the requirement that the facts alleged provide an adequate basis for believing that the defendants' statements were false." *Chapman*, 466 F. Supp. 3d at 399; Br. at 18. Nor have Plaintiffs provided any "connective tissue" between the managers referred to here, Matthews and Cohen, and Defendants' alleged misstatements. *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020); *see also Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 440 (S.D.N.Y. 2017) ("[U]nder Second Circuit precedent, it is not enough to separately allege misstatements by some individuals and knowledge belonging to some others.").

**5.** ***Even Under a "Holistic View," the CAC Does Not Create a Strong Inference of Scienter.***

In an apparent acknowledgment that they lack evidence of scienter, Plaintiffs also urge the Court to find that a "holistic view" of their allegations supports scienter. But Plaintiffs cite no evidence that they can overcome their pleading deficiencies by simply adding up enough deficient allegations until they get something positive. And in any event, the "holistic view" of their claim actually supports an inference of no wrongdoing. Plaintiffs never allege that any data—the Company's, its customers', their customers', or other market participants'—contradicted Defendants' statements. The CAC is reliant on assuming that all of the data (1) showed that *European* demand was declining and was going to continue to decline; (2) were provided or accessible to Defendants; and (3) were intelligible to Defendants. Opp. at 39-40. Plaintiffs also never allege that any customer ever informed Defendants that product was being "forced" on them, nor do they allege that any of Defendants were informed as much. Plaintiffs' "holistic" view is

24

an attempt to mask the fact that they do not put forward a single allegation about sales tactics in Europe or a single allegation by a CW based in Europe or with knowledge of Europe.  Plaintiffs' citation to *In re ITT Educ. Servs., Inc. Sec. Litig.*, 34 F. Supp. 3d 298 (S.D.N.Y. 2014), only supports this point.  Opp. at 39-40.  There, plaintiffs alleged that the defendants collected detailed information about student loan defaults pursuant to a Department of Education regulation and that defaults rose 30% during the class period.  *In re ITT Educ. Servs.*, 34 F. Supp. 3d at 307.  Unlike the plaintiffs there, Plaintiffs here do not allege anything about the substance of the market data.

>   **6.      *Plaintiffs Have Not Pleaded Any Scienter Allegations Against Defendants Lowe or Danziger.***

The Opposition attempts to address the CAC's failure to allege Lowe and Danziger's scienter by arguing that both represented to investors that they had reviewed market data.  However, Plaintiffs fail to allege what would have been in the data that would have alerted them to the falsity of their statements.  *See, e.g.*, *Inter-Local Pension Fund*, 445 F. App'x at 370.

**F.      PLAINTIFFS FAIL TO STATE A 20(a) CLAIM**

Plaintiffs concede in their Opposition that their Section 20(a) control person liability claim is entirely dependent on whether they adequately plead a Section 10(b) claim.  Opp. at 40.  Because they fail to plead a Section 10(b) claim, *see supra*, their Section 20(a) claim also fails.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in Defendants' opening brief, the CAC should be dismissed in its entirety with prejudice.[18]

---

[18] Plaintiffs' request for leave to amend should be denied, and the Court should dismiss the CAC with prejudice.  Plaintiffs do not identify any new or additional facts that they would plead in a further amended pleading, despite the fact that nearly a year has passed since the initial complaint in this action was filed.  "[W]here . . . there is no merit in the proposed amendments," as would be the case here, "leave to amend should be denied." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (quoting *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990)).

Dated: September 16, 2024
New York, New York

Respectfully submitted,


By: */s/ Christopher D. Belelieu*
Christopher D. Belelieu

Christopher D. Belelieu
Nathan C. Strauss
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035
CBelelieu@gibsondunn.com
NStrauss@gibsondunn.com


*Attorneys for Defendants*

26