**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
:
IN RE SOLAREDGE TECHNOLOGIES, :          No. 1:23-cv-09748-GHW
INC. SECURITIES LITIGATION :
------------------------------------------------------- :          **CLASS ACTION**
:
:          **ORAL ARGUMENT REQUESTED**
:
:
:
THIS DOCUMENT RELATES TO: ALL :
ACTIONS :
:
:
X
-------------------------------------------------------

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP

Christopher D. Belelieu
Nathan C. Strauss
Bethany J. Saul
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants*

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    THE COMPANY ENGAGES IN TYPICAL AND ACCURATE
    FINANCIAL REPORTING DURING THE CLASS PERIOD ............................ 2

        1.    SolarEdge Strives to Meet Post-Pandemic Demand for Its Products ......... 3

        2.    SolarEdge's Executives Explain to Investors, with Caveats,
        Europe's Growing Demand ......................................................................... 3

        3.    On the Q1 2023 Earnings Call, SolarEdge Explains That While
        Demand Is High, Inventory Is Also Rising as the Company
        Recovers from the Pandemic ..................................................................... 4

        4.    During the Q2 2023 Earnings Call, While SolarEdge Reported
        Record Revenue in Europe, It Cautioned That Demand Was More
        Moderate Than Expected and Inventory Build-Up Had Risen ................... 4

        5.    During the Q3 2023 Earnings Call, SolarEdge Executives Disclose
        an Unexpected Drop in Demand ................................................................. 5

    B.    THE COURT DISMISSES MOST OF PLAINTIFFS' CAC ............................... 5

STANDARD OF REVIEW ..................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    A.    THE SAC FAILS TO STATE A CLAIM UNDER SECTION 10(B) ................... 7

        1.    The SAC Fails to Plead an Actionable Misstatement or Omission ........... 7

        2.    Plaintiffs Have Not Adequately Pleaded Scienter ................................... 15

    B.    PLAINTIFFS FAIL TO STATE A 20(A) CLAIM BECAUSE THEY
    FAIL TO STATE A 10(B) CLAIM ................................................................... 25

CONCLUSION ................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re AppHarvest Sec. Litig.*,
  684 F. Supp. 3d 201 (S.D.N.Y. 2023)..................................................................................11

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) ..............................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................6

*In re AT&T DirecTV Now Sec. Litig.*,
  480 F. Supp. 3d 507 (S.D.N.Y. 2020)................................................................................21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)...........................................................................................6, 25

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)................................................................................21

*In re Citigroup Inc. Sec. Litig.*,
  753 F. Supp. 2d 206 (S.D.N.Y. 2010)....................................................................16, 17, 20

*In re FBR Inc. Sec. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008)................................................................................12

*Gavish v. Revlon, Inc.*,
  2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)..............................................................21, 22

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
  2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022), *report and recommendation*
  *adopted*, 2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023)..............................................13, 15

*Hart v. Internet Wire, Inc.*,
  145 F. Supp. 2d 360 (S.D.N.Y. 2001)................................................................................21

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivative Litig.*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012)..........................................................................12, 14

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)................................................................................................22

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 Fed. App'x 62 (2d Cir. 2015) ......................17

*Moshell v. Sasol Ltd.*,
  481 F. Supp. 3d 280 (S.D.N.Y. 2020)................................................................................23

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)................................................................................15, 17

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    367 F. Supp. 3d 16 (S.D.N.Y. 2019).........................................................................16

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of
    Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)................................................................20, 24

*In re PXRE Grp., Ltd., Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)................................................................16, 24

*Ray v. StoneCo Ltd.*,
    2024 WL 4308130 (S.D.N.Y. Sept. 25, 2024).........................................................10

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)......................................................................................25

*Sask. Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*,
    718 F. Supp. 3d 344 (S.D.N.Y. 2024).........................................................................6

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007)..........................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................15

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993)..........................................................................................11

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022)..............................................................9, 11, 14

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)......................................................................................12

*In re WEBMD Health Corp. Sec. Litig.*,
    2013 WL 64511 (S.D.N.Y. Jan. 2, 2013) ..................................................................17

**Statutes**

15 U.S.C. § 78u-4 .................................................................................................7, 15

15 U.S.C. § 78u-5 .............................................................................................9, 11, 14

Defendants SolarEdge Technologies, Inc. ("SolarEdge" or the "Company"), Zvi Lando, Ronen Faier, J.B. Lowe, and Lior Danziger (the "Individual Defendants," and together with SolarEdge, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs'[1] Second Amended Class Action Complaint ("SAC") for failure to state a claim under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934.

## PRELIMINARY STATEMENT

Plaintiffs have failed to cure the deficiencies that led this Court to dismiss most of their prior complaint. The Court ruled that 24 of the 32 statements Plaintiffs challenged were not false or misleading, and for 6 other statements, Plaintiffs had failed to plead facts showing the requisite scienter. Rather than alleging any new facts showing that SolarEdge's statements were false or misleading, or pleading additional allegations to support scienter, Plaintiffs again rely on essentially the same allegations. As a result, the Court should reach the same decision it previously did, and should again dismiss the SAC as to all allegations except for the two purported misstatements that the Court previously found could survive a motion to dismiss.[2]

Plaintiffs' limited number of new allegations seek to bolster their allegations of scienter as to an alleged "channel-stuffing" scheme. But as with the Consolidated Amended Complaint ("CAC") (and as the Court held previously), those allegations, including statements from a handful of new confidential witnesses, fail to establish that any of the Defendants had sufficient knowledge of the falsity of any statements when made. At bottom, Plaintiffs' slightly new characterization of

---

[1] The court-appointed lead plaintiffs in this matter are Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd.

[2] While Defendants continue to believe that the SAC fails to adequately plead a material misstatement or scienter with respect to *any* of the statements referenced therein, Defendants accept that the Court's prior decision—that Plaintiffs' allegations with respect to two purported misstatements were sufficient to survive a motion to dismiss—is law of the case.

old facts does not change the outcome. The SAC remains deficient for the same reasons previously identified by the Court: it fails to plead falsity with respect to the vast majority of the alleged misstatements, and it fails to plead scienter with respect to all but two of the remaining statements.

## STATEMENT OF FACTS[3]

SolarEdge is a leading smart energy technology provider that manufactures and sells solar products. SAC ¶ 2. Since 2020, Lando has served as SolarEdge's CEO. Before that, Lando was the Company's Vice President of Global Sales. Faier has been the Company's CFO since 2011. Lowe has served as the Head of Investor Relations since February 2023. Danziger served as the SolarEdge Director of Investor Relations and Finance Operations until February 2023.

