**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

IN RE SOLAREDGE TECHNOLOGIES,
INC. SECURITIES LITIGATION

-------------------------------------------------------

THIS DOCUMENT RELATES TO: ALL
ACTIONS

-------------------------------------------------------

X
:
:
:
:
:
:
:
:
:
:
:
:
:
X

No. 1:23-cv-09748-GHW

**CLASS ACTION**

**ORAL ARGUMENT REQUESTED**


**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**


GIBSON, DUNN & CRUTCHER LLP

Christopher D. Belelieu
Nathan C. Strauss
Bethany J. Saul
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

A.    THE SAC FAILS TO PLEAD ADDITIONAL MISSTATEMENTS OR OMISSIONS ........................................................................................... 1

    1.    Statements Regarding Strength of Demand in Europe – Category (4). ....... 1

    2.    Statements Regarding Sell-Through Data – Category (5). ........................ 2

    3.    Statements Discussing SolarEdge's Revenue – Category (1). ................... 3

    4.    The PSLRA "Safe Harbor" Protects Certain of Defendants' Statements... 3

B.    THE SAC FAILS TO PLEAD SCIENTER ............................................................. 5

    1.    The SAC Does Not Plead Lando's or Faier's Scienter with Respect to Allegedly Declining Demand in Europe – Category (4). .......................... 5

    2.    The SAC Does Not Plead Scienter with Respect to Channel Stuffing – Categories (1) & (2). ............................................................................... 7

    3.    The SAC Does Not Plead Scienter with Respect to Sell-Through Forecasts – Category (5). ......................................................................... 9

    4.    The SAC Does Not Plead Scienter for Lowe or Danziger. ....................... 9

    5.    Core Operations Doctrine Does Not Contribute to a Finding of Scienter. .................................................................................................. 9

    6.    Plaintiffs Do Not Allege Corporate Scienter. ....................................... 10

C.    PLAINTIFFS FAIL TO STATE A 20(A) CLAIM BECAUSE THEY FAIL TO STATE A 10(B) CLAIM ........................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Adient plc Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020).................................................................4

*In re Am. Apparel, Inc. S'holder Litig.*,
2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ..............................................................7

*In re AppHarvest Sec. Litig.*,
684 F. Supp. 3d 201 (S.D.N.Y. 2023)........................................................................8

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................................6

*In re Cadence Design Systems, Inc. Sec. Litig.*,
692 F. Supp. 2d 1181 (N.D. Cal. 2010) .....................................................................7

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010)........................................................................8

*Cornwell v. Credit Suisse Grp.*,
689 F. Supp. 2d 629 (S.D.N.Y. 2010)........................................................................8

*In re Dentsply Sirona, Inc. Sec. Litig.*,
665 F. Supp. 3d 255 (E.D.N.Y. 2023) ...................................................................1, 2

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019)...........................................................7

*In re KeySpan Corp.*,
2003 WL 21981806 (E.D.N.Y. July 30, 2003)..........................................................3

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
518 F. Supp. 3d 772 (S.D.N.Y. 2021)......................................................................10

*Manavazian v. Atec Grp., Inc.*,
160 F. Supp. 2d 468 (E.D.N.Y. 2001) .......................................................................3

*In re Mylan N.V. Sec. Litig.*,
2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ...........................................................8

*Nandkumar v. AstraZeneca PLC*,
2023 WL 3477164 (S.D.N.Y. May 16, 2023) ..........................................................10

*Novak v. Kasaks*,
216 F. 3d 300 (2d Cir. 2000)......................................................................................9

*In re Pareteum Sec. Litig.*,
2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)...........................................................7

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) ................................................................8

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. 2015) ...........................................................................8

*Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*,
  2019 WL 2360942 (S.D.N.Y. Mar. 4, 2019) ...............................................................6

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,
  694 F. Supp. 2d 287 (S.D.N.Y. 2010) .........................................................................8

*In re PXRE Grp., Ltd. Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009) .........................................................................6

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ........................................................................................2

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona, Inc.*,
  732 F. Supp. 3d 300 (S.D.N.Y. 2024) .........................................................................7

*Sharma v. Rent the Runway, Inc.*,
  2024 WL 4287229 (E.D.N.Y. Sept. 25, 2024) .............................................................1

*In re Sierra Wireless, Inc. Sec. Litig.*,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007) .........................................................................8

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ........................................................................................4

*In re SLM Corp. Sec. Litig.*,
  740 F. Supp. 2d 542 (S.D.N.Y. 2010) .........................................................................5

