**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SOLAREDGE TECHNOLOGIES, INC. SECURITIES LITIGATION | 1:23-cv-09748-GHW-OTW |
| | **STIPULATED PROTOCOL [AND PROPOSED ORDER] FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | |

Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd., and Named Plaintiff Javier Alcides Cascallar (collectively, "Plaintiffs"), and Defendants SolarEdge Technologies, Inc. ("SolarEdge" or the "Company"), Zvi Lando, Ronen Faier, Lior Danziger, and J.B. Lowe (the "Individual Defendants," and with SolarEdge, "Defendants," and together with Plaintiffs, the "Parties" and each a "Party"), by and through their respective undersigned counsel, hereby stipulate and agree to the following Stipulated Protocol for Discovery of Electronically Stored Information (the "ESI Protocol" or "Protocol").

## I.     GENERAL PROVISIONS

1.     This Protocol will govern discovery of Electronically Stored Information ("ESI") and Hard-Copy Documents in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New

York (the "Local Rules"), the Individual Practices of District Judge Gregory H. Woods (the "Individual Practices"), and any other applicable orders and rules.

2.      The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this matter. The Parties shall follow Local Rule 26.4 and the Courts' Individual Practices with respect to any and all discovery disputes.

3.      Unless otherwise agreed or directed by the Court, each Party will bear the costs to process and review its own documents according to this Protocol.

4.      Nothing in this Protocol shall be construed to affect the discoverability or admissibility of any document. All objections to the discoverability or admissibility of any documents are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil Procedure, and/or Local Rules or Individual Practices of this Court.

5.      Each production of ESI shall contain in the metadata the custodians, source, and location for each produced item, and shall be accompanied by correspondence indicating the Bates range for each produced item, and any applicable passwords.

## II.      DEFINITIONS

1.      <u>Action</u>: means the above-referenced action.

2.      <u>Document</u>: has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A) and Local Rule 26.3(c)(2). The term "Document" shall include Hard Copy Documents and ESI as defined herein.

3.      <u>ESI</u>: an abbreviation of "electronically stored information," which has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A).

4.    <u>Extracted Text</u>: means text extracted from a Native Format file and includes at least all headers, footers, document body information, and any hidden text, if available. The extracted text shall contain the content of any hypertext markup language ("HTML") present in the Native Format file, specifically including, but not limited to, the full anchor and target text of any Hyperlinks, as defined herein. The extracted text must not include text of characters that were not part of the text of the original Native Format file, including, but not limited to, Bates Numbers and Endorsements (except in the cases of redactions).

5.    <u>Hard Copy Document</u>: means Documents existing in paper form at the time of collection.

6.    <u>Hash Value</u>: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard Copy Document productions.

7.    <u>Hyperlink</u>: means an HTML link from an electronic Document to another electronic Document, typically activated by clicking on a highlighted word or image on the screen, and includes both the "anchor" text (*i.e.*, the ordinarily visible, clickable text of the hyperlink, often presented in blue in the linking document) and the "target" text (*i.e.*, the ordinarily invisible hypertext containing the Uniform Resource Locator ("URL") for the location of the linked document).

8.     <u>Instant Messages</u>: means real-time communications sent via chat client, short messaging service ("SMS"), Multimedia Messaging Service ("MMS"), or Rich Messaging Service ("RMS"), including, but not limited to: Slack, Microsoft Teams, Google Messages, Google Talk, Google Chat, Google Hangouts, iMessages, Skype, Chatwork, Facebook Messenger, Instagram Messenger, Line, Wire, Signal, Telegram, Snapchat, Wickr, Discord, WhatsApp, WeChat, Bloomberg Messenger, or any proprietary instant messaging system.

9.     <u>Load File</u>: means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this ESI Protocol, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments, and a Document and information related to embedded content.

10.    <u>Metadata</u>: means: (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates Numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

11.     <u>Native Format</u>: means the format of ESI in the application in which such ESI was originally created.

12.     <u>OCR</u>: means the optical character recognition technology used to read Hard Copy Documents or electronic images of Documents and output such Documents to a searchable text format.

13.     <u>Producing Party</u>: means any Party or Third Party in the Action that produces Documents.

14.     <u>Protective Order</u>: means the Stipulated Confidentiality Agreement and Protective Order entered in this Action on June 4, 2025, as amended by any subsequent order(s) of the Court.

15.     <u>Receiving Party</u>: means a Party in the Action to whom Documents are produced.

16.     <u>Responsive Document</u>: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure and/or Court order.

17.     <u>Tagged Image File Format or TIFF</u>: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard Copy Documents.

18.     <u>Third Party</u>: Any other person/entity, other than a Party to this Action.

## III.    PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI

Each Party acknowledges that it has an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. Nothing in this ESI Protocol shall affect each Party's respective preservation obligations imposed by rule or law.

## IV.     SEARCH, COLLECTION & REVIEW

Consistent with Principle 6 of The Sedona Conference Principles, the Parties will meet and confer in good faith in an effort to reach an agreement on any methodologies to be employed for the collection and production of documents in response to any Fed. R. Civ. P. 34 request for production, such as the use of search terms, date ranges, electronic sources, or other filters. The Parties may use advanced search, analytical, and retrieval technologies like predictive coding or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters as agreed to among the Parties. The Parties agree to confer as to whether the Parties may use advanced search, analytical, and retrieval technologies such as predictive coding or other TAR for filtering out or excluding non-responsive Documents. This is an iterative process whereby the Parties agree to revisit, reevaluate, and refine these processes as needed to ensure validity and completeness. Relatedly, the Producing Party, to the extent search terms are used, will upon request undertake reasonable efforts to provide search term reports that, after global family-level de-duplication, indicate (i) the "hit" count of  Documents and Documents including family per search term, (ii) the unique hit count of Documents and Documents including family per search term, (iii) the hit count of Documents and Documents including family per search term and custodian, (iv) the unique hit count of Documents and Documents including family per search term and custodian, and (v) the total number of unique documents that hit on the search term list as a whole. If the Producing Party believes that such search term reports are not reasonably practicable, the Producing Party shall meet and confer with the requesting Party to explain the basis of that belief and explore the feasibility and appropriateness of any alternative search term report.

## V.     PRODUCTION FORMATS FOR DOCUMENTS FROM HARD COPY DOCUMENTS

A.    <u>Generally</u>: Except for redacted and logged documents as described in Section VII.N and VII.Q of this ESI Protocol, *infra*, the Parties will produce documents originating from Hard Copy Documents in CCITT Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable multi-page optical character recognition ("OCR") text, along with the below-listed metadata fields as described in Section VI. B of this ESI Protocol, *infra*, when available, unless the Producing Party determines that the utility of the OCR is outweighed by the expense. If a Party produces documents without OCR text, it will identify any such documents by Bates number at the time of production. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. If an original Hard Copy Document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting so as to preserve legibility. The Parties agree not to intentionally degrade the searchability or legibility of Documents as part of the document production process.

B.    <u>Document Unitization</u>: In scanning paper Hard Copy Documents, each page of paper should be output to a single page TIFF file. Distinct, logical document breaks should be defined as such in a standard load file as described herein. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then

again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents correctly.

C.    <u>Load File</u>: The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match text and metadata with TIFF/JPG images. With respect to Hard Copy Documents, data on the load file will include the following metadata or their equivalents (when available), as defined in Section VI of this ESI Protocol:

      a.  BEGDOC;

      b.  ENDDOC;

      c.  BEGATTACH;

      d.  ENDATTACH;

      e.  CUSTODIAN;

      f.  CONFIDENTIALITY;

      g.  PGCOUNT;

      h.  REDACTED; and

      i.  TEXTLINK.

## VI.    PRODUCTION FORMATS FOR ESI

A.    <u>Production Format Generally</u>.: Except for redacted and logged Documents as described in Section VII.N and VII.Q of this ESI Protocol, *infra*, the Parties will produce Documents originating as ESI in TIFF format, with the exception of spreadsheets, presentation files, audio, and video files, which shall be produced in native format. ESI shall be produced with extracted text, along with the below listed metadata fields, where reasonably available. Color Documents should be produced as single-page, 300 DPI JPG images with JPG compression and a

high-quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images, including track changes where applicable, that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of email messages should include the BCC line. If the image does not accurately reflect the Document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. Embedded files shall be produced as attachments to the Document that contained the embedded file, with the parent/child relationship preserved. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent Document. Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted. The Parties will provide a standardized load file compatible with Relativity.

B.    <u>Metadata</u>: Each of the Metadata and coding fields set forth below that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. To the extent that metadata below does not exist or is not reasonably available for any Documents produced, nothing in this ESI Protocol shall require any Party to extract, capture, collect, or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) All Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that for every production of previously unproduced Documents, the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted

items that were originally ESI, all non-privileged metadata fields will be provided and will include all non-privileged, non-redacted data. Redacted Documents shall be identified as such in the load file provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible. When the Producing Party is unable to produce metadata for a particular field or ESI Document, the Receiving Party may request an explanation of that inability. The Parties shall then meet and confer to attempt to resolve the problems. With respect to ESI, data on the load file will include the following metadata fields or their equivalents (when reasonably available):

| Field Name | Description |
|---|---|
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the document was collected |
| ALL CUSTODIAN | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FROM | Sender of the email message |
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "Carbon Copies" of the e- mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the email message |
| EMAIL SUBJECT | Subject field extracted from the metadata of an email file |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |

| FILE EXTENSION | File extension of a document |
|---|---|
| CREATED DATE | Date file was created |
| CREATED TIME | Time file was created |
| LAST MODIFIED DATE | Date document was last modified |
| LAST MODIFIED TIME | Time document was last modified |
| EMAIL SENT DATE | Date email was sent |
| EMAIL SENT TIME | Time email was sent |
| EMAIL RECEIVED DATE | Date email was received |
| EMAIL RECEIVED TIME | Time email was received |
| DATE APPOINTMENT START | Start date of calendar appointment entry |
| TIME APPOINTMENT START | Start time of calendar appointment entry |
| DATE APPOINTMENT END | End date of calendar appointment entry |
| TIME APPOINTMENT END | End time of calendar appointment entry |
| LAST EDITED BY | Name of the last person to edit the document from extracted metadata |
| PGCOUNT | Number of pages in a document (image records) |
| FILE SIZE | File size in bytes |
| LOGICALPATH | Original logical path location of the document in the repository from which it was collected. |
| FILE TYPE | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |
| FILE NAME | Original name of the file or subject of email, including file extension |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Protective Order (e.g., CONFIDENTIAL). Otherwise, blank. |
| REDACTED | YES if applicable. Otherwise, blank. |

| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed." Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |

C.    Reproduction in Native Format: The Parties further agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the Producing Party shall respond reasonably and in good faith to any such request.

## VII.    MISCELLANEOUS PROVISIONS

A.    Additional Custodians or Data: The Parties have a continuing obligation under Federal Rule of Civil Procedure 26(e) to supplement or correct their respective disclosures or responses in a timely manner if the Party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other Parties during the discovery process or in writing. The Parties reserve the right to request inclusion of additional custodians or non-custodial data sources whose relevance was discovered via documents or data produced, or testimony given, or for other good cause shown, within a reasonable time of such discovery, subject to the Local Rules and Individual Practices. If the Producing Party objects to the inclusion of such sources, the Parties will meet and confer to resolve the matter. If the Parties cannot reach resolution, the Court will determine the matter.

B.    Additional Formatting Processes

Any Producing Party may De-NIST their electronic collections before searching and review using the then-current NIST list published by the National Institute of Standards and

Technology. The Parties will meet and confer on the necessity of additional formatting processes to enhance the production of ESI including but not limited to: (a) additional ESI metadata and coding fields; and (b) imaging specifications for Excel and PowerPoint files, to the extent not produced in native format.

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents or information in an acceptable format, including issues as may arise with respect to obtaining access to any such software.

If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (*e.g.*, unsupported file format, file corruption, inaccessible password-protected Document) using reasonable efforts, those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates numbered slip sheet that states "Technical issue—file cannot be processed." A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

      C.    <u>Bates Numbering</u>

The Parties shall assign a Bates number to individual pages of TIFF documents and a Bates number to each Document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given Document. All volumes of production shall be identified by the same Bates prefix and a numerical sequence.

      D.    <u>Confidentiality Designations</u>

If a Document or other ESI has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document pursuant to the Protective

Order. If the Receiving Party believes that a confidentiality designation obscures the content of a document, then the Receiving Party may request that the Document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court, or any adverse or Third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the Document or in the filename, if used in native format. For each Document that is marked with a confidentiality designation, a confidentiality field will be populated in the .DAT file.

      E.     <u>De-Duplication and Document Families</u>

      The Parties will make reasonable efforts to perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values at a family level and to produce only a single copy of identical ESI (*i.e.*, ESI with identical MD5 or SHA-1 hash values), except where de-duplication would break up document families. De-duplication shall not break up document families. The custodian associated with the first copy of a Document processed will be considered the primary custodian for that Document (the custodian who will be used as the basis for determining which other collected Documents are duplicates). The Producing Party shall produce an "All Custodians" metadata field with each production as specified in Part VI above which lists every custodian or source who or which possessed a duplicate Document. If the Parties de-duplicate ESI, they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information. Following the substantial completion of document discovery, the Producing Party shall produce an overlay that provides an updated "All Custodian" field at the time new productions are made. At any time, however, if a Producing Party has not

provided current "All Custodian" data and a Receiving Party believes in good faith that "All Custodian" data is necessary for a scheduled deposition, filing deadline, or other case event, the Receiving Party shall inform the Producing Party of such belief and request updated "All Custodian" data, and the Producing Party shall, upon such request, produce updated "All Custodian" data sufficiently in advance of that event.

If there are any handwritten notes, or any other markings, on a Document, it shall not be considered a duplicate. Any Document that contains an alteration, marking on, or addition to the original Document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If such markings/alterations are made in color, the Documents must, to the extent reasonably practicable, be produced in color as originally intended.

F.  <u>Encryption:</u> The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this ESI Protocol, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this ESI Protocol, the Parties have no duty to identify the prior encrypted status of such Documents. If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected. Upon request from any Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

G.  <u>Responsive ESI Discovered Outside of Search Methodology</u>. Notwithstanding any of the foregoing, if any Party identifies ESI or Documents that are responsive and subject to

discovery in this matter outside of the search methodology(ies) agreed to by the Parties, it shall produce all such Documents to the extent they are not privileged.

H.    <u>ESI Not Required</u>: The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production, provided, however, that Documents from the sources identified below shall be preserved and a Party may subsequently request that they be produced if specific facts demonstrate a particular need for such Documents that justifies the burden of retrieval:

a.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics;

b.    Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

c.    On-line access data such as temporary Internet files, history, cache, cookies, and the like;

d.    Data stored on photocopiers, scanners, and fax machines;

e.    Data in metadata fields that are frequently updated automatically, such as last-opened dates;

f.    Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance

policy;

      g.     Server, system, or network logs;

      h.     Data remaining from systems no longer in use that is unintelligible on the systems in use;

      i.     Video surveillance data; and

      j.     Email, calendars, and contact data sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

I.     <u>Original Documents</u>: Nothing in this ESI Protocol shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated metadata, of all ESI preserved for and produced in the Action and/or original versions of all Hard Copy Documents preserved for and produced in the Action. Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rule of Civil Procedure and/or Court order. Each Party reserves the right to request to inspect such original Documents of the opposing Party or Parties if reasonably necessary due to issues of legibility of all or any part of the production copy, and such request shall not be unreasonably denied.

J.     <u>Objections Preserved</u>: Nothing in this Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privileges or protection from disclosure. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

K.     <u>Preservation of Parent-Child Relationships</u>: The Parties shall preserve parent-child relationships (the association between an attachment or hyperlink and its parent document). The

Parties will provide a BEGATTACH and ENDATTACH for each produced attachment in the load file. If any member of a document "family" (*e.g.*, an email attachment) is withheld as privileged, then the Producing Party shall produce a one-page slipsheet TIFF image stating, "Withheld on Privilege Grounds", and bearing a unique Bates number.

      L.    <u>Privileged Documents and Privilege Logs</u>

To the extent that a Party reasonably determines that one or more responsive Documents are not discoverable on the basis of a privilege or privileges, the Party shall provide a log, treating each Document withheld or redacted for privilege separately, that sets forth in separate columns (with the exception that the field "Email Subject" may be redacted for privilege):

     a.  an assigned "Log Entry" Number;

     b.  a Bates number;

     c.  the Custodian;

     d.  the Email Sent Date, for email documents;

     e.  the Document Title;

     f.  the Email Subject, for email documents;

     g.  the Creation Date, for non-email documents;

     h.  the File Name, for non-email documents;

     i.  the File Extension;

     j.  the File Type;

     k.  the Last Modified Date;

     l.  the Privilege(s) or other protection claimed and basis for the claim;

m.  the name of the author(s)/addresser(s);[1]

n.  the addressee(s);

o.  all carbon copied (CC) recipients;

p.  all blind carbon copied (BCC) recipients; and

q.  an indication of which, if any, author/addresser, addressee(s), CC recipients, and BCC recipients identified is an attorney (or an employee of any Party's legal department). If there is no attorney listed as the author or recipient of a document on the privilege log, the name of the attorney(s) or privilege actor(s) whose advice is being sought, provided, or reflected, or whose work product is included or reflected shall be identified; and

r.  a description of the general subject matter contained in the document and the type of document (e.g., letter, email, memorandum, handwritten notes, etc.) sufficient to allow the requesting Party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection.

The Party receiving the log may make reasonable requests for additional information with respect to specific entries concerning the Privilege(s) claimed and a description of the general subject matter contained in the document sufficient to allow the receiving Party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection.

The following categories of Documents need not be logged:

1.  Documents or portions thereof reflecting communications that post-date the filing of the initial complaint in this Action on November 3, 2023, provided that the

---

[1] For emails, this information should be populated with the metadata extracted from the email "FROM" field associated with the file. For other ESI, this should be populated with the metadata extracted from the "DOCUMENT AUTHOR" field.

communication at issue involves solely (i) the undersigned counsel, including members of their law firms, or (ii) undersigned counsel, including members of their firms, and the parties to this Action they represent or the party's employees;

    2.    Work product created by any of the undersigned firms or a party at the direction of the undersigned counsel, that is related to this litigation, and that post-dates the filing of the complaint in this Action on November 3, 2023; and

    3.    Documents that have been redacted on grounds other than privilege, except that either Party can make reasonable requests for additional information regarding the basis for specifically identified redactions where the basis is not sufficiently clear from the face of the document as produced.

Except as set forth herein, responsive documents shall not be withheld or redacted on any basis other than the attorney-client privilege, attorney work product doctrine, or other recognized protection or privilege. In addition, a Party may redact the following personally sensitive or identifiable information: bank and brokerage account numbers; social security numbers; personal addresses; personal telephone numbers; other personal identifying information; and the names of minor children. For redacted items that were originally ESI, all metadata fields noted in this Protocol that do not contain privileged or protected information will be provided and will include all non-redacted data.

Privilege logs shall be produced as searchable, editable, Microsoft Excel spreadsheets. The Parties agree to meet and confer about methods and approaches to reduce a Producing Party's burden in furnishing a privilege log, where reasonably necessary.

The inadvertent failure to log privileged Documents will not result in the waiver of Privilege, provided that upon discovering the inadvertent omission, the Producing Party provides

notice to the requesting Party of the inadvertent failure to log within a reasonable time period of discovering the inadvertent omission, and within a reasonable time thereafter, sends the requesting Party an addendum to the appropriate privilege log providing the required privilege log entries for the Document(s).

If the Party receiving the privilege log requires further information to allow the receiving Party to assess the claimed privilege, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each Document for which it seeks this information. Within fourteen (14) days of such a request, the Producing Party must either (i) provide the requested information or (ii) challenge the request. Any Party may seek to expedite this time period upon good cause shown. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must proceed in accordance with the discovery dispute procedures reflected in the applicable Local Rules and Individual Practices.

M.    <u>Processing Specifications</u>: The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file. Where Documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, comments, speaker notes, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions. The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production.

N.    <u>Production Media</u>: The Producing Party shall produce Document images, Native Format files, load files, and Metadata via secure file transfer protocol ("FTP"), or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party (*e.g.*, "SEDGE"), the sequential production number (*e.g.,* "PROD004"), and the Document Number ranges of the Documents in that production (*e.g.*, "SEDGE0000000123 - SEDGE0000000456"). To the extent that the Production Media includes any confidential information protected under the Protective Order, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Protective Order. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the BEGDOC and ENDDOC range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key under separate cover at the time of production.

O.    <u>Redaction</u>: Except as set forth herein, responsive Documents shall not be redacted on any basis other than the attorney-client privilege, attorney work product doctrine, or other recognized protection or privilege. For the avoidance of doubt, an otherwise responsive Document may not be partially redacted solely on the basis of the Producing Party's judgment that the redacted information is not responsive or relevant. In addition, a Party may redact the following personally sensitive or identifiable information: bank and brokerage account numbers; social security numbers; personal addresses; personal telephone numbers; other personal identifying information; and the names of minor children. The Parties will produce redacted documents in

TIFF format with corresponding searchable OCR text and associated metadata for the documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Parties shall provide a copy of the native file with redactions. For redacted items that were originally ESI, all metadata fields noted in this ESI Protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. If, during the course of discovery, the Parties identify other kinds of information that a Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.

        P.      <u>Third Party Documents and ESI</u>

A Party ("Issuing Party") that issues a subpoena upon any Third Party shall include a copy of this Protocol and the Protective Order with the subpoena. The Issuing Party shall produce a copy to all other Parties of any documents or other materials obtained under subpoena to a Third Party (including ESI (including any metadata) and Hard Copy Documents). If a third-party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## VIII.   MODIFICATION

This Protocol may be modified by written agreement of the Parties or by the Court for good cause shown.

Date: August 12, 2025

| **POMERANTZ LLP** | **GIBSON, DUNN & CRUTCHER LLP** |
|---|---|
| By: */s/ Brian Calandra* | By: */s/ Christopher D. Belelieu* |
| Brian Calandra | Christopher D. Belelieu |
| Jeremy A. Lieberman | Nathan C. Strauss |
| 600 Third Avenue, 20th Floor | 200 Park Avenue |
| New York, New York 10016 | New York, NY 10166-0193 |

Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com
jalieberman@pomlaw.com

*Attorneys for Lead Plaintiffs*
*Mivtachim the Workers Social*
*Insurance Fund Ltd., Keren Hgimlaot*
*Hmerkazit Histadrut Central Pension*
*Fund Ltd., Kerren Makefet Pension*
*and Provident Center Cooperative*
*Society Ltd., the Hadassah Workers*
*Pension Fund Ltd., and Hachshara*
*Insurance Company Ltd.; Named*
*Plaintiff Javier Alcides Cascallar;*
*and the Class*

Telephone: (212) 351-4000
Facsimile: (212) 351-4035
cbelelieu@gibsondunn.com
nstrauss@gibsondunn.com

*Attorneys for Defendants*

      SO ORDERED.

Dated:_____
New York, New York

_____
ONA T. WANG
United States Magistrate Judge

**GRANTED.**

**SO ORDERED.**

_____
Ona T. Wang        September 16, 2025
U.S.M.J.