September 26, 2025

**Via ECF**

The Honorable Ona T. Wang, U.S.M.J
United States District Court
Southern District of New York
United States Courthouse
Daniel Patrick Moynihan
500 Pearl Street
New York, NY 10007-1312
(212) 805-0296

Re: *In re SolarEdge Technologies, Inc. Securities Litigation*, No. 1:23-cv-09748-GHW-OTW

The parties[1] to this action, through their respective counsel, write pursuant to the Court's June 4, 2025 order directing the parties to submit on the last business Friday of each month a joint letter apprising the Court on the status of discovery. *See* ECF No. 91.

The parties advise as follows:

**STATUS OF DISCOVERY**

1. <u>Identification of Custodians</u>

   **Plaintiffs' Position:**

   The parties' August status letter advised the Court that Plaintiffs were waiting for Defendants to provide information that could be used to identify custodians for searches for documents responsive to Plaintiffs' initial document requests, which were served on June 20, 2025, and which the parties met and conferred regarding on August 15, 2025. During the settlement conference before the Court on September 10, 2025, when Plaintiffs' counsel expressed concern that there had been no progress in obtaining information for use in identifying custodians, Defendants' counsel represented that they were following up with their client at that very moment.

---

[1] The parties are Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd., and Named Plaintiff Javier Alcides Cascallar (collectively, "Plaintiffs") and SolarEdge Technologies, Inc. ("SolarEdge" or the "Company"), Zvi Lando ("Lando"), the Company's former Chief Executive Officer ("CEO"), Ronen Faier ("Faier"), the Company's former Chief Financial Officer ("CFO"), Lior Danziger, the Company's former Director of Investor Relations and Finance Operations, and J.B. Lowe, the Company's Head of Investor Relations (collectively, "Defendants").

September 26, 2025

Page 2

The total lack of progress in the two weeks since the September 10, 2025 conference have intensified Plaintiffs' concerns. Although Plaintiffs have said they would accept information concerning custodians in virtually any form (e.g., including simple lists of employees with titles and departments) that was convenient for Defendants to produce, to date, Defendants have not provided any information regarding custodians except for a vague representation on September 23, 2025 (after multiple follow-ups from Plaintiffs' counsel were ignored) that Defendants were "working provide certain historic reporting information regarding SolarEdge's European business" and that "Defendants have already identified individuals whom they believe are likely to have relevant information in their initial disclosures." *See* Ex. A at 2.

Setting aside that Defendants have not indicated what "historical reporting information" consists of, this response is insufficient for multiple reasons. *First*, Plaintiffs <u>never</u> limited their requests for information regarding custodians to SolarEdge's European business. This was for good reason, as the First Amended Complaint (ECF No. 55 ("FAC")) and operative Second Amended Complaint (ECF No. 72 ("SAC")) contains multiple allegations of overstocked inventories and declines in demand in Europe based on statements from former employees who worked in the United States, which Judge Woods crediting in denying in part Defendants' motions to dismiss the FAC and SAC. *See In re SolarEdge Techs., Inc. Sec. Litig.*, 2025 WL 1031154, at *8 (S.D.N.Y. Apr. 6, 2025) (citing SAC at ¶¶48, 63); *In re SolarEdge Techs., Inc. Sec. Litig.*, 2024 WL 4979296, at *10 (S.D.N.Y. Dec. 4, 2024) (FAC at ¶¶57-70, 64, 67, 82). *Second*, Defendants' reference to their initial disclosures is also patently insufficient as their disclosures merely identified the Individual Defendants and three individuals named in the SAC and failed, for example, to even identify Peter Mathews, who is alleged to have directly disclosed declining demand in Europe in mid-2022 (*see* SAC at ¶63). Nor do Defendants' disclosures identify anyone in the Company's C&I division or sales divisions, on which numerous allegations credit by Judge Woods are based.

It is difficult for Plaintiffs to accept Defendants' representation that they are preparing to produce information that could be used to identify custodians given that Defendants stated in their initial disclosures that they would produce insurance policies related to this action and yet waited without explanation nearly three months to produce those policies even though a protective order had been entered in this action in June 2025. *See* Ex. A at 3-4. Defendants' position asserts that they have "determine[d] a list of direct reports to Alfred Karlstetter during the relevant time period, and . . . provided that information to Plaintiffs on September 26." Leaving aside that it is not certain that all appropriate custodians reported directly to Karlstetter, Defendants alerted Plaintiffs to the existence of this purported list when exchanging drafts of this status report on September 26.

Plaintiffs have asked Defendants to meet and confer during the week of September 29-October 3, 2025 for the purpose of identifying custodians. *See id.* at 1. Plaintiffs will raise

any issues left unresolved after this conference to the Court by letter, consistent with this Court's individual rules.

**Defendants' Position:**

Plaintiffs' position statement significantly misstates the record. But Plaintiffs' goal in misstating the record is clear— distract from their own discovery failings. Despite Plaintiffs' claims, Defendants have been responsive to Plaintiffs' concerns and remain willing and able to confer over *both* sides' search protocols. Defendants look forward to resolving these issues with counsel to avoid wasting the Court's time.

Both parties served their first sets of document requests in June. Among Plaintiffs' 58 requests was a request for "organizational charts" identifying the "employees and reporting structure of SolarEdge." On July 29, Defendants timely served their responses and objections to Plaintiffs' requests. With respect to organizational charts, Defendants objected on the grounds that the request was vague, seeks irrelevant information, and is not proportional to the needs of the case. Subject to those objections, Defendants agreed to produce "non-privileged, responsive documents, if any, in their possession, custody, or control sufficient to show the Company's organizational structure." After Defendants sought to meet and confer with Plaintiffs regarding their responses to Defendants' document requests, Plaintiffs also asked to confer with Defendants about Defendants' responses.

During the course of the parties' meet and confer on August 13, Plaintiffs recognized that the parties were conferring on a number of requests, but asked Defendants to prioritize producing organizational charts because Plaintiffs said they needed the information about employee reporting structure in order to confer over custodians. Defendants' counsel stated that they did not know whether SolarEdge maintained organizational charts in the ordinary course, but that they would confer with their client to determine what documents existed. They noted as well that even if companies do not maintain organizational charts, they sometimes have databases that can be queried to provide a list of direct reports for a given employee at a given time. SolarEdge reminded Plaintiffs that SolarEdge employs thousands of people and asked if there was a division or a specific employee in particular that Plaintiffs were focused on. Plaintiffs stated that they were particularly interested in information related to leadership in Europe and individuals who reported to Alfred Karlstetter. Defendants agreed to work with SolarEdge to determine whether organizational charts responsive to Plaintiffs' document request already existed and, if not, to investigate whether they could obtain the relevant information regarding the reporting structure in Europe in another manner.

On September 12, 2025, Defendants memorialized the parties' discussions regarding both sides' objections, along with the discussion of all other discovery disputes in a 17-page single-spaced letter to Plaintiffs, including a number of issues with Plaintiffs' responses that Defendants anticipate raising with this Court if no resolution is reached between the two sides. Plaintiffs have yet to respond to Defendants' September 12 letter. Instead, Plaintiffs asked if Defendants had an update on the organizational charts a week later. On September 23, Defendants wrote to Plaintiffs to update them on Defendants' investigation

regarding organizational charts. Defendants stated that SolarEdge does not regularly maintain organizational charts, nor does it have organizational charts from the relevant time period. In other words, Defendants confirmed that there are no documents responsive to Plaintiffs' request for organizational charts. Nonetheless, in light of the parties' discussion on their meet-and-confer, and in a good faith effort to facilitate further conferrals regarding search protocols, Defendants confirmed that SolarEdge was able to determine a list of direct reports to Alfred Karlstetter during the relevant time period, and Defendants provided that information to Plaintiffs on September 26. Plaintiffs now suggest in their position statement that they actually want a list of all employee names because, even if the Court's Order on Motion to Dismiss narrowed the claims to information about European demand and inventory, "reports [of this information] ma[d]e their way to [employees] in the US."

Plaintiffs' position here is completely out of proportion to the actual remaining allegations in the case. As far as Defendants are aware, both sides are working diligently to consider how best to respond to the other side's document requests and preparing a search protocol with proposed custodians and search terms. Neither side has yet shared their proposed protocol with the other, but Defendants look forward to sharing theirs soon—and to receiving Plaintiffs' proposal—so that the parties can confer and produce documents over the coming months. And while Defendants are of course willing to confer during that process, Defendants note that courts in this district routinely hold that that "responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (quoting Sedona Conference principle 6 and noting that "the responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals"). In other words, Plaintiffs do not get to dictate how, or from whom, Defendants collect potentially responsive information.

Defendants have already identified individuals whom they believe are likely to have relevant information in their initial disclosures and will continue to meet and confer with Plaintiffs after Plaintiffs review the additional information that Defendants have provided regarding SolarEdge's leadership structure in Europe during the relevant time period.

2. The Court so-ordered the parties' proposed ESI protocol on September 16, 2025. See ECF No. 105.

3. <u>ESI Search Parameters</u>

   a. **Plaintiffs' Position:** Although the parties August 2025 status letter advised the Court that the parties "anticipate being able to update the Court on negotiations over ESI search parameters in next month's status report," Defendants' failure to provide any information for use in identifying custodians precludes any update. Plaintiffs are prepared to promptly propose search terms once custodians are agreed upon.

    b. **Defendants' Position:** Defendants welcome Plaintiffs' proposal for ESI search parameters and custodians for Defendants' data, as well as Plaintiffs' proposal for the custodians and search parameters they intend to apply to Plaintiffs' data in furtherance to Defendants' discovery requests.

**STATUS OF MEDIATION**

1. The parties have engaged a third-party mediator and scheduled an in-person mediation session for December 2025.

The parties are available at the Court's convenience to discuss the contents of this status letter or to address any questions or concerns that the Court may have.

Respectfully submitted,

| **POMERANTZ LLP** | **GIBSON, DUNN & CRUTCHER LLP** |
|---|---|
| By: */s/ Draft*<br>Brian Calandra<br>Jeremy A. Lieberman<br>Guy Yedwab<br>600 Third Avenue, 20th Floor<br>New York, New York 10016<br>Telephone: (212) 661-1100<br>Facsimile: (917) 463-1044<br>bcalandra@pomlaw.com<br>jalieberman@pomlaw.com<br>gyedwab@pomlaw.com | By: */s/ Draft*<br>Christopher D. Belelieu<br>Nathan C. Strauss<br>Bethany J. Saul<br>200 Park Avenue<br>New York, New York 10166-0193<br>Telephone: (212) 351-4000<br>Facsimile: (212) 351-4035<br>cbelelieu@gibsondunn.com<br>nstrauss@gibsondunn.com<br>bsaul@gibsondunn.com |
| *Attorneys for Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd.; Named Plaintiff Javier Alcides Cascallar; and the Class* | *Attorneys for Defendants* |