**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SOLAREDGE TECHNOLOGIES, INC. SECURITIES LITIGATION<br><br>-------------------------------------------------------------<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | No. 1:23-cv-09748 (GHW) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON TAKING OF EVIDENCE ABROAD IN CIVIL OR CRIMINAL MATTERS**

GIBSON, DUNN & CRUTCHER LLP

Christopher D. Belelieu
Nathan C. Strauss
Bethany J. Saul
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 3

LEGAL STANDARD ................................................................................................................... 4

ARGUMENT ................................................................................................................................. 5

    I.    THE REQUESTED EVIDENCE IS IRRELEVANT TO THE REMAINING CLAIMS. . 5

    II.    THE REQUESTED EVIDENCE IS AVAILABLE BY ALTERNATIVE MEANS ........... 7

CONCLUSION.............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*,
2012 WL 4784632 (S.D.N.Y. 2012)................................................................4, 5, 6

*Calixto v. Watson Bowman Acme Corp.*,
2009 WL 3823390 (S.D. Fla. Nov. 16, 2009)...........................................................7

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
841 F. Supp. 2d 769 (S.D.N.Y. 2012)..................................................................5, 7

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)..................................................................................................6

*Skyline Steel, LLC. v. PilePro, LLC.*,
2015 WL 13832108 (S.D.N.Y. Jan. 28, 2015) ....................................................7, 9

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
482 U.S. 522 (1987)...........................................................................................4, 5, 9

*Stein v. Skatteforvaltningen*,
2024 WL 1313094 (S.D.N.Y. Mar. 27, 2024) ...................................................2, 4, 9

*Treppel v. Biovail Corp.*,
233 F.R.D. 363 (S.D.N.Y. 2006) .............................................................................6

*Vaigasi v. Solow Mgmt. Corp.*,
2016 WL 616386 (S.D.N.Y. Feb. 16, 2016)............................................................6

## Other Authorities

Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil
or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444, 1972 WL 122493
(Oct. 7, 1972) ............................................................................................................1

## Rules

Fed. R. Civ. P. 26...........................................................................................................4, 5

## Treatises

Restatement (Third) of the Foreign Relations Law of the United States (1987), §
442(1)(c) ..............................................................................................................4, 5

Defendants SolarEdge Technologies, Inc. ("SolarEdge" or the "Company"), Zvi Lando, Ronen Faier, Lior Danzinger, and J.B. Lowe (together, the "Individual Defendants," and with SolarEdge, "Defendants") respectfully submit this Opposition to Lead Plaintiffs' Motion for Letters of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Criminal Matters (the "Motion").  ECF No. 121.

**PRELIMINARY STATEMENT**

Unsatisfied with the party discovery it has received to date, Lead Plaintiffs seek to turn this litigation into a sprawling fishing expedition that would span across at least nine countries. Specifically, the Motion requests that the Court issue Letters of Request under the Hague Convention of 18 March 1970 on Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention")[1] to obtain discovery from *fourteen* third parties located in the Netherlands, the United Kingdom, Poland, Germany, Italy, Switzerland, Serbia, and France.  But the discovery that Lead Plaintiffs seek is not relevant to this action given that this Court already dismissed (on two occasions) allegations related to "channel stuffing."  In addition, any discovery sought from these fourteen third parties can be accomplished by alternative means.  The Motion should thus be denied.

*First*, the materials Lead Plaintiffs request are irrelevant to the live claims in this litigation. Specifically, Lead Plaintiffs request "channel inventory reports," "days-on-hand inventory reports," "point-of-sales data," and "sell-through data," in addition to pricing and service agreements, and email correspondence with SolarEdge related broadly to "inventories" and "declining demand."

---

[1] Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444, 1972 WL 122493 (Oct. 7, 1972).

1

Lead Plaintiffs seek these materials in a desperate attempt to revive their already-dismissed "channel-stuffing" and sell-through data allegations. Yet this Court has expressly held that allegations grounded in sales incentives or pressure to close describe, *at most*, mismanagement, not fraud, and do not support an inference of scienter. ECF No. 81 ("Order on MTD SAC") at 21 (collecting cases). Likewise, this Court dismissed Lead Plaintiffs' claims regarding sell-through rates. *Id*. at 18–19.

*Second*, the purported class period in this litigation is February 13 through October 19, 2023, yet Lead Plaintiffs seek voluminous data from June 1, 2022 through June 1, 2024, a window nearly three times longer than the purported class period. In addition, Lead Plaintiffs have not shown why it is necessary to obtain evidence from third parties located abroad, when they have served *identical* document requests on SolarEdge, which Defendants agreed to produce, and in fact, have *already* produced 45,000 pages to date.

*Third*, not only are Lead Plaintiffs' requests irrelevant and duplicative, but they are also raised with only a few months remaining before the close of fact discovery. Discovery has been underway since the Court's motion to dismiss order in April 2025, and Lead Plaintiffs have known at least some of SolarEdge's customers since they filed their original complaint in November 2023. Considering the time it takes to obtain discovery (if any) pursuant to the Hague Evidence Convention and "the breadth of documents requested from [defendants], the Court [should be] justifiably concerned that the requests are being advanced . . . with an ulterior motive." *Stein v. Skatteforvaltningen*, 2024 WL 1313094, at *2 (S.D.N.Y. Mar. 27, 2024).

For the reasons set forth in this Opposition, Defendants respectfully request that the Motion be denied in its entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 4, 2024, this Court granted in part and denied in part Defendants' motion to dismiss Lead Plaintiffs' First Amended Complaint but granted Lead Plaintiffs leave to amend. ECF No. 70. On January 3, 2025, Lead Plaintiffs filed their Second Amended Complaint, ECF No. 72 ("SAC"), Defendants subsequently moved to dismiss the Second Amended Complaint, and, on April 5, 2025, the Court granted Defendants' motion in part and denied it in part. Order on MTD SAC. In its order, this Court expressly dismissed all alleged misstatements about SolarEdge's reported revenues, inventory levels, and sell-through data. Order on MTD SAC at 15–16, 18–19. The Court additionally refused to credit Lead Plaintiffs' allegation that the Company possessed scienter with respect to its purported Company-wide practice of "channel-stuffing." *Id*. at 21. The Court reaffirmed that an "aggressive sales strategy" by SolarEdge executives does not "support an inference that [Individual Defendants] knew or intended that the stock would be sold by stuffing the channels." *Id*. at 20–21. Further, this Court dismissed Lead Plaintiffs' sell-through allegations at both stages when it rejected allegations of false sell-through forecasts. ECF No. 70 at 25; Order on MTD SAC at 18 ("[The employee's] disagreement with his supervisors is insufficient to support an inference that his supervisors' forecasts were false."). Based on the Court's ruling, the only remaining alleged misstatements relate to demand in Europe and "low" inventory levels.

The parties have been engaged in discovery, focusing on the two remaining categories of alleged misstatements. Lead Plaintiffs have served over *fifty-eight* requests for production. Defendants have already reviewed and produced tens of thousands of documents, which contain communications with distributors regarding inventory and demand in Europe and related reporting.

3

## LEGAL STANDARD

"Judicial supervision of discovery should always seek to minimize its cost and inconvenience and to prevent improper use of discovery requests." *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). Accordingly, as with any discovery request, the primary consideration when evaluating a request to issue a letter rogatory for foreign discovery pursuant to the Hague Evidence Convention is whether the information sought would be properly discoverable under the Federal Rules of Civil Procedure, *i.e.*, whether the requesting party seeks information that is relevant and that does not impose a burden disproportionate to the needs of the case. *Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, 2012 WL 4784632, at *3 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26). Thus, "a court should not authorize the service of letters rogatory if it would not approve of the discovery requests in a purely domestic context." *Id.* "The rationale of this principle is obvious: if it is not appropriate to require an entity, and in this case a party, to respond to a discovery demand under domestic rules, it would be problematic to require a foreign entity, and in this case a non-party, to do so through the Hague Convention." *Stein*, 2024 WL 1313094, at *2.

In addition to evaluating the request pursuant to federal discovery rules, courts in this District adhere to principles of international comity when determining whether to approve of letter of request for foreign discovery, following the directive Section 442(1)(c) of the Restatement (Third) of the Foreign Relations Law of the United States (1987) ("Restatement"):

> "In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency in the United States should take into account [1] *the importance* to the investigation or *litigation of the documents* or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] *the availability of alternative means* of securing the information; and [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."

4

Restatement § 442(1)(c) (emphases added); *see Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 791–92 (S.D.N.Y. 2012).

<u>**ARGUMENT**</u>

**I.    THE REQUESTED EVIDENCE IS IRRELEVANT TO THE REMAINING CLAIMS.**

Lead Plaintiffs' Motion should be denied because the information sought is irrelevant to the remaining claims in this case. As noted above, the same principles that govern domestic discovery apply in the Hague context, thereby placing the concept of relevance front and center. *Bisnews AFE*, 2012 WL 4784632, at *3 (citing Fed. R. Civ. P. 26). Importantly, courts must scrutinize the relevance of the requested information because the potential for abuse is high under the Hague Evidence Convention, as plaintiffs can use the increased costs and burdens associated with international discovery "for the improper purpose of motivating settlement, rather than finding relevant and probative evidence." *Société Nationale*, 482 U.S. at 546. Courts thus deny requests for international discovery—let alone international *third-party* discovery, as is requested here—when the information sought is not germane to plaintiffs' theory of liability. *See e.g., Bisnews AFE*, 2012 WL 4784632, at *3 (declining to grant request under Hague Evidence Convention because motion was "replete with requests for documents that . . . are not relevant to this litigation").

Here, there is no dispute that the information Lead Plaintiffs seek is plainly irrelevant to the case because such information is relevant *only* to claims that are no longer at issue in this lawsuit. *First*, Lead Plaintiffs' first two requests—seeking "reports on channel inventory, [and] days-on-hand for inventory," *see* Motion at 2–3—relate to claims which this Court already dismissed. *See* Order on MTD SAC at 28 (dismissing claims regarding sell-through forecasts and channel stuffing). Additionally, Lead Plaintiffs' fifth and sixth requests similarly reflect an

impermissible attempt to revive their "channel stuffing" claims, *see* Motion at 3, even though the Court expressly ruled that Lead Plaintiffs had failed to state a claim for relief related to these practices. Order on MTD SAC at 21. And more: Lead Plaintiffs' requests for "point of sale" and "sell-through data" reports, the third and fourth requests, *see* Motion at 3, implicate issues already rejected by the Court, Order on MTD SAC at 21, 28.

The case law is clear that the requisite temporal scope to discern relevance is "th[e] litigation **as presently constituted**." *Bisnews* AFE, 2012 WL 4784632, at *3 (emphasis added). Thus, since these claims have not been live for over nine months, they cannot be relevant to this case. On this basis alone, the Court should reject Lead Plaintiffs' Motion. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 375 (S.D.N.Y. 2006) ("While relevance is broadly construed in the context of discovery, 'it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)). Moreover, Lead Plaintiffs' sweeping claim that documents potentially held by all fourteen customers are essential to the adjudication of their claims lacks any individualized information or support, which is fatal to their request. *See Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *12 (S.D.N.Y. Feb. 16, 2016) (denying discovery requests when plaintiff "hasn't bothered to address each specific request and hasn't made the effort to explain how any requests are relevant to the claims").

Furthermore, Lead Plaintiffs themselves have emphasized countless times throughout discovery that information from European witnesses is irrelevant to the allegations that they make in the case. Indeed, without any basis whatsoever, Lead Plaintiffs have repeatedly denied Defendants' requests to disclose the identities of four Confidential Witnesses (CWs 11-14), three former employees based in Europe and another former employee in South Africa, while disclosing

6

the identities of all *U.S.-based* witnesses.  According to Lead Plaintiffs, the identities of the European witnesses are irrelevant and undiscoverable because allegations of those witnesses did not survive the motion to dismiss.  As a reminder, the very allegations that Lead Plaintiffs have alleged are no longer relevant include CW11's (South Africa) allegations that "managers pushed staff . . . to sell stock 'desperately,'" SAC ¶ 96, CW12's (Hungary) statements about pressure to "improve sales" due to inventory issues, *id.* ¶ 74, CW13's (Spain) allegations that the Company pushed "unneeded product on distributors," which "resulted in most of the stuff being returned," *id.* ¶ 85, and CW14's (France) statements that "[the Company] pushed real hard to market the stuff and they sold it into a market [Europe] where the product was not ideal," *id.* ¶ 86.  Yet Lead Plaintiffs now seek the exact same "irrelevant" discovery from European third parties in a blatant attempt to harass the Company's customers.  Their request should be denied wholesale.

## II.    THE REQUESTED EVIDENCE IS AVAILABLE BY ALTERNATIVE MEANS

Lead Plaintiffs' request for foreign third-party discovery further disregards the governing standard, which requires courts to consider, among other things, "the availability of alternative means of securing the information" and whether the proposed discovery would be cumulative or duplicative.  *Lantheus Med. Imaging, Inc.*, 841 F. Supp. 2d at 776.  Courts routinely deny discovery where the same information can be obtained from parties to the litigation or where the discovery would merely duplicate existing evidence.  *See Skyline Steel, LLC. v. PilePro, LLC.*, 2015 WL 13832108, at *2 (S.D.N.Y. Jan. 28, 2015) (expressing "serious doubts" that the requested discovery could ever lead to non-cumulative evidence); *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *21 (S.D. Fla. Nov. 16, 2009) (denying third-party discovery that would provide "duplicative information").  Lead Plaintiffs' stated intent to serve subpoenas on fourteen customers across eight foreign jurisdictions squarely conflicts with these principles.

The first two categories of reporting that Lead Plaintiffs seek from foreign customers are plainly duplicative of discovery Defendants have already agreed to provide and have indeed started to provide. Indeed, Lead Plaintiffs request reports sent by third parties "*to SolarEdge*," ECF No. 124-1 (Document Request Nos. 1-4), not materials that are exclusively within the possession of the requested third parties. Defendants have agreed to search the inboxes of *fourteen* high-level senior employees at SolarEdge—including individuals based in Europe—over an *18-month* period for all "point of sale" reports, "DOH" or days-on-hand reports, "IOH" or inventory-on-hand reports, "POS" or point-of-sale reports, and reports concerning SolarEdge's products, including batteries and inverters. These broad searches hit on *tens of thousands* of documents, and Defendants have agreed to review, started to review, and produce these materials. These searches are targeted precisely at the same categories of information Lead Plaintiffs now claim they *must* obtain from third parties abroad, eliminating any basis for additional foreign discovery.

Furthermore, the final two requested categories—correspondence relating to "inventories" and "declining demand." ECF No. 124-1 (Document Request Nos. 7 & 8)—are likewise unnecessarily duplicative. Lead Plaintiffs have served over *fifty-eight* discovery requests, and Defendants have complied with nearly all of them, subject only to reasonable tailoring tied to the two remaining categories of alleged misrepresentations. To date, Defendants have reviewed and produced more than 45,000 pages, which already include communications with distributors regarding inventory levels and demand conditions in Europe. Lead Plaintiffs offer no explanation why additional third-party discovery would yield anything other than cumulative evidence, which is fatal to their request.

The timing of Lead Plaintiffs' request further underscores its impropriety. Discovery has been underway since the Court's motion to dismiss order in April 2025, and Lead Plaintiffs have

known of at least some of SolarEdge's customers since filing their original complaint in November 2023—if not earlier, based on their CW allegations. Yet Lead Plaintiffs raise this request with only a few months remaining in fact discovery, notwithstanding the time-intensive nature of discovery under the Hague Evidence Convention. Under these circumstances, and given "the breadth of documents requested," the Court should be "justifiably concerned that the requests are being advanced … with an ulterior motive." *Stein*, 2024 WL 1313094, at *2 . Courts in this District have rejected similarly belated efforts to pursue foreign discovery. *See Skyline Steel, LLC.*, 2015 WL 13832108, at *2  (noting the absence of any justification for seeking discovery "only two months before the close of fact discovery" under a procedure the Supreme Court has deemed "unduly time consuming and expensive") (quoting *Société Nationale Industrielle Aérospatiale*, 482 U.S. at 542).

## CONCLUSION

For these reasons, the Court should deny Lead Plaintiffs' Motion.

Dated: January 29, 2026
      New York, New York

Respectfully Submitted,

*/s/ Christopher D. Belelieu*
Christopher D. Belelieu

**GIBSON, DUNN & CRUTCHER LLP**
Christopher D. Belelieu
Nathan C. Strauss
Bethany J. Saul
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
CBelelieu@gibsondunn.com
NStrauss@gibsondunn.com
BSaul@gibsondunn.com

*Attorneys for Defendants*

10

## WORD COUNT CERTIFICATION

I, Christopher Belelieu, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c).  According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by that rule, there are 2,622 words in the document.

*/s/ Christopher D. Belelieu*

Christopher D. Belelieu

## CERTIFICATION OF SERVICE

I, Christopher Belelieu, hereby certify that the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Christopher D. Belelieu*
Christopher D. Belelieu

12