UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SOLAREDGE TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:23-cv-09748-GHW **CLASS ACTION** REDACTED |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | |

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR ISSUANCE OF LETTERS OF REQUEST PURSUANT TO THE
HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL
OR COMMERCIAL MATTERS DATED MARCH 18, 1970**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT.................................................................................................................... 2

       A.    THE REQUESTED EVIDENCE IS DIRECTLY RELEVANT TO
            DEFENDANTS' ALLEGED MISREPRESENTATIONS AND SCIENTER....... 2

       B.    OVERLAP BETWEEN THE REQUESTS AND PARTY DISCOVERY DOES
            NOT PRECLUDE GRANTING THE MOTION ..................................................... 6

       C.    DEFENDANTS CAUSED ANY DELAY IN BRINGING THE MOTION.......... 8

III.   CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd.*,
2012 WL 4784632 (S.D.N.Y. Oct. 4, 2012) ...............................................................................4

*Blagman v. Apple, Inc.*,
2014 WL 1285496 (S.D.N.Y. Mar. 31, 2014) ........................................................................2, 4

*Calixto v. Watson Bowman Acme Corp.*,
2009 WL 3823390 (S.D. Fla. Nov. 16, 2009).............................................................................8

*Desirous Parties Unlimited Inc. v. Right Connection Inc.*,
2023 WL 245871 (D. Nev. Jan. 18, 2023)...................................................................................7

*El Paso Disposal, LP v. Ecube Labs Co.*,
792 F. Supp. 3d 703 (W.D. Tex. 2025).......................................................................................3

*Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*,
2020 WL 5900155 (C.D. Cal. Aug. 17, 2020).............................................................................7

*Fleites v. Mindgeek*,
2022 WL 18397365 (C.D. Cal. Nov. 17, 2022)...........................................................................7

*Gardner v. Starkist Co.*,
2021 WL 303426 (N.D. Cal. Jan. 29, 2021) ...............................................................................6

*Image Processing Techs., LLC v. Canon, Inc.*,
2011 WL 13312041 (E.D.N.Y. Sept. 13, 2011) ..........................................................................2

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
278 F.R.D. 51 (E.D.N.Y. 2010)..................................................................................................6

*In re SolarEdge Techs., Inc. Sec. Litig.*,
2025 WL 1031154 (S.D.N.Y. Apr. 6, 2025)............................................................................3, 4

*Iqbal v. Multani*,
2016 WL 943545 (E.D.N.Y. Jan. 5, 2016)
*report and recommendation adopted*, 2016 WL 943542 (E.D.N.Y. Mar. 11, 2016).................9

*Marical Inc. v. Cooke Aquaculture Inc.*,
2016 WL 3029944 (D. Me. May 25, 2016) .................................................................................6

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
2019 WL 4687016 (N.D. Ala. June 6, 2019)...........................................................................3, 6

ii

*Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*,
    218 F.R.D. 24 (D. Conn. 2003) .................................................................................2, 4, 8

*Skyline Steel, L.L.C. v. PilePro, L.L.C.*,
    2015 WL 13832108 (S.D.N.Y. Jan. 28, 2015) ...................................................8, 10

*Stein v. Skatteforvaltningen*,
    2024 WL 1313094 (S.D.N.Y. Mar. 27, 2024) .......................................................10

*Treppel v. Biovail Corp.*,
    233 F.R.D. 363 (S.D.N.Y. 2006) .............................................................................4

## Statutes

Securities Exchange Act of 1934 .....................................................................................1

## Rules

Fed. R. Civ. P. 15(a) ......................................................................................................5

## Other Authorities

17 C.F.R. § 240.10b-5 ....................................................................................................1

Plaintiffs respectfully submit this reply memorandum in further support of their Motion for Issuance of Letters of Request Pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, dated March 18, 1970 (the "Motion").[1] *See* ECF Nos. 121-23.

## I.    INTRODUCTION

As set forth in the Opening Brief, the requests contained in the Motion (the "Requests") seek reports, agreements, and communications relating to SolarEdge's "channel inventories" and demand in Europe for the Company's products. These documents are directly relevant to whether Defendants' statements characterizing channel inventories as "low," and demand for SolarEdge's products in Europe as strong, were false and/or misleading (*i.e.*, "falsity") and whether Defendants spoke knowing or recklessly disregarding their statements' falsity (*i.e.*, "scienter"). The documents thus are also directly relevant to Plaintiffs' claims, as falsity and scienter are two of the elements that Plaintiffs must prove to succeed on their claims against Defendants for violations of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

Defendants oppose the Motion on the grounds that (i) point-of-sale ("POS"), inventory days on hand ("DOH"), and other data sought by the Requests are not relevant to Plaintiffs' claims, (ii) documents responsive to the Requests can be obtained from Defendants, and (iii) Plaintiffs waited too long to bring the Motion. None of these objections, however, carry Defendants' burden of providing a "good reason" to deny the Motion. *First*, certain of Defendants' alleged

---

[1] Citations to "Opening Brief" or "Br." are to Plaintiff's memorandum of law in support of the Motion. ECF No. 121. Capitalized terms not defined herein have the meanings assigned in the Brief. Citations to "Opposition" or "Opp." are to Defendants' memorandum of law in opposition to the Motion. ECF No. 126. References to "¶_" are to paragraphs of the Second Consolidated Amended Complaint ("SAC"). ECF No. 72. References to "Calandra Reply Decl." are to the February 3, 2026 Declaration of Brian Calandra, filed with this reply. For ease of reading, citations, internal quotations, and footnotes are omitted and emphasis is added unless otherwise noted.

misstatements directly refer to the POS, DOH, and other data sought by the Requests, and the Court cited allegations of reports of that data as supporting a strong inference of Defendants' scienter. *Second*, the Opposition on its face only commits to producing documents responsive to a subset of the Requests, and Defendants' productions will be incomplete because Defendants have deleted (or will not search) an extensive amount of custodial data. *Third*, any delay in bringing the Motion is squarely the result of Defendants' own dilatory conduct. The Motion should be granted in full.

## II.    ARGUMENT

"A party opposing issuance of a letter rogatory must show 'good reason' why such letter should not issue." *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24, 26–27 (D. Conn. 2003); *accord Image Processing Techs., LLC v. Canon, Inc.*, 2011 WL 13312041, at *1 (E.D.N.Y. Sept. 13, 2011) (defendants must "show good reason" to withhold issuing letter rogatory). Further, "[i]n determining whether to issue a letter rogatory, evidence sought from the proposed discovery will not be weighed and no attempt will be made to predict whether such evidence will ultimately be obtained." *Trustmark*, 218 F.R.D. at 26–27. Where, as here, Defendants challenge relevance— an "extremely broad concept"—they "must justify any restrictions on discovery." *Blagman v. Apple, Inc.*, 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014).

### A. THE REQUESTED EVIDENCE IS DIRECTLY RELEVANT TO DEFENDANTS' ALLEGED MISREPRESENTATIONS AND SCIENTER

Contrary to the Opposition, each of Plaintiffs' eight Requests directly relates to the claims this Court has held are actionable. As an initial matter, Defendants do not dispute the relevance of Requests 7 and 8 and instead only challenge the relevance of Requests 1-6. *See* Opp. at 5-7. Requests 1-4 seek reports on "channel inventory," "days-on-hand for inventory," "point-of-sale data," and "sell-through data" for SolarEdge products. *See* ECF No. 124-1 at 11. These reports are

2

relevant to Plaintiffs' claims because the statements regarding channel inventories that this Court sustained directly reference this information. *Compare* ¶156 ("when we are looking at the ***inventory on hand***, when it comes to our distributors, the channels are pretty, I would say, low on inventory in most cases") & ¶157 ("in Europe, we actually see low [channel] inventory ***days on hand***," and "not only . . . [do] we see that the level of [channel] inventory is relatively not high, but it's actually that we see ***record sellout*** of products coming from the distribution channels") *with In re SolarEdge Techs., Inc. Sec. Litig.*, 2025 WL 1031154, at *8 (S.D.N.Y. Apr. 6, 2025) (holding statements in ¶¶156-57 actionable). Likewise, certain statements that the Court held were sufficiently alleged to be misleading concerning demand in Europe also refer to data in these reports. *Compare* ¶167 ("we continue to see very strong demand from Europe for all products and relatively ***low inventory levels*** in the channel"), ¶178 ("we still see very strong underlying demand for – last quarter, for example, we get from our channels and distributors what we call ***point-of-sale data***"), & ¶179 ("when we are looking at the ***point-of-sale data*** of how much is being sold from the channels, we see record levels over the last two quarters that, to our understanding, are continuing") *with SolarEdge*, 2025 WL 1031154, at *8.

Although, to be clear, the misstatements sustained by the Court are not misleading ***solely*** because of their references to inventory levels, DOH, or POS data, the scope and plain language of the misstatements sustained by the Court demonstrates the relevance of Requests 1-4. *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 4687016, at *6 (N.D. Ala. June 6, 2019) (issuing letters of request for underlying information to assess fraudulent claims); *El Paso Disposal, LP v. Ecube Labs Co.*, 792 F. Supp. 3d 703, 708 (W.D. Tex. 2025) (issuing letters regarding customer cancellations and sales because they were central to fraudulent activity).

3

Requests 5 and 6, for their part, seek agreements governing the relationships between SolarEdge and the Company's customers: the master service agreement and special pricing agreements. *See* ECF No. 124-1 at 11. The terms of these agreements are relevant to plaintiffs' live claims because they confirm the SAC's allegations that SolarEdge customers contractually were required to provide to SolarEdge the reports sought in Requests 1-4. *See* ¶¶90, 92. The Court cited Defendants' "awareness of these reports" as evidence supporting a strong inference of scienter. *See SolarEdge*, 2025 WL 1031154, at *13. Evidence corroborating these allegations thus is squarely relevant to Plaintiffs' surviving claims.

At bottom, the Opposition appears to assert that the Motion must be denied because the information sought in the Requests could *also* support allegations of channel stuffing, regardless of whether the Requests are relevant to Plaintiffs' live claims. Opp. at 5-6. But Defendants offer no support for this position, likely because it is not the law. *See, e.g., Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 24, 27 (D. Conn. 2003) (the fact that "the request might touch on irrelevant matter . . .would not constitute good reason not to issue the letter seeking otherwise relevant material."); *Apple*, 2014 WL 1285496, at *8 (items not referenced in the complaint are still relevant). Indeed, authorities cited by Defendants denied motions for letters rogatory because the requests were relevant "***only to claims or defenses that have been stricken***." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 375 (S.D.N.Y. 2006); *see also Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd.*, 2012 WL 4784632, at *1 (S.D.N.Y. Oct. 4, 2012) (denying discovery where all claims had been dismissed).

As for Defendants' assertions regarding CWs 11-14, they are nothing more than a non-sequitur. *See* Opp. at 6-7. Plaintiffs have *never* asserted that information from "European witnesses" is irrelevant to their claims. Rather, Plaintiffs refused to disclose the identities of CWs

4

Case 1:23-cv-09748-GHW-OTW  Document 131  Filed 02/03/26  Page 9 of 17

11-14 to Defendants because allegations from those witnesses were added to the SAC *solely to establish Defendants' knowledge or reckless disregard of channel stuffing*, and the Court expressly held that their allegations failed to do so. *See In re SolarEdge Techs., Inc. Sec. Litig.*, 2025 WL 1031154, at *2-3, 10 (S.D.N.Y. Apr. 6, 2025) (holding that the SAC's allegations only show knowledge of aggressive sales tactics). Indeed, all the allegations cited by Defendants concern knowledge or disregard of sales tactics. *See* Opp. at 7 (¶¶74, 85, 86, 96). Accordingly, unlike the information sought in the Requests, CW11-14's allegations concerning Defendants' knowledge of channel stuffing are not relevant to Plaintiffs' claims concerning channel inventory levels or demand in Europe, and thus their identities are neither relevant nor proportional to the needs of this case.

Finally, although Plaintiffs do not propound the Requests to revive their claims that Defendants' statements about revenues and internal inventories were misleading for failing to disclose channel stuffing, it is important to note that discovery to date has already revealed evidence corroborating Plaintiffs' channel stuffing claims.[2] For example, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮Calandra Reply Decl.

Ex. 1 at SEDG-Shen_0005883. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮*Id.* Ex. 2 at SEDG-Shen_0006006.

---

[2] For the avoidance of doubt, the case management order, expressly permits Plaintiffs to seek leave to amend the SAC consistent with Fed. R. Civ. P. 15(a). ECF No. 88 at 2.

### B. OVERLAP BETWEEN THE REQUESTS AND PARTY DISCOVERY DOES NOT PRECLUDE GRANTING THE MOTION

The Opposition next asserts that the Motion must be denied because the Requests overlap with documentary discovery requests Plaintiffs served on Defendants. Opp. at 7-8. Not so.

*First*, it is well-established that the fact that Plaintiffs sought similar documents from Defendants, standing alone, is not "good reason" to deny a request for letters rogatory. *See, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 4687016, at *7 (N.D. Ala. Jun. 6, 2019) ("the mere fact [of] an alternative method for obtaining the documents is not proof that it is necessarily an effective, or efficient, method for doing so in this case" (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 53 (E.D.N.Y. 2010)); *Marical Inc. v. Cooke Aquaculture Inc.*, 2016 WL 3029944, at *2 (D. Me. May 25, 2016) (party is not required to "exhaust[] alternative means of discovery before…a motion for issuance of a letter rogatory").

*Second*, Defendants' insistence that *they* can produce all documents responsive to the Requests only demonstrates why the Requests are necessary. For example, Defendants describe efforts to search for and produce documents responsive to Requests 1, 2, 7, and 8, but say nothing about Requests 3 through 6. In addition, Defendants mischaracterize Requests 7 and 8, which seek **complaints** from specific customers to SolarEdge regarding declining demands and rising inventories, not documents concerning demand and inventory levels in general. *See* Opp. at 8. This is a pivotal omission because, as the parties were negotiating custodians for searching electronically stored information ("ESI"), Defendants claimed that the Company had not preserved *any* organizational charts from the Class Period and thus could not identify lower-level SolarEdge employees in Europe. These employees most likely would have received documents responsive to Requests 7 and 8 (*i.e.*, customer complaints) in the first instance because they dealt with customers on a day-to-day basis. Accordingly, while Defendants' discovery productions "are a step in the

6

right direction," they are necessarily underinclusive and thus not grounds to deny the Motion. *See Gardner v. Starkist Co.*, 2021 WL 303426, at *4 (N.D. Cal. Jan. 29, 2021) (issuing letters rogatory where defendants' productions would be underinclusive).

*Third*, it is also highly unlikely that Defendants can produce all the documents sought by the requests because, as Defendants have belatedly disclosed, a large amount of potentially relevant documents have been deleted. As the Court may recall, the SAC, which was filed in January 2025, contains *dozens* of allegations concerning former SolarEdge executive Peter Mathews ("Mathews"). *E.g.*, ¶¶4, 35, 37-39, 41-42, 44, 63, 67, 69, 76, 78, 81, 92, 95, 98, 99. After inexplicably refusing for months to include Mathews as an ESI custodian, Defendants belatedly admitted during an October 25, 2025 telephonic meet and confer that Mathews's data had been deleted in April 2025, only three months after the SAC was filed and nine months after Mathews left SolarEdge. Nearly two months later, on December 23, 2025, Defendants admitted that, in addition to Mathews's data, data from *19 other SolarEdge Vice Presidents* also had been deleted. Defendants also had proposed Marco Ledic, SolarEdge's former country manager for Germany, its largest market in Europe, as a potential custodian, and assured Plaintiffs during a January 6, 2026 meet and confer call that Ledic's data was available. On January 14, 2026, however, Defendants admitted that Ledic's data had been deleted.[3]

*Fourth*, courts routinely grant requests for letters rogatory that overlap with party discovery depending on the importance of the discovery to the action and to ensure that the requesting party can obtain "complete and accurate information" and verify the accuracy of information produced by the opposing party. *See, e.g., Fleites v. Mindgeek*, 2022 WL 18397365, at *3 (C.D. Cal. Nov.

---

[3] Plaintiffs anticipate filing a spoliation motion in connection with SolarEdge's deletion of data. Plaintiffs noticed a 30(b)(6) deposition regarding the data on November 5, 2025, to build a record to support their motion, but Defendants still have yet to identify a witness after *three months*.

17, 2022) (issuing letters rogatory for requests that overlapped with party discovery to ensure plaintiff "obtains complete and accurate information"); *Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, 2020 WL 5900155, at *2 (C.D. Cal. Aug. 17, 2020) (grant request for "highly significant" discovery); *Desirous Parties Unlimited Inc. v. Right Connection Inc.*, 2023 WL 245871, at *3 (D. Nev. Jan. 18, 2023) (granting letters rogatory motion so plaintiff can "verify whether Defendants' information (once provided) is accurate"). Here, the Requests seek information that is vital to Plaintiffs' claims because it will substantiate allegations the Court cited in sustaining the SAC in part. *See* Section II.A *supra*. In addition, as set forth above, given that Defendants may not be able to provide complete and accurate information, the Requests will allow Plaintiffs to confirm that the information obtained is complete and accurate.

Defendants' authorities do not mandate a different result. For example, the court in *Skyline Steel, LLC. V. PilePro, LLC*, expressly declined to address whether the discovery sought was duplicative. *See* 2015 WL 13832108, at *2 (S.D.N.Y. Jan. 28, 2015) ("Nevertheless, it need not address that issue [alternative means of discovery] because there is an independent and adequate ground for denying PilePro's application"). Further, the defendants in Calixto had already produced the data sought by the plaintiffs and denied deleting any ESI. *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *20 (S.D. Fla. Nov. 16, 2009) (denying third-party discovery that would provide "duplicative information"). Here, conversely, data has been lost and Defendants may not be able to produce all the information sought.

## C. DEFENDANTS CAUSED ANY DELAY IN BRINGING THE MOTION

Setting aside that the fact that a party "presses its discovery late in the discovery period [does not] justify issuance of a protective order," *Trustmark*, 218 F.R.D. at 27, the timing of the Motion is a direct result of Defendants efforts to frustrate the pace of discovery in this action, not a reflection of delay by Plaintiffs.

8

Plaintiffs' initial requests for production, served on June 20, 2025, sought "Documents sufficient to Identify all SolarEdge Customers in Europe, Including the Customer's full name, present or last known address, telephone number, and email address." *See* Calandra Decl. Ex. 3 at 12 ("Document Request 5"). In their July 28, 2025 responses to Plaintiffs requests, and during the parties' August 15, 2025 meet and confer, Defendants objected that it was unduly burdensome to produce documents solely for the purpose of identifying customers, and when Plaintiffs stated that they sought this information for the purpose of requesting documents from customers through the Hague (*i.e.*, the subject matter of the Motion), Defendants flatly refused to create a list of those customers and their addresses. Accordingly, on August 29, 2025, Plaintiffs propagated an interrogatory seeking the information sought in Document Request 5. *See* Calandra Decl. Ex. 4 at 6. Defendants' interrogatory responses, served September 29, 2025, only listed the *names* of approximately 2,800 customers in Europe, without any contact information, even though that information was expressly requested in Plaintiffs' interrogatory. *See id.* at 2, 6. The parties met and conferred regarding Defendants' interrogatory responses on October 10, 2025, and as a compromise Defendants proposed to provide contact information for SolarEdge's ten largest customers in Europe, which Plaintiffs accepted. Although Plaintiffs followed up regularly over the ensuing two months regarding the customers and contact information, and Defendants consistently assured Plaintiffs that the information was coming, Defendants did not identify or provide contact information for Defendants until December 23, 2025. Plaintiffs promptly began preparing the requests for letters rogatory, supplemented with additional large European customers that Defendants had omitted, and filed the Motion on January 22, 2026.

Under these circumstances, where Defendants (i) refused to produce documents in discovery, (ii) served facially deficient interrogatory responses, and (iii) took over two months to

produce information they could have produced at the push of a button, it is absurd, although not surprising, that they would seek to block the Motion by accusing *Plaintiffs* of delay. Defendants' vague efforts to cast aspersions on Plaintiffs' motive for the Requests also rings extremely hollow given that Plaintiffs have sought information with which to bring the Motion *since June 2025*. See Opp. at 2, 5, 9.

These circumstances also easily distinguish Defendants' cases. Opp. at 8-9. For example, in *Stein v. Skatteforvaltningen*, the court refused to issue letters rogatory that the moving party "ha[d] not shown to be necessary or appropriate." *See* 2024 WL 1313094, at *3 (S.D.N.Y. Mar. 27, 2024). Further, in *Skyline Steel, L.L.C. v. PilePro, L.L.C.*, 2015 WL 13832108, at *2 (S.D.N.Y. Jan. 28, 2015), the moving parties ignored repeated warnings from the court to seek international discovery earlier and the objectors had not delayed for months in providing discovery responses.

If nothing else, denying the motion would reward Defendants for their delay, which is improper. *See Iqbal v. Multani*, 2016 WL 943545, at *6 (E.D.N.Y. Jan. 5, 2016), *report and recommendation adopted*, 2016 WL 943542 (E.D.N.Y. Mar. 11, 2016) ("Defendants' dilatory conduct that has unnecessarily delayed this matter for nearly two years. Such conduct should not inure to their benefit"). Indeed, Defendants' dilatory conduct has been attendant throughout discovery. For example, while Defendants agreed to collect and search ESI for 14 custodians, on October 23, 2025, they did not finish even collecting that custodial data until January 2026. Similarly, each time Plaintiffs have proposed search terms, Defendants have taken weeks to provide hit reports in response to those terms, even though a database vendor can run searches in seconds. In fact, to date the parties have yet to agree on terms. *See* ECF No. 129.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Motion in its entirety.

DATED:  February 3, 2026

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brian Calandra*
Jeremy A. Lieberman
Brian Calandra
Guy Yedwab
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: bcalandra@pomlaw.com
E-mail: gyedwab@pomlaw.com

*Counsel for Lead Plaintiffs Mivtachim the
Workers Social Insurance Fund Ltd., Keren
Hgimlaot Hmerkazit Histadrut Central
Pension Fund Ltd., Kerren Makefet Pension
and Provident Center Cooperative Society
Ltd., the Hadassah Workers Pension Fund
Ltd., and Hachshara Insurance Company
Ltd., Named Plaintiff Javier Alcides
Cascallar, and the Class*

11

## WORD COUNT CERTIFICATION

I, Brian Calandra, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by that rule, there are 3,204 words in the document.

*/s/ Brian Calandra*
Brian Calandra

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2026, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Brian Calandra*
Brian Calandra

13