### A.     THE COMPANY ENGAGES IN TYPICAL AND ACCURATE FINANCIAL REPORTING DURING THE CLASS PERIOD[4]

As a public company, SolarEdge discloses financial and business metrics relating to its worldwide operations through SEC reporting forms, quarterly earnings calls, and industry conferences. Plaintiffs allege misstatements were made during quarterly earnings calls on February 13, 2023 ("2022 Earnings Call"); May 3, 2023 ("Q1 2023 Earnings Call"); and August 1, 2023 ("Q2 2023 Earnings Call"). *See* App. A. Each earnings call was accompanied by either a Form 10-K or Form 10-Q, all of which contained extensive cautionary language and highlighted several risk factors.[5] The Company's officers also appeared at numerous industry events during the Class Period. Plaintiffs allege that misstatements were made at six conferences and/or symposia between March 13, 2023 and September 21, 2023. *See* SAC ¶¶ 135-95.

---

[3] Appendix A contains a comprehensive list of all alleged misstatements referenced in the SAC, organized by the categories outlined in the Court's Order on the first Motion to Dismiss, Dkt. 70.
[4] The CAC modified the proposed Class Period to run from February 13, 2023 to October 19, 2023.
[5] Appendix B provides a comprehensive overview of all meaningful cautionary language and risk factor discussion contained in the SEC forms.

1.     **SolarEdge Strives to Meet Post-Pandemic Demand for Its Products**

As of late 2022, the logistical disruptions related to the COVID-19 pandemic continued to trouble the solar energy industry, making it difficult to forecast economic conditions. *See* Belelieu Decl. Ex. 1 (2022 Form 10-K) at 41. At the same time, demand for solar products exploded, particularly in Europe: low interest rates, enormous government spending programs, and the Russia-Ukraine conflict spurred mass investment in solar. *See id.* at 24, 42.; *id.* at Ex. 3 (2022 Earnings Call) at 2-3. SolarEdge was transparent about the complicated environment yet optimistic about the Company's ability to meet these challenges. On the 2022 Earnings Call, Lando informed investors that revenue grew in 2022 due to factors such as the Russia-Ukraine war and SolarEdge's expanded product portfolio, while cautioning that post-pandemic logistical challenges meant "demand [was] far exceeding our ability to manufacture and deliver." *Id.* at Ex. 3 (2022 Earnings Call) at 2-3, 11. Similarly, SolarEdge's 2022 10-K announced mitigations against COVID-related logistical challenges, such as new manufacturing sites in North America and capacity expansion at a facility in Israel. *Id.* at Ex. 1 (2022 Form 10-K) at 44.

2.     **SolarEdge's Executives Explain to Investors, with Caveats, Europe's Growing Demand**

Early in 2023, Defendants told investors they were expecting growth because the environment remained similar to that of late 2022. On March 13, 2023, Danziger told investors at the ROTH Conference that he expected Europe's strong demand to continue, in part because Europe's energy shortage "will be bridged through renewables and from that solar," but made clear that the Company was facing production delays and would "not guide for a specific growth rate for us in Europe in 2023." Belelieu Decl. Ex. 7 (Mar. 13, 2023 ROTH Conf.) at 2-4. On March 28, 2023, Faier struck the same tone at the Wells Fargo Clean Energy Symposium, noting strong demand in Europe but cautioning against an overly optimistic outlook in light of questions around

3

European energy policy.  *Id.* at Ex. 8 (Mar. 28, 2023 Wells Symp.) at 3.

      **3.**      **On the Q1 2023 Earnings Call, SolarEdge Explains That While Demand Is High, Inventory Is Also Rising as the Company Recovers from the Pandemic**

At the end of the first financial quarter in 2023, financial results confirmed expectations about demand in Europe: the Company's revenue increased 44% compared to the first quarter of 2022, driven by the European market.  Belelieu Decl. Ex. 2 (Q1 2023 Form 10-Q) at 8.  On the Q1 2023 Earnings Call, Faier explained that he believed existing trends in Europe would continue because of stubbornly high energy prices, and that inventory was finally meeting the high levels of demand.  *Id.* at Ex. 4 (Q1 2023 Earnings Call) at 7-9.  Faier disclosed that due to manufacturing investments, total inventory had risen by about $140 million quarter-over-quarter, likely benefitting the Company by reducing shipping times and costs.  *Id.*

      **4.**      **During the Q2 2023 Earnings Call, While SolarEdge Reported Record Revenue in Europe, It Cautioned That Demand Was More Moderate Than Expected and Inventory Build-Up Had Risen**

On August 1, 2023, after announcing record revenue of $991 million, Lando disclosed that "strength in the market is somewhat more moderate than what was anticipated heading into 2023," as channel inventory rose due to distributors that (i) no longer needed to guard against supply chain disruptions and (ii) reduced their portfolio of suppliers after expanding during the pandemic.  Belelieu Decl. Ex. 5 (Q2 2023 Earnings Call) at 3.  Still, Faier later explained, "when you look at the days outstanding[6] . . . [channel inventory levels are] not high at all."  *Id.* at 11.  Lando twice disclosed that inventory adjustment "could continue for the next two quarters."  *Id.* at 3, 22.

Defendants further disclosed these new trends at industry events.  For example, on August 8, 2023, at the Oppenheimer Conference, Faier explained that in 2022, distributors were taking

---

[6] "Days outstanding" and "days on-hand" are common industry language referring to the average number of days a company will hold inventory before selling it.

"whatever piece of equipment that they could get," but by summer 2023, they could "rely better on our supply," creating a rapid transition from "over-demand to an extreme oversupply." *Id.* at Ex. 9 (Aug. 8, 2023 Oppenheimer Conf.) at 2-4.  On September 23, 2023, at the KeyBanc Symposium, Lowe told attendees that even though underlying demand remained strong, distributors would intentionally decrease inventory over the next one to two quarters to correct a working capital imbalance.  *Id.* at Ex. 10 (Sept. 21, 2023 KeyBanc Symp.) at 6-7.

**5.      During the Q3 2023 Earnings Call, SolarEdge Executives Disclose an Unexpected Drop in Demand**

As Defendants reviewed and disclosed Q3 2023 financials, it became clear that the complications in the market were materializing more acutely than expected.  On the Q3 Earnings Call on November 1, 2023, Lando explained that although there was immense demand in 2022 and early 2023, SolarEdge's efforts to catch up created an inventory glut.  *See* Belelieu Decl. Ex. 6 (Q3 2023 Earnings Call) at 2-3.  Concurrent sell-through data confirmed the market was experiencing strong underlying long-term demand (strong year-over-year growth) coupled with a sharp, recent correction (unexpectedly weak quarter-over-quarter growth).  *Id.* at 4-5, 20.

**B.      THE COURT DISMISSES MOST OF PLAINTIFFS' CAC**

Plaintiffs filed their original complaint on November 3, 2023.  Dkt. 1.  Plaintiffs filed a Consolidated Amended Complaint ("CAC") on April 22, 2024, alleging 34 misstatements across five categories: (1) revenues, (2) explanations of rising inventory levels, (3) characterizations of inventory levels as low, (4) demand in Europe, and (5) sell-through data.  Dkt. 55.  Defendants moved to dismiss the CAC because, among other things, Plaintiffs failed to allege falsity and scienter with particularity under the PSLRA.  Dkt. 65, 66.  The Court granted Defendants' motion in part, and denied in part, dismissing Plaintiffs' claims as to all but two of the alleged misstatements.  Dkt. 70.

5

In its order ruling on Defendants' Motion to Dismiss, this Court found that Plaintiffs had failed to adequately allege a material misstatement or omission as to all statements in Categories (1), (4), and (5), with the exception of one statement from Category (1) by Lando. *See* Dkt. 70 at 13-19, 21-26. The Court further ruled that while Plaintiffs had adequately alleged material misstatements with respect to the other categories, *see id.* at 19-21, Plaintiffs failed to plead scienter as to the Company's alleged practice of channel stuffing, thus dismissing claims as to statements in Category (2) and the remaining statement in Category (1). *Id.* at 27-30. Accordingly, the only two statements to survive the Motion to Dismiss were the two statements in Category (3)—in which Faier and Lando, respectively, categorized inventory levels as "low." *Id.* at 8 n.9; *see* SAC ¶¶ 156-57. The Court dismissed all claims against Lowe and Danziger. Dkt. 70 at 33.[7]

Plaintiffs filed the SAC on January 3, 2025. The SAC does not allege any additional misstatements, nor does it plead additional facts to show that any previously dismissed statement was false or misleading. Rather, the SAC contains a handful of allegations from six additional confidential witnesses, apparently in an attempt to bolster Plaintiffs' scienter allegations.

**STANDARD OF REVIEW**

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sask. Healthcare Emp.'s Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 374 (S.D.N.Y. 2024) (Woods, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, "[s]ecurities fraud claims are subject to heightened pleading requirements" under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d

---

[7] Further, Plaintiffs failed to state a claim with respect to the statements at SAC ¶ 148 (*see* Dkt. 70 at 20 n.15) and SAC ¶¶ 188, 190 (same statements as SAC ¶¶ 152, 161, respectively). By failing to plead any additional facts in the SAC, Plaintiffs have again failed to state a claim for relief with respect to these statements.

87, 99 (2d Cir. 2007). Under Rule 9(b), Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citation omitted). Under the PSLRA, Plaintiffs must (1) "specify each statement alleged to have been misleading," (2) "the reason or reasons why the statement is misleading," and (3) "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). The SAC does not satisfy the PSLRA's pleading requirements.

## ARGUMENT

Plaintiffs have failed to revive any of their previously dismissed claims for the following reasons, each of which requires dismissal: (1) Plaintiffs' new allegations fail to plead any actionable misstatement or omission; and (2) Plaintiffs' new allegations do not give rise to a strong inference of scienter.

## A.    THE SAC FAILS TO STATE A CLAIM UNDER SECTION 10(B)

Plaintiffs again fail to adequately plead an actionable misstatement or omission, or the requisite scienter. The SAC does not allege any new facts—much less facts that cure the fatal defects identified in the Court's prior order—and the Court should reach the same conclusion as it did with respect to the CAC.

### 1.    The SAC Fails to Plead an Actionable Misstatement or Omission

#### a.    Statements Regarding Strength of Demand in Europe – Category (4)

The Court dismissed Plaintiffs' Category (4) claims for failure to plead an actionable misstatement or omission.[8] Dkt. 70 at 25. Category (4) contains 17 statements regarding the

---

[8] Category (4) statements are set forth in the Court's opinion on the Motion to Dismiss the CAC, Dkt. 70 at 8-9 n.10, and identified in Appendix A. *See also* SAC ¶¶ 164, 167-82, 186, 192.

7

strength of demand for SolarEdge's products in Europe. *Id.* at 8 n.10; App. A. Plaintiffs claim that these statements—which described accurately reported financial statistics—were "false and/or misleading" because demand in Europe was supposedly low at the time. *See* SAC ¶ 183. In its prior ruling, the Court held that Plaintiffs had failed to plead with particularity that demand in Europe was "not strong or healthy." Dkt. 70 at 25. Specifically, the Court rejected CW2 testimony as "vague and conclusory," disregarded CW4 testimony as insufficiently particular to infer that demand was in fact weak, and refused to rely on "rumor, conjecture, and unspecific" "chatter" of third-party analysts. *Id.* at 22-23. Additionally, the Court declined to view the statement that "demand is very strong, although not as strong as everyone thought" as an admission that demand was weak, underlining Plaintiffs' attempts to plead fraud-by-hindsight. *Id.* at 24.

In the SAC, Plaintiffs have failed to plead any additional facts to suggest that demand in Europe was not in fact healthy at the time the statements were made. Plaintiffs add no new allegations to cure deficiencies with the testimonies of CW2 and CW4, third-party analysts, or Defendants' statements about flattening demand. *Id.* at 22-25. Moreover, any new allegations with respect to demand fail for the same reasons previously identified by the Court. Plaintiffs source their new allegations from CW10 and CW15, who both worked in sales territories across the U.S. and Canada. SAC ¶¶ 44, 48, 63. But as with CW2 and CW4, "Plaintiffs fail to plead that an American" sales employee "'would be in a position to know about' demand for SolarEdge's products in Europe." Dkt. 70 at 23 (quoting *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 376 (S.D.N.Y. 2007)). Tellingly, although Plaintiffs bring forth three new confidential witnesses based in Europe—CW12, CW13, and CW14—not one makes an allegation about demand in their own region. *See* SAC ¶¶ 46-47. Furthermore, the testimonies of CW10 and CW15 are equally "vague and conclusory" as the disregarded testimonies of CW2 and CW4, Dkt. 70 at

8

23-24, and are based entirely on hearsay, SAC ¶ 63.  CW10 apparently "heard from colleagues in mid-2023 that the Company was seeing a 'slowdown' in its European business" and stated that distributors were cutting back on purchases "because of the slowdown," while CW15 was apparently told *in July 2022* that "Europe is struggling" and claimed there was a "lack of sales in Europe."  *Id.*  Like before, these allegations should be disregarded as "rumor, conjecture, and unspecific," Dkt. 70 at 22, and the Court should find that Plaintiffs have again failed to plead an actionable misstatement or omission with respect to demand in Europe.[9]

### b.        Statements Regarding Sell-Through Data – Category (5)

Plaintiffs claim that Category (5) statements concerning sell-through data were false or misleading either because SolarEdge's sell-through forecasts were not "based on credible sources" or because the "forecasts were artificially inflated at the insistence of the Company's executives."[10] *See, e.g.*, SAC ¶¶ 187, 189, 191.  This Court held that Plaintiffs failed to plead with particularity that Defendants' statements were false or misleading because the "single allegation" Plaintiffs offered by CW4 was "not enough to support Plaintiffs' claims" that the statements "were false." Dkt. 70 at 25.  CW4 claimed to have created forecast reports that executives Peter Mathews, Amit Cohen, Naama Ohana, and Daniel Huber, reviewed and then purportedly rejected as "too low."

---

[9] To the extent the Court finds that Plaintiffs have pleaded sufficient new facts to allege an actionable misstatement or omission, several statements in Category (4) are forward-looking and adequately protected by the PSLRA's safe harbor.  *See* App. C.  The statements at SAC ¶¶ 168 (same as 186), 173, and 174 are forward-looking statements because they all contain quintessential forward-looking language: "will be similar to" (SAC ¶¶ 168, 186); "will take us another couple of quarters" (*id.* ¶ 173); "this would probably still be" (*id.* ¶ 174).  *See* 15 U.S.C. § 78u-5(i)(1).  The PSLRA safe harbor protects these forward-looking statements because (1) Plaintiffs fail to "show actual subjective knowledge" of their falsity, and (2) the statements at SAC ¶¶ 168 (same as 186) and 173 were accompanied by "meaningful cautionary language" as set forth in Appendix B.  *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 212-13 (S.D.N.Y. 2022); *see also* Dkt. 66 at 27-28.

[10] Category (5) statements are set forth in the Court's opinion on the Motion to Dismiss the CAC, Dkt. 70 at 9 n.11, and identified in Appendix A.  *See also* SAC ¶¶ 159, 161, 179, 182, 194.

SAC ¶ 76. Yet as the Court explained, Plaintiffs (1) failed to situate these forecasts in time, (2) did not allege that Defendants adopted the forecasts the executives supposedly preferred, and (3) failed to create an inference that the forecasts the executives preferred were false or misleading. *See* Dkt. 70 at 25-26.

The SAC fails to plead additional facts related to the gaps the Court identified with CW4's testimony concerning timing and the executives' conduct, and any additional allegations fail to include sufficient detail to revive Plaintiffs' claims. Plaintiffs include new allegations that CW10 was "effectively forced to revise his forecasts upward." SAC ¶ 68. CW10 claims that his supervisor had spoken to "management" and that his supervisor said CW10's forecast was "not going to cut it," and that he eventually "fudge[d] it" and made "estimated guesses." *Id.* ¶ 69. Yet the SAC does not even make clear CW10 is talking about *sell-through* forecasts. *Compare* SAC ¶¶ 68-70 (CW10's forecasts used "to provide manufacturing guidance on upcoming production needs"), *with* SAC ¶ 67 (CW4 refers to forecasting "for sales through to end customers"). Furthermore, as this Court highlighted with CW4, CW10 "does not show that his forecasts contradicted the forecasts Defendants referenced 'at the time the statements were made,'" Dkt. 70 at 25 (citing *Ray v. StoneCo Ltd.*, 2024 WL 4308130, at *9 (S.D.N.Y. Sept. 25, 2024)), because the alleged incident occurred *after* the purported Class Period, SAC ¶ 68. Finally, with CW10 as with CW4, "a single employee's disagreement with the forecasting method of [his superiors] is insufficient to support the inference that their chosen forecasts were false or misleading." Dkt. 70 at 25 (citation omitted). In short, the SAC's new vague allegations—which *postdate* the purported

10

Class Period—are insufficient to support their allegation that "SolarEdge was very aggressive with its forecasting" such that its sell-through statements were misleading.[11]  Dkt. 70 at 26.

### c.    Statements Discussing SolarEdge's Revenue – Category (1)

Plaintiffs claim that some Category (1) statements concerning reported revenue—which described accurately reported financial statistics—created a duty for SolarEdge to disclose "the entire truth about how it achieved those revenues."[12]  SAC ¶¶ 140, 142, 144.  As to the statements at SAC ¶¶ 141 and 143, the Court held that Plaintiffs failed to plead actionability because these two statements "simply state the amount and source of the revenue," and do not "attribute the growth in revenue to any specific cause."  Dkt. 70 at 18-19.  Thus, the statements do "not create a duty among Defendants to offer up SolarEdge's [alleged] channel stuffing as a cause."  *Id.* (citing *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 270 (S.D.N.Y. 2023)).  Nothing in the SAC changes the Court's existing conclusion.  Plaintiffs still fail to allege that these revenue figures are false or inaccurate.  Nor have Plaintiffs added any allegations that suggest the Company had a duty to disclose further information.  And the securities laws "do not create an affirmative duty to disclose any and all material information."  *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d at 237 (citation omitted); *see In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very

---

[11] To the extent the Court finds that Plaintiffs have pleaded sufficient new facts to allege an actionable misstatement or omission, two statements in Category (5) are forward-looking and adequately protected by the PSLRA's safe harbor.  *See* App. C.  The statements at SAC ¶¶ 161, 194 are forward-looking statements because they both contain quintessential forward-looking language: "are going to be" and "should be" (SAC ¶ 161); "are going to be" (*id.* ¶ 194).  *See* 15 U.S.C. § 78u-5(i)(1).  The PSLRA safe harbor protects these forward-looking statements because (1) Plaintiffs fail to "show actual subjective knowledge" of their falsity and (2) both of the statements were accompanied by "meaningful cautionary language" as set forth in Appendix B. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d at 212-13; Dkt. 66 at 27-28.

[12] Category (1) statements are set forth in the Court's opinion on the Motion to Dismiss the CAC, Dkt. 70 at 7 n.7, and identified in Appendix A.  *See also* SAC ¶¶ 139, 141, 143.

11

much like to know that fact."). As stated in this Court's prior order, allegations as to these statements should be dismissed for failure to plead an actionable misstatement.

In its prior order, this Court held that Plaintiffs pleaded an actionable omission as to one statement in Category (1), at SAC ¶ 139. Plaintiffs allege that on February 13, 2023, Lando attributed record revenues in 2022 to macroeconomic forces and SolarEdge's increased product offering, which he summarized as "the increase in power prices prior to the beginning of the Ukraine-Russia conflict and the accelerated increases ever since, as well as the expansion of [SolarEdge's] portfolio to include inverters, EV chargers, and batteries." SAC ¶ 139. The Court ruled that because Lando listed specific factors that led to growth in SolarEdge's European revenues in 2022, "he was obligated 'to tell the whole truth' with respect to the cause of the revenue growth," which Plaintiffs allege to have included a practice of channel stuffing. Dkt. 70 at 15 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016)). While Defendants do not challenge that holding for purposes of this motion, Defendants renew their assertion, for preservation purposes, that Defendants fail to plead an actionable misstatement as to that statement. *See* Dkt. 66 at 19-23.[13]

---

[13] Nor do the new allegations in the SAC make Plaintiffs' allegation any stronger. Indeed, the additions to the SAC fail to allege that the purported channel stuffing even contributed to revenue growth in 2022. Even if confidential witnesses allege that certain managers placed pressure on sales personnel to sell product on favorable terms, *see* SAC ¶¶ 74, 80, 82, none of these allegations are connected to revenue growth in 2022. As such, "there is no direct connection between Defendants' statements regarding the sources of its revenue . . . growth and the omitted information regarding" Defendants' allegedly "hyper-aggressive sales tactics." *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivative Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012). Without any showing that increased power prices and expanded product offerings were not driving Defendants' revenue, or that channel stuffing was, "these statements are not misleading because they do not suggest that the undisclosed improper activity alleged by Plaintiff was not occurring." *Id.* (citing *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 358 (S.D.N.Y. 2008)).

**d.      Statements Offering Explanations for the Increase in Inventory Levels – Category (2)**

Plaintiffs claim that statements about increasing inventory levels in Category (2) created a duty to disclose "the entire truth about the reasons for the increase in [inventory]," referring to a duty to report an alleged practice of channel stuffing.[14]  SAC ¶ 147; *see id.* ¶¶ 151, 165.  The Court held that Plaintiffs had successfully alleged a material misstatement with respect to the statements in Category (2).  Dkt. 70 at 19.  While Defendants do not challenge that holding for purposes of this motion, Defendants renew their assertion, for preservation purposes, that Defendants fail to plead an actionable misstatement as to the Category (2) statements.  *See* Dkt. 66 at 19-20, 23-25.  Furthermore, Defendants assert that Plaintiffs have failed to allege new facts to suggest that the Company was engaged in channel stuffing at the time the statements were made, and resort to generalized claims that "the company placed huge pressure on employees asking them . . . to improve sales," that "[t]he sky is falling," and, without specifying any time frame, that "SolarEdge consistently required customers to buy product that they did not want or need."  SAC ¶¶ 74, 80, 82.  No new allegations plead channel stuffing with the requisite particularity.  Instead, Plaintiffs refer to a laundry list of supposed *internal* pressures that apparently caused SolarEdge personnel to engage in alleged improper conduct, *id.* ¶¶ 66, 71, 72, 77, without ever pleading actual instances of that conduct.  At best, Plaintiffs point haphazardly at clients claiming that they were purported victims of channel stuffing as a general matter, without pointing to one *specific* instance of such conduct.  *See, e.g., id.* ¶¶ 75, 79, 82.  Such pleading fails to meet applicable requirements under the PSLRA and Second Circuit precedent.  *See In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *28-29 (E.D.N.Y. Nov. 4, 2022), *report and recommendation adopted*, 2023 WL

---

[14] Category (2) statements are set forth in the Court's opinion on the Motion to Dismiss the CAC, Dkt. 70 at 8 n.8, and identified in Appendix A.  *See also* SAC ¶¶ 146, 150, 152, 163, 164.

6360345 (E.D.N.Y. Sept. 29, 2023) (discounting series of mutually consistent but otherwise vague and speculative CW allegations because even the most concrete allegation was "bereft of particulars"). Moreover, Plaintiffs fail to show that increased inventory "was *not* due to" the reasons Defendants cited—distributor preferences and prior product shortages, among others. *In re ITT Educ. Servs.*, 859 F. Supp. 2d at 578-79.[15]

> e. **Statements Characterizing Inventory Levels as "Low" – Category (3)**

Category (3) contains two statements in which Faier and Lando characterized inventory levels as "low."[16] This Court already found that Plaintiffs adequately pleaded as to these two statements that "inventory held by both SolarEdge and its distributors was growing in the first half of 2023." Dkt. 70 at 20. However, the SAC fails to add sufficient facts to bolster Plaintiffs' allegations of misleading statements about inventory levels. Plaintiffs have merely added hyperbolic allegations from a new confidential witness, CW15, a sales director covering the U.S. and Canada who was employed at SolarEdge through May 2023 (halfway through the Class Period). SAC ¶¶ 48, 80-81. CW15 generally alludes to "an impending collapse of sales," claiming that "[t]he sky is falling," and purporting to have asked of a team in Israel, "What are you going to do about the impending collapse?" SAC ¶ 80. CW15 throws in a hearsay statement from

---

[15] Defendants further renew the argument, for preservation purposes, that the statements at SAC ¶¶ 146, 152 are forward-looking and adequately protected by the PSLRA's safe harbor. *See* App. C. Each is a forward-looking statement because it contains quintessential forward-looking language: "will allow us to further improve," SAC ¶ 146; "will be cleared," *id.* ¶¶ 152, 188. *See* 15 U.S.C. § 78u-5(i)(1). The PSLRA safe harbor protects both forward-looking statements because (1) Plaintiffs fail to "show actual subjective knowledge" of their falsity and (2) both were accompanied by "meaningful cautionary language" as set forth in Appendix B. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d at 212-13.

[16] As set forth in the Court's opinion on the Motion to Dismiss the CAC, *see* Dkt. 70 at 8 n.9, Category (3) contains the following statements from the SAC: SAC ¶ 156 ("[W]hen we are looking at the inventory on hand, when it comes to our distributors, the channels are pretty, I would say, low on inventory in most cases."); *id.* ¶ 157 ("[I]n Europe, we actually see low [channel] inventory days on hand . . . . [T]he level of [channel] inventory is relatively not high.").

another employee who "also recognized the impending collapse." *Id.* ¶ 81.  These statements do not contain any concrete facts and merely dress up Plaintiffs' narrative in sweeping terms.  They are therefore entitled to no weight.  *See In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *28-29, *report and recommendation adopted*, 2023 WL 6360345 (discounting a series of mutually consistent but otherwise vague and speculative CW allegations because even the most concrete allegation was "bereft of particulars").

Because the Court has already ruled that Plaintiffs have adequately pleaded actionable misstatements with respect to these two statements, Defendants do not move to dismiss these two statements on actionability grounds but maintain that they did not create in the mind of the reasonable investor the unqualified impression that inventory was low in spring 2023.

### 2.    Plaintiffs Have Not Adequately Pleaded Scienter

In addition to their failure to allege that any of Defendants' statements were false or misleading, Plaintiffs' sweeping and conclusory allegations of intent to defraud do not satisfy the PSLRA's stringent scienter requirement.  To adequately state a claim under Rule 10b-5, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), *i.e.*, "intent[] to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citation and internal quotation marks omitted).  To plead a "strong inference" of scienter, Plaintiffs must allege "facts showing (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (citation and internal quotation marks omitted).  Plaintiffs fail to plead either element.

With respect to the first element, the SAC does not allege that the Individual Defendants received some "concrete and personal" benefit from the purported fraud. *Novak v. Kasaks*, 216

15

F.3d 300, 307-08 (2d Cir. 2000). Plaintiffs also fail to plead the second element because they do not allege the Defendants had access to "*specific* contradictory information . . . *at the same time* they made their misleading statements." *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019) (citation omitted). Instead, they continue to assert that the Defendants possessed the knowledge alleged by CWs—an assertion that has been rejected time and again in this Circuit. *See In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y. 2009) (citations and internal quotation marks omitted) (rejecting the sufficiency of an allegation that a defendant "ought to have known"); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 244-45 (S.D.N.Y. 2010) (holding that allegations of CW knowledge were insufficient where it was never pled that the CWs presented their knowledge to the defendants).

### a. Plaintiffs Have Failed to Plead Defendants' Scienter with Respect to Statements Concerning the Strength of Demand in Europe (Category (4)), Sell-Through Data (Category (5)), and Some Revenue Statements (Category (1))

Like the CAC, the SAC fails to plead scienter for all statements in Category (4), SAC ¶¶ 164, 167-182, 186, 192, regarding demand in Europe, all statements in Category (5), *id.* ¶¶ 159, 161, 179, 182, 194, regarding sell-through data, and two statements in Category (1), *id.* ¶¶ 141, 143, regarding SolarEdge's revenue. In its prior ruling, the Court did not reach the scienter analysis for these statements because they were dismissed on actionability grounds. Because Plaintiffs have failed to plead sufficient additional allegations as to the actionability of these alleged misstatements, as explained in Sections A(1)(a)-(c) above, the Court again does not need to reach the scienter analysis. If the Court does reach the scienter analysis, the Court should again dismiss allegations as to these categories of statements because Plaintiffs have also failed to plead sufficient facts to suggest that any Defendant exercised the requisite scienter with respect to demand in Europe, sell-through data, and revenue reporting.

16

With respect to Category (4), the SAC fails to plead facts suggesting that Defendants acted with scienter when they made statements about demand in Europe. "Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." *Novak*, 216 F.3d at 309 (citation omitted). Plaintiffs' broad and unspecific allegations that CW4 informed Lando and Faier that demand was falling, SAC ¶ 100, and that Lando and Faier reviewed "financial details," *id.* ¶ 99, are too general to demonstrate the Defendants were aware of contrary information, specifically about demand in Europe, at the time of the alleged misstatements, *see* Dkt. 70 at 23-25. The SAC's one additional allegation about demand—the existence of "monthly reports . . . show[ing] inventory levels reflecting that a drop-off in sales was coming in 2023," SAC ¶ 93—similarly fails to plead with specificity that the "drop-off" would occur in Europe or how Defendants would have drawn from the report a conclusion about sales. These generic allegations do not meet the heightened pleading requirements for allegations of scienter. Additionally, Lando's and Faier's subsequent statements tempering prior optimism do not show they were previously aware of contrary information; rather, these statements show that they became aware of subsequent facts and revised their forecasts accordingly. *See In re WEBMD Health Corp. Sec. Litig.*, 2013 WL 64511, at *12 (S.D.N.Y. Jan. 2, 2013) (concluding that subsequent adverse business conditions did not render prior statements false and misleading). This is precisely the type of "fraud by hindsight" allegation this Court has already rejected. *See* Dkt. 70 at 24 (citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd*, 604 Fed. App'x 62 (2d Cir. 2015)); *see also In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d at 246 (citing *Novak*, 216 F.3d at 309) (rejecting argument that subsequent write-downs on value of certain holdings showed that prior disclosures were misleading). Plaintiffs fail to adequately plead

17

that Defendants were aware of allegedly falling demand in Europe at the time of the alleged statements concerning demand, and thus they fail to plead scienter with respect to these statements.

Plaintiffs have also failed to adequately plead scienter with respect to the Category (5) alleged misrepresentations of sell-through data. The Court previously dismissed these allegations because Plaintiffs relied on a single episode alleged by CW4 that lacked any timeframe, connection to Defendants, or plausibility. *See* Dkt. 70 at 25-26. The SAC attempts to revive its claims with respect to sell-through data by repleading the same story with the same flaws. SAC ¶¶ 68-70. CW10, a U.S. sales manager, alleges that he was forced to "revise his forecasts upward" in late 2023 after the Class Period ended. *Id.* ¶ 68. CW10 claims that his supervisor had "spoken to 'management,'" and "management" relayed that his sales forecasting was "not going to cut it." *Id.* ¶ 69. In response to an alleged communication from "management" to improve sales, CW10 contends that *he* planned to "[p]ush it, fudge it," presumably meaning that CW10 determined to alter the data in his report. *Id.* CW10 does not allege that "management" told him to revise his report, or that even his supervisor told him to do this. Nor does he allege that he told anyone else he was planning to "fudge" his own report. Thus, Plaintiffs have again failed to establish scienter for the same reasons as in the CAC. Not only did this alleged event happen outside of the Class Period, Plaintiffs have failed to allege that "management" did in fact instruct sales managers to revise their forecasts, let alone allege that Defendants were aware of this supposed practice. The SAC fails to allege a single new fact suggesting that Defendants possessed other knowledge contradicting the Company's sell-through reports. Accordingly, Plaintiffs have not adequately pled scienter with respect to these Category (5) statements.

With respect to certain Category (1) statements, Plaintiffs have failed to plead that Defendants were aware of information contradicting Lando's March 3, 2023 statement that

18

"[r]evenues from . . . solar" reached "$909 million . . . mostly driven by record revenues in Europe and Rest of World," *id.* ¶ 141, or his August 1, 2023 statement that solar revenue had reached $947 million "driven by record revenues in Europe," *id.* ¶ 143.  The SAC fails to include a single fact suggesting that this information was false, as explained in Section A(1)(c) above, or that Defendants had access to information suggesting their statements were incorrect.  Additionally, because Plaintiffs fail to plead Defendants were aware of the alleged channel stuffing, *see* Section A(2)(b) below, the SAC cannot allege that Defendants intentionally or recklessly omitted channel stuffing as a factor contributing to SolarEdge's record revenues.  As a result, as with the CAC, the SAC fails to adequately plead scienter for these two statements in Category (1).

**b.      Plaintiffs Have Failed to Plead Defendants' Scienter with Respect to Channel Stuffing (Categories (1) & (2))**

Plaintiffs allege that Defendants' knowledge of channel stuffing renders certain statements about revenue (SAC ¶ 139) and inventory levels misleading, yet the SAC again fails to sufficiently allege scienter with respect to Plaintiffs' channel stuffing claims.  SAC ¶¶ 139, 146, 150, 152, 163-64.  In its prior ruling, the Court analyzed but rejected the sufficiency of Plaintiffs' scienter allegations because Plaintiffs failed to plead sufficient facts suggesting (1) that Individual Defendants knew of this alleged practice; (2) that there was common knowledge within the Company to support a core-operations theory; or (3) that intent should be imputed to the Company.  Dkt. 70 at 27-30.  The SAC similarly fails to make this requisite showing.

*First*, even if the SAC adequately alleged that the Company engaged in channel stuffing, Plaintiffs have failed to allege that Individual Defendants knew of this alleged practice.  Many of the SAC's new allegations essentially reiterate the same unparticularized allegations that this Court previously rejected.  For example, CW13 asserts that "[t]he whole board knew" about the alleged channel stuffing, SAC ¶ 85, but fails to provide any facts suggesting Defendants' personal

19

knowledge or any other basis for that assertion.  Similarly, CW11 claims that "the entire Company (and thus Defendants), knew as early as June 2022 that the Company's warehouses were overstocked."  *Id.* ¶ 96.  The SAC also alleges that CW15, a Director of Sales in the U.S. and Canada, had conversations with three Company employees—none of whom is an Individual Defendant or alleged to report to an Individual Defendant—supporting his belief that an oversaturated channel would lead to a decline in sales.  *Id.* ¶¶ 80-81.  But the Court already dismissed virtually identical statements by CW7 and CW8 concerning Lando's knowledge because such conclusory allegations are based on "nothing more than a defendant's corporate position." *See* Dkt. 70 at 28 (citing *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010)).  As the Court explained, referencing CW7's "belief" that certain information was communicated up to Lando, "Plaintiffs cannot rely on assertions that the information presented by confidential witnesses was known or common knowledge within the company."  Dkt. 70 at 28 (citing *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d at 245).  Plaintiffs fail to plead that CW7, CW8, CW11, CW13, or CW15 directly informed Defendants, attended meetings where the Individual Defendants or Board Members were directly informed, or any other facts suggesting Lando or "[t]he whole board knew" of the alleged channel stuffing.  SAC ¶ 85.

Furthermore, Plaintiffs' broad allegation that Defendants' supposed knowledge of "discounts" to customers, SAC ¶ 87, creates a strong inference that Defendants knew or should have known that channels were saturated, similarly fails.  The SAC says nothing of the volume, frequency, or timeframe of the alleged discounts, undermining Plaintiffs' suggestion that Defendants had knowledge of the alleged sales tactics.  CW15 simply alleges that the "C-suite" must have known.  But even assuming Defendants were aware of some substantial volume of

20

discounts, "'there may have been any number of legitimate reasons for attempting to achieve sales earlier,' none of which would have necessarily entailed knowledge of the [alleged] trend." *Gavish v. Revlon*, 2004 WL 2210269, at *19 (S.D.N.Y. Sept. 30, 2004) (internal citation and brackets omitted). Indeed, "[o]ffering incentives to meet sales or earnings goals is a common practice, and, without additional allegations not present here, the allegation that the sales at issue were made pursuant to incentives to meet goals set by management is an insufficient basis on which to infer conscious misbehavior or recklessness." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004). The SAC's defective allegations improperly rely on what they believe Defendants "ought to have known." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001) (citation omitted). Such allegations do not adequately plead scienter.

*Second*, the SAC fails to plead sufficient facts supporting the core-operations theory with respect to the alleged practice of channel stuffing. This Court has already held that "even if sales to Europe were core operations, Plaintiffs offer no reason to infer that the sales practice of shifting deliveries to the end of the quarter would be part of SolarEdge executives' oversight into this operation." Dkt. 70 at 29. Instead of closing the gap between the alleged practice and knowledge of this practice by executives, Plaintiffs attempt to overcome the CAC's deficiencies with additional allegations that sales managers pushed employees to "improve sales," SAC ¶ 74, or bundle products, *id.* ¶ 82. But as courts have repeatedly held, "aggressive sales practices . . . do not by themselves raise a strong inference of scienter as to the existence of the alleged channel stuffing trend." *Gavish*, 2004 WL 2210269, at *19. Rather, the SAC must "allege with [ ] particularity" that Defendants (1) "knew or had reason to believe" that sales associates were stuffing channels, or (2) personally "directed, instructed, or suggested" that sales associates engage in the alleged practice. *In re AT&T DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 519, 534-35

21

(S.D.N.Y. 2020) (aggressive sales targets insufficient without defendant's knowledge of or instruction to engage in the alleged conduct). The SAC does neither. Instead, the SAC generally alleges that there was "pressure" from management, SAC ¶ 74, or that Lando "had the [ ] idea" to "sell the stock as aggressively as possible," *id.* ¶ 85, without facts suggesting when or how this was communicated by leadership. In order words, Plaintiffs again ask the Court to infer knowledge of alleged channel stuffing from conduct for which there could be "any number of legitimate reasons." *Gavish*, 2004 WL 2210269, at *19. Accordingly, the SAC fails to plead a core operations theory with respect to allegations of channel stuffing.

*Third*, the SAC further fails to plead corporate scienter with respect to channel stuffing. Pleading corporate scienter requires "a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." Dkt. 70 at 30 (citing *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020)). The Court previously explained that it cannot impute the intent of the non-defendant SolarEdge employees named in the SAC to SolarEdge because even if Plaintiffs had alleged they were in the room when channel stuffing practices were discussed, there is no "connective tissue between those employees and the alleged misstatements." *Id.* (quoting *Jackson*, 960 F.3d at 99). The SAC fails to plead any additional facts to suggest that information shared to those employees reached the Individual Defendants or other executives.

For the foregoing reasons, Plaintiffs have failed to adequately plead Defendants' scienter in connection with the channel stuffing allegations. Plaintiffs conclude that Defendants concealed or failed to account for the alleged channel stuffing scheme when they made statements about revenue and inventory. But even taking all Plaintiffs' non-conclusory allegations as true, the SAC reflects nothing more than an aggressive sales strategy by some teams. These allegations do not adequately plead that Defendants acted with the requisite intent.

22

### c. Plaintiffs Have Failed to Plead Defendants' Scienter with Respect to Statements about Inventory Levels (Category (3))

This Court previously ruled that Plaintiffs adequately pleaded that Faier and Lando "had knowledge of or recklessly disregarded information that inventory levels in the channels were becoming saturated when they stated that inventory levels were low." Dkt. 70 at 30; *see* SAC ¶¶ 156-57. While Defendants do not challenge that holding for purposes of this motion, Defendants renew their assertion, for preservation purposes, that Plaintiffs fail to plead scienter with respect to the Category (3) statements. *See* Dkt. 66 at 35-36. Moreover, the SAC fails to allege any new facts that would bolster the relevant scienter allegations.

The SAC fails to allege that Faier intended to mislead investors when sharing "we are looking at the inventory on hand, when it comes to our distributors, the channels are pretty, I would say, low on inventory in most cases" on March 28, 2023. SAC ¶ 156. Additional allegations in the SAC do not support a finding that Faier had knowledge of or recklessly disregarded information about inventory levels in March 2023. The SAC fails to plead that any of the alleged inventory reports were shared with Faier, nor does the SAC provide a timeframe in which he allegedly would have received these reports. While CW11, a sales manager in South Africa, and CW12, a sales manager in Hungary, vaguely allege that Faier directed sales teams to push products on distributors, SAC ¶¶ 96, 232, CW10, a sales manager in the United States, generally alleges that Faier "sometimes attended" quarterly calls with Peter Mathews, the North America General Manager, where "big-picture updates" were shared, *id.* ¶ 95, and CW15, a sales director in the United States until May 2023 (halfway through the Class Period), alleges that "the management team up to the C-level" received reports from distributors, *id.* ¶ 93, the SAC fails to allege any additional specific facts suggesting that Faier was in meetings where channel inventories were discussed or received relevant reports prior to his statement. *See Moshell v. Sasol Ltd.*, 481 F.

Supp. 3d 280, 290 (S.D.N.Y. 2020) (rejecting allegations that change order *would have gone to* the company's Vice President).  Courts have long rejected allegations based on nothing more than a defendant's corporate position.  *See Plumbers & Steamfitters*, 694 F. Supp. 2d at 300 ("[A]ccusations founded on nothing more than a defendant's corporate position are entitled to no weight.") (citation omitted).  Altogether, these new facts in the SAC do not clearly allege that Faier was in possession of specific contradictory information at the time of his statement.

Plaintiffs' allegations with respect to Lando's knowledge of inventory similarly fail to show that Lando acted with the requisite scienter when he spoke on May 3, 2023.  Although Plaintiffs do specifically allege that Lando received inventory reports, the SAC's allegations still suffer from the same flaws described above; namely, Plaintiffs do not provide a timeframe in which Lando allegedly received these reports or the time period covered by the reports he received, including those he allegedly received from the Europe General Manager.  SAC ¶ 97; *see also In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d at 539 (pointing out that plaintiff "provides no time frame" from which to infer the defendants could have been aware of contradictory facts).

### d.    Plaintiffs Have Failed Again to Plead Any Scienter Allegations Against Defendants Lowe or Danziger

Plaintiffs have added no new allegations concerning Danziger or Lowe, relying exclusively on a single allegation from the CAC that Lowe suggested he was generally aware of distributor data.  SAC ¶ 126.  However, Plaintiffs do not allege what data Lowe was referencing or the content of the data he may have received, and they make no allegations about Danziger's knowledge.  Thus, because there are no surviving allegations regarding purported misstatements by Lowe or Danziger, the Court should dismiss all allegations as to those two individuals.

24

**B.     PLAINTIFFS FAIL TO STATE A 20(A) CLAIM BECAUSE THEY FAIL TO STATE A 10(B) CLAIM**

Plaintiffs cannot state a 20(a) claim with respect to either of the two alleged Category (3) misstatements because those were oral statements made directly by Lando and Faier—one at an industry conference and one on an earnings call in response to an analyst question—and there is no allegation of any other Defendant exerting any "control" over Lando or Faier.  Because Plaintiffs fail to adequately allege any Defendant is liable for a primary violation of Section 10(b) outside of those two Category (3) statements, they cannot establish control person liability.  *ATSI Commc'ns*, 493 F.3d at 108; *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).

<u>**CONCLUSION**</u>

For the above reasons, the Court should dismiss the SAC as to all allegations except for the two purported misstatements that survived the motion to dismiss the CAC.  The Court should also dismiss the Section 20(a) claim, and all allegations as to Defendants Lowe and Danziger.

Dated: February 10, 2025
        New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Christopher D. Belelieu*
     Christopher D. Belelieu

Christopher D. Belelieu
Nathan C. Strauss
Bethany J. Saul

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035
CBelelieu@gibsondunn.com
NStrauss@gibsondunn.com
BSaul@gibsondunn.com

*Attorneys for Defendants*

26