*Steinberg v. Ericsson LM Tel. Co.*,
  2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) .............................................................8

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  625 F. Supp. 3d 164 (S.D.N.Y. 2022) ......................................................................4, 9

*Woolgar v. Kingstone Cos., Inc.*,
  477 F. Supp. 3d 193 (S.D.N.Y. 2020) .........................................................................5

### Statutes

15 U.S.C. § 78u-5(i)(1) ....................................................................................................4

Plaintiffs' Opposition makes clear that Plaintiffs simply disagree with the Court's order dismissing the vast majority of the claims asserted in the CAC.[1]  But nothing in the SAC or in Plaintiffs' Opposition should alter the Court's prior analysis.  The few new statements from junior-level CWs in the SAC do nothing to bolster the claims that the Court previously dismissed, and the Court should reach the same outcome as it did in its prior order.

**A.      THE SAC FAILS TO PLEAD ADDITIONAL MISSTATEMENTS OR OMISSIONS**

**1.      Statements Regarding Strength of Demand in Europe – Category (4).**

Plaintiffs allege that Defendants' statements about demand in Europe were false because, contrary to the Company's accurately reported financials, "demand in Europe declined from mid-2022 through the end of the Class Period."  Opp. at 9.  The Opposition shows that Plaintiffs' reliance on new statements from CW10 and CW15 is unavailing for precisely the reasons the Court previously rejected the testimony of CW2 and CW4.  *See* Dkt. 70 at 22-25; Dkt. 77 at 7-9.

Trying to circumvent this reality, the Opposition grasps at CW allegations having nothing to do with European demand, claiming those unrelated allegations somehow "corroborate[]" or "bolster[]" a theory that European demand was falling.  *See* Opp. at 9-12.  The SAC's allegations that (1) CW12 "was in many meetings where the overstock issue was discussed," and that (2) several CWs suggested the promotion of aggressive sales practices are "not particular enough to demonstrate the falsity of Defendants' statements about strong demand in Europe."  Dkt. 70 at 24; Opp. at 9-10.[2]  In any event, a falsity claim based on Defendants' European demand statements

---

[1] Unless otherwise noted, abbreviations and defined terms have the same definition as in the Motion to Dismiss the SAC, *see* Dkt. 77, and Categories of statements are the same as those the Court described in its prior order, *see* Dkt. 70.

[2] Plaintiffs' cases are inapposite.  In *Sharma v. Rent the Runway, Inc.*, while certain CW testimony arose out of internal meetings, the court took care to credit only their particularized testimony, not CWs' "vague assertions."  *See* 2024 WL 4287229, at *11, *15-16 (E.D.N.Y. Sept. 25, 2024); Opp. at 11.  Plaintiffs' reliance on *In re Dentsply Sirona, Inc. Sec. Litig.* is similarly misplaced, as the

1

is impossible: as is clear from the face of the SAC (and the documents referenced therein), demand in Europe was rising throughout the Class Period.  *See* Dkt. 66 at 25.  Plaintiffs do not contest the accuracy of this financial reporting, nor can they overcome it using a string of hazy rumors exchanged a continent away from the relevant market.  Plaintiffs must "do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

### 2.    Statements Regarding Sell-Through Data – Category (5).

Plaintiffs allege that Defendants' statements related to sell-through data were false or misleading because they created the impression that the sell-through data was "based on credible sources" when, supposedly, SolarEdge employees arbitrarily inflated such data.  *See* SAC ¶ 191.  The SAC's one new allegation in support of the alleged falsity of the sell-through statements suffers from the exact same three defects as the allegation this Court rejected in its prior order.  *See* Dkt. 70 at 25-26; Dkt. 77 at 9-11.[3]  For the same reasons the Court already identified in its prior order, none of the Category (5) statements are actionable.  The Opposition attempts to recast two Category (5) statements (¶¶ 159, 161) as "inventory statements," in an apparent effort to latch onto the Court's finding of actionability on statements in other Categories.[4]  *See* Opp. at 12-13 & n.8.

---

court did not state that rising finished goods inventory creates an inference of weak demand; it inferred weak demand based on an allegation of a $113 million increase in *channel* (not finished goods) inventory.  *See* 665 F. Supp. 3d 255, 283 (E.D.N.Y. 2023); *see also* Dkt. 69 at 4-5.

[3] Further, Plaintiffs do not contest in their Opposition the fact that CW10 never refers to the forecasts about which he testified as sell-through forecasts.  *Compare* SAC ¶¶ 68-70 (CW10's forecasts used "to provide manufacturing guidance on upcoming production needs"), *with* SAC ¶ 67 (CW4 refers to forecasting "for sales through to end customers").  In fact, when discussing the alleged falsity of Category (5) statements, Plaintiffs stop referring to CW10's forecasts as sell-through forecasts altogether.  *See* Opp. at 15-16.  This is fatal to their theory that CW10's testimony somehow rendered Defendants' statements about sell-through forecasts false.

[4] The Opposition also inappropriately attempts to relitigate the actionability of two additional statements:  SAC ¶¶ 146 and 148.  *See* Opp. at 12-13.  The statement at SAC ¶ 146 is actually part of Category (2), for which the Court found Plaintiffs failed to allege scienter.  Dkt. 70 at 8 n.8; 27-

2

But the statements at SAC ¶¶ 159 and 161 neither explain rising inventory (Category (2)), nor characterize inventory as "low" (Category (3)).  SAC ¶ 159 acknowledges high inventory and references otherwise positive "days outstanding" numbers (without stating either explains the other); SAC ¶ 161 predicts a forthcoming inventory correction while similarly pointing to promising point-of-sale data.  Both statements discuss sell-through data, and they are non-actionable for the same reasons as the other sell-through statements.

### 3.    Statements Discussing SolarEdge's Revenue – Category (1).

Plaintiffs allege Defendants' statements discussing SolarEdge's revenue over the relevant period were actionable because they triggered a duty for SolarEdge to disclose "the entire truth about how it achieved those revenues."  SAC ¶¶ 140, 142, 144.  In its prior order, the Court explained that Plaintiffs failed to allege that the statements at SAC ¶¶ 141 and 143 were misleading because they "simply state the amount and source of the revenue" and do not "attribute the growth in revenue to any specific cause."  Dkt. 70 at 18.  While the Opposition claims the "SAC's new allegations" save these two statements, it fails to reference any such facts.  *See* Opp. at 14-15.  Accordingly, the Court's existing conclusion stands, and the statements at SAC ¶¶ 141, 143 are not actionable.[5]

### 4.    The PSLRA "Safe Harbor" Protects Certain of Defendants' Statements.

The Opposition fails to refute that the PSLRA Safe Harbor protects the statements at SAC

---

30. Further, the Court explicitly excluded the statement at SAC ¶ 148 from both inventory-related Categories because the statement "does not make an assertion about the level of inventory at that time."  *Id.* at 20 n.15.  The SAC fails to overcome the Court's prior ruling on these two statements.
[5] Instead of new facts, Plaintiffs cite two irrelevant cases.  In *Manavazian v. Atec Grp., Inc.*, non-disclosure of a known adverse business trend was misleading because "[d]efendants characterized [their] current and future business health in extremely positive terms."  160 F. Supp. 2d 468, 481 (E.D.N.Y. 2001) (citation omitted).  In *In re KeySpan Corp.*, the Company "present[ed] an unvarnished public image of itself" and made "rosy public representations."  2003 WL 21981806, at *14-15 (E.D.N.Y. July 30, 2003).  Here, the non-actionable Category (1) statements "simply state the amount and source of the revenue."  Dkt. 70 at 18.

¶¶ 168, 173, 174 (Category (4)), and at SAC ¶¶ 161, 194 (Category (5)).  *See* Dkt. 66 at 26-28. First, because they rely upon second- or third-hand allegations of information purportedly conveyed to Defendants, none of Plaintiffs' allegations come close to meeting the actual knowledge standard.  *See Slayton v. Am. Express Co.*, 604 F.3d 758, 776 n.9 (2d Cir. 2010) (plaintiffs "must show actual subjective knowledge," not merely allege that defendants "must have been aware of" statements' falsity (citation omitted)).  The Opposition does not even attempt to argue otherwise.  *See* Opp. at 16-17.  Such failure alone protects all five forward-looking statements because the "safe harbor is written in the disjunctive." *Slayton*, 604 F.3d at 766.

Further, the statements at SAC ¶¶ 168, 173, 161, and 194 are independently protected by meaningful cautionary language.  Contrary to Plaintiffs' contention that the cautionary language is overly general, the language precisely addresses insufficient demand and weak sell-through, warning of risks related to "our ability to forecast demand for our products accurately," "[d]emand for solar energy solutions," "the ability of end-users to finance the cost of a solar PV system," and "reliance on distributors and large installers to assist in selling our products."  Dkt. 77 App. B[6] at 2, 8; *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 215 (S.D.N.Y. 2022) (cautionary language may be incorporated by reference from a separate document).  Lastly, the Opposition's claim that three forward-looking statements are of "present fact" is inapposite because a forward-looking statement can be "any statement of the assumptions underlying or relating to" future projections.  15 U.S.C. § 78u-5(i)(1); *see also In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *19 (S.D.N.Y. Apr. 2, 2020) (when the "present-tense portion of mixed present and future statements . . .  merely says that, whatever the present situation is, it makes the future

---

[6] Citations to Declaration Exhibits in Appendix B to Defendants' Second Motion to Dismiss refer to the Declaration submitted in support of the first Motion to Dismiss.  *See* Dkt. 77 App. B.

4

projection attainable, the present-tense portion" is not actionable).

**B.      THE SAC FAILS TO PLEAD SCIENTER**

> **1.       The SAC Does Not Plead Lando's or Faier's Scienter with Respect to Allegedly Declining Demand in Europe – Category (4).**

Plaintiffs' Opposition argues allegations that U.S.-based employees received "big-picture updates on SolarEdge's Europe and international business during annual calls with Lando and Faier," that Lando and Faier "sometimes" attended quarterly calls led by Mathews where revenue and stock levels were discussed, SAC ¶ 95, and that Lando and Faier regularly met with Europe General Manager Alfred Karlstetter are sufficient to support scienter, SAC ¶ 97; Opp. at 24-25. However, Plaintiffs do not contend that the issue of declining demand ever came up during any of these meetings or that the topics discussed contradicted Lando's and Faier's public statements. *See Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 220 (S.D.N.Y. 2020) ("The [c]omplaint fails to identify the specific information . . . discussed at the meetings, []or how such information contradicted [d]efendants' public statements."); *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 559 (S.D.N.Y. 2010). This omission is particularly revealing given that the SAC specifically alleges other topics—revenue, stock levels, inventory, and forecasting—were discussed at these meetings. SAC ¶¶ 95, 97. Plaintiffs' argument, that Lando and Faier knew about declining demand because of inventory or sell-through reports, also fails because (1) the Opposition does not explain why inventory or sell-through data would alert Defendants to undisclosed issues about demand, and (2) to the extent sell-through reports may have provided some indication, these reports would have spoken to demand from end-users, not SolarEdge's customers. *See* SAC ¶ 2.

Plaintiffs attempt to replead scienter by repeating the same vague "rumor or conjecture" this Court rejected in the CAC. Dkt. 70 at 27. The Opposition argues CW4's statement that "the market was a lot worse than they thought" provides evidence of scienter, Opp. at 18-19, but the

Court already found this statement was not particularized enough to inform Lando and Faier about declining demand *in Europe*, nor is a single pessimistic view sufficient to constitute specific contradictory information. Dkt. 70 at 23. Rather than correct these flaws, the Opposition doubles down on another employee's vague allegations, arguing that a July 2022 statement that "Europe is struggling" demonstrates scienter. SAC ¶ 63; Opp. at 18. But, in addition to being too vague to infer knowledge contrary to Defendants' public statements,[7] the SAC does not connect this statement to any of the Individual Defendants and thus fails to bolster allegations of scienter.

Plaintiffs further maintain that SolarEdge executives' efforts to increase sales bolster an inference of scienter, Opp. at 21-22, but the Opposition does not contend with Defendants' argument that such efforts are "an insufficient basis on which to infer conscious misbehavior or recklessness," *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004); *see* Dkt. 77 at 20-21.

Plaintiffs' remaining arguments do not even attempt to demonstrate Lando and Faier possessed contradictory information, relying instead on the idea that Lando and Faier *ought* to have known about the allegedly declining demand—a proposition courts in this Circuit have repeatedly rejected. *See, e.g.*, *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y. 2009) (citation omitted). Thus, that Lando and Faier engaged in "regular discussion of demand in Europe with analysts" does not "strengthen the inference of scienter." Opp. at 19.[8] For the same reason, it is not relevant—or even true—that Lando and Faier "'flatly denied' a slowdown

---

[7] The referenced statement more likely referred to SolarEdge's persistent struggle to meet demand in Europe. *See, e.g.*, SAC ¶ 170.

[8] Plaintiffs' reliance on *Plumbers & Pipefitters National Pension Fund v. Tableau Software, Inc.*, 2019 WL 2360942 (S.D.N.Y. Mar. 4, 2019), is inapposite, as the court there did not actually rely on the allegation Plaintiffs quote. In fact, the *Tableau* court held that the quoted allegation was *insufficient* to plead two defendants' scienter. *Id.* at *7. For the two defendants for whom the court held scienter had been adequately pled, the court relied on more specific allegations. *Id.*

in Europe." Opp. at 19; *see, e.g.*, SAC ¶ 104 (underlying demand in Europe "not as good as we thought"). Further, adjusting revenue guidance, if anything, suggests Defendants wanted to maintain transparency, not mislead investors. *In re Pareteum Sec. Litig.* concerned changes to a company's *already-filed* financial statements where the defendants knew their controls were too "inadequate and ineffective" to make firm representations. 2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021). It did not involve, as here, mid-year revisions to guidance on *forthcoming* results.[9]

### 2.    The SAC Does Not Plead Scienter with Respect to Channel Stuffing – Categories (1) & (2).

Plaintiffs attempt to replead scienter with respect to channel stuffing by alleging SolarEdge gave favorable terms, including discounts, to its customers. These arguments do not contend with the fact that extending discounts or other favorable terms to customers does not give rise to an inference of scienter. *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *17 (E.D.N.Y. Mar. 29, 2019) (citation omitted).[10] Plaintiffs' attempt to "connect" these discounts to

---

[9] Plaintiffs cite *In re American Apparel, Inc. S'holder Litig.*, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013), to suggest scienter can be inferred from other employees. However, the SAC does not plead other SolarEdge employees were aware of contradictory information about demand either. Further, *In re American Apparel* concerned executives' claimed ignorance of illegal hiring practices despite an 18-month federal investigation that concluded over 75% of employees were using fraudulent social security numbers. *Id.* at *21. A year-and-a-half-long federal investigation revealing that a significant portion of the workforce was undocumented is hardly comparable to Plaintiffs' allegations here.

[10] Plaintiffs' authorities do not state otherwise. *In re Cadence Design Systems, Inc. Sec. Litig.*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010), stands for the modest proposition that particularized allegations that a defendant gave instructions to take the allegedly fraudulent action "nudge[d] [p]laintiffs' allegations as to [defendant]'s involvement beyond the realm of mere speculation." *Id.* at 1187-88. It does not, as Plaintiffs suggest, support the proposition that a defendant's directions concerning one issue imply knowledge about another. *San Antonio Fire & Police Pension Fund v. Dentsply Sirona, Inc.*, 732 F. Supp. 3d 300 (S.D.N.Y. 2024), is similarly inapt because it concerned a defendant who set "outlandish sales targets" *at the same time* he "silenced critics, muddied internal controls, and bullied . . . others into meeting targets." *Id.* at 321 (internal citation and quotation marks omitted). In fact, the opinion explains that "even aggressive sales targets do not necessarily suggest wrongdoing." *Id.* Rather, aggressive targets must be accompanied by "improper tone at the top and poor internal controls," neither of which Plaintiffs allege here. *Id.*

the Individual Defendants carries no weight because the allegation that "C-suite" approval was necessary to offer discounts, SAC ¶ 87, does not specify who in the "C-suite" gave approval or even whether "C-suite" refers to market executives or SolarEdge's HQ in Israel.  Nor does the Opposition explain the relevance of the discounts alleged by CW15 (a regional sales director for the *U.S. and Canada*, SAC ¶ 48) to the European market.  Thus, Plaintiffs' argument that these discounts are evidence of scienter is unfounded, *see Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *6 (S.D.N.Y. Dec. 10, 2008) (discounting allegations where CW would not have been in a position to know certain facts), and, at most, little more than an impermissible inference based on Lando's and Faier's corporate position,[11] *see Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010).

The Opposition's reliance on CW13's allegation that "the whole board knew" about "the situation," SAC ¶ 85, "merely parrots the conclusory allegations contained in the complaint." *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 376 (S.D.N.Y. 2007); *see In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 243 (S.D.N.Y. 2023) (allegations that "*everyone was aware . . .* 'too vague and conclusory'" (quoting *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010))).  The Opposition relies on *Cornwell v. Credit Suisse Grp.*, but the court in that case relied on "allegations of specific reports" to conclude internal controls were poor and that "those running the company knew."  689 F. Supp. 2d 629, 638 (S.D.N.Y. 2010).

---

Finally, in *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016), the plaintiffs alleged misstatements concerning the defendants' compliance with applicable regulations. *Id.* at *4.  The court's finding of scienter was based on defendants' frequent discussion of compliance with those regulations. *Id.* at *7.

[11] In *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602 (S.D.N.Y. 2015), plaintiffs alleged the defendants were extending discounts but reporting the full value of the transaction as revenue. *Id.* at 616.  *In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018), concerned a price fixing scheme that led to antitrust claims. *Id.* at *17.

Because Plaintiffs rely on Defendants' alleged knowledge of channel stuffing to plead scienter with respect to revenue statements, *see* Opp. at 21, the SAC's failure to plead scienter with respect to channel stuffing also means revenue allegations fail.

### 3. The SAC Does Not Plead Scienter with Respect to Sell-Through Forecasts – Category (5).

Neither the Opposition nor the SAC contends the Individual Defendants ever saw CW4's or CW10's forecasts or were even aware of their efforts, much less any information contradicting those forecasts. Nor is it clear how Defendants' alleged review of sell-through reports from prior months, SAC ¶ 93, suggests the Individual Defendants were aware of information contradicting forecasts about the future. Further, CW10's understanding that certain of his forecasts "would make their way into the financial guidance" is too vague to infer scienter. *See In re Turquoise Hill Res. Ltd.*, 625 F. Supp. 3d at 238 ("Plaintiff must allege . . . the connection (temporal or otherwise) between that information and the statements at issue." (internal citation and quotation marks omitted)). Thus, Plaintiffs again fail to adequately plead scienter here.

### 4. The SAC Does Not Plead Scienter for Lowe or Danziger.

Plaintiffs make no allegations as to Danziger's scienter and rely only on Lowe's passing reference to distributor data as evidence of scienter. SAC ¶ 182. Because the SAC fails to provide the format, regularity, time frame, or even specific dataset Lowe viewed, it is not possible to infer Lowe had access to specific contradictory information at the time of the alleged misstatement. *See, e.g.*, *Novak v. Kasaks*, 216 F. 3d 300, 309 (2d Cir. 2000).

### 5. Core Operations Doctrine Does Not Contribute to a Finding of Scienter.

The SAC provides no new material allegations pertaining to any of the five alleged Categories of misstatements or any reason the Individual Defendants would have overseen aspects of the European market in close enough detail to assume their familiarity with the relevant

9

allegations.  *See* Dkt. 70 at 29.  The fact that Lando was "particularly detailed," Opp. at 24-25, contributes nothing to Plaintiffs' theory of scienter, *see Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021).

### 6.    Plaintiffs Do Not Allege Corporate Scienter.

As the Court already ruled, it "cannot impute Mathews's . . . intent to SolarEdge" because he was not involved in the dissemination of the allegedly fraudulent statements.  Dkt. 70 at 30.  That Mathews led quarterly calls Lando and Faier "sometimes" attended, SAC ¶ 95, does not make him involved in the dissemination of the alleged fraud.  Nor have Plaintiffs alleged specifics concerning Mathews's involvement in, or knowledge of, the forecasting process aside from allegedly requesting strong forecasts to his own direct reports.  *Id.* ¶ 78.  Because Plaintiffs have not alleged any scienter at all concerning Mathews or the Individual Defendants that could be imputed to the Company, Plaintiffs cannot allege corporate scienter.  *Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *4 (S.D.N.Y. May 16, 2023).

### C.    PLAINTIFFS FAIL TO STATE A 20(A) CLAIM BECAUSE THEY FAIL TO STATE A 10(B) CLAIM

As explained *supra*, because Plaintiffs fail to plead a Section 10(b) claim as to all misstatements except the two that survived the first Motion to Dismiss, Plaintiffs' Section 20(a) claims fail as to all statements except those at SAC ¶¶ 156, 157.  Plaintiffs do not address Defendants' argument that the Court should dismiss the Section 20(a) claim if Plaintiffs' Section 10(b) claim only survives as to those two statements, an apparent concession as to that point.

*    *    *

For the foregoing reasons, as well as those set forth in Defendants' opening brief, the SAC should be dismissed as to all allegations except for the two purported misstatements that survived the Motion to Dismiss the CAC.

10

Dated: March 3, 2024
      New York, New York

Respectfully submitted,

By: */s/ Christopher D. Belelieu*
    Christopher D. Belelieu

Christopher D. Belelieu
Nathan C. Strauss
Bethany J. Saul
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035
CBelelieu@gibsondunn.com
NStrauss@gibsondunn.com
BSaul@gibsondunn.com

*Attorneys for Defendants*

11