# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SOLAREDGE TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:23-cv-09748-GHW-OTW |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd., and Named Plaintiff Javier Alcides Cascallar (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby request that Defendants[1] produce for inspection all Documents described below in accordance with the following definitions and instructions at the offices of Pomerantz LLP, 600 Third Avenue, 20th Floor, New York, New York 10016 within thirty (30) days of the date of service or at such other location or on such other date as the parties may agree or the Court may order.

## DEFINITIONS

1.  Except as set forth below, all capitalized terms have the same meaning as set forth in the Second Amended Complaint ("Complaint"). ECF No. 72.

---

[1] "Defendants" are collectively SolarEdge Technologies, Inc. ("SolarEdge" or the "Company"), and Zvi Lando ("Lando"), Ronen Faier ("Faier"), Lior Danziger ("Danziger"), and J.B. Lowe ("Lowe"). Lando, Faier, Danziger, and Lowe collectively are the "Individual Defendants."

2.      "Action" refers to the above-captioned action.

3.      "All," "any," and "each" shall be each construed as encompassing all, any, and each.

4.      "Alleged Misstatements" mean, without limitation, the statements identified in Section VI of the Complaint other than those referenced in Paragraphs 139, 141, 143, 146, 148, 150, 152, 159, 161, 163, 169, 188, 190, 194 of the Complaint.

5.      "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside their scope.

6.      "SolarEdge" or "the Company" means SolarEdge Technologies, Inc. and all of its present and former officers, directors, committees, Employees, partners, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting, or purporting to act, on behalf of any of the foregoing.

7.      "Communication" and "Communications" are used in a comprehensive sense, and mean and include every conceivable manner or means of disclosure, transfer, transmittal, or exchange of oral, written, electronic, or other information, in the form of facts, ideas, inquiries, or otherwise, between or among one or more Persons or entities, and include, without limitation, all Documents, writings, correspondence, memoranda, messages, meetings, conversations, discussions, conferences, agreements, e-mails, chats (*e.g.*, Slack chats); internal instant messaging software; or other transmittal of information, whether face-to-face, by telephone, by mail, by facsimile, by computer, or otherwise, and further include, without limitation, all forms of electronic Communications and messages.

8.    "Complaint" refers to the Second Amended Complaint, filed on January 3, 2025 (ECF No. 72) in the Action.

9.    "Concerning" means relating to, referring to, in connection with, pertaining to, describing, reflecting, discussing, analyzing, regarding, summarizing, evidencing, embodying, or constituting.

10.    "Customers" refers to purchasers of Products directly from SolarEdge, Including, but not limited to, distributors, wholesalers, and installers.

11.    "Date" means the exact day, month and year if ascertainable, or if not, the best approximation (Including the relationship to other events).

12.    "Defendants" means SolarEdge and the Individual Defendants.

13.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), Including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term. The term "Document" further includes, but is not limited to, any and all forms of recorded information, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, Including all originals, revisions, and markups of drafts, and all files, Documents, databases, e-mails, and other data maintained in computer-readable form. The term "Document" specifically includes, but is not limited to: working papers, Communications, Including intra-company Communications; internal minutes and records of meetings; supporting materials for any meetings; agendas; presentations; reports; exhibits; articles; letters; facsimile transmissions; telegrams; telephone bills and records; cables; records; books; summaries or records of personal conversations or interviews; legal pleadings; affidavits; deposition transcripts; trial transcripts; forecasts; statistical statements; accountants' work papers; brochures; pamphlets;

3

circulars; press releases; agreements; contracts; telephone messages, slips and logs; diary entries; electronic mail and messages of every kind; calendars; evaluations; assessments; analyses; test results; correspondence; memoranda; notes; video recordings of every kind; audio recordings of every kind; electronic recordings of every kind; drawings; graphics; graphs; maps; diagrams; charts; photographs; tables; indices; recordings; tapes; microfilms; reports of investigations; opinions or reports of consultants; data processing and computer printouts, tapes, disks, and data and information stored in computers or data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information; all other mechanical or electronic means of storing or recording data or information; and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.

14.    "Employee" means any Person who at any time during the Relevant Time Period acted or purported to act on behalf of an entity or Person, Including all present and former officers, directors, executives, partners, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity or Person.

15.    "End Users" refers to purchasers of Products from Customers, Including, but not limited to, installers and engineering, procurement, and construction firms.

16.    "Identify," when referring to a Person, means to give, to the extent known, the Person's full name, present or last known address, and email address, and when referring to a natural Person, additionally, the present or last known place of employment.

17.    "Identify," with respect to Communications, means to give, to the extent known, (a) a description of the substance of the Communication; (b) the form of the Communication (e.g.,

telephone, facsimile, email, etc.); (c) the identity of all parties to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each Person; (d) the identity of the Person who you contend initiated the Communication; and (e) the time, date and place of the Communication.

18.    "Identify," when referring to Documents, means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) Date of the Document; and (iv) author(s), addressee(s) and recipient(s).

19.    "Including" means including without limitation.

20.    "Individual Defendants" means Zvi Lando ("Lando"), Ronen Faier ("Faier"), Lior Danziger ("Danzinger"), and J.B. Lowe ("Lowe").

21.    "Plaintiffs" means Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd., and Named Plaintiff Javier Alcides Cascallar.

22.    "Person" refers to any natural person or any legal entity, Including, without limitation, any business or governmental entity or association.

23.    "Policy" or "Policies" means policies, procedures, practices, guidelines, protocols, programs, or systems.

24.    "Product" or "Products" means any product or service manufactured, marketed or sold directly to Customers by SolarEdge or indirectly by SolarEdge to End Users through Customers, Including, but not limited to, power optimizers, inverters, monitoring services, energy storage, and smart energy management via a cloud-based monitoring platform.

25.     "Requests" means Lead Plaintiffs' requests for production of Documents and/or Communications.

26.     "SEC" means the United States Securities and Exchange Commission.

27.     "You" or "Your" refers to the party responding to this demand for production and any present and former officers, directors, committees, Employees, partners, corporate parents, predecessors, successors, assigns, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other Persons acting, or purporting to act, on behalf of any of the foregoing.

## INSTRUCTIONS

1.     In producing Documents, You are requested to furnish all Documents in Your possession, custody or control or in the possession, custody or control of any of Your agents, representatives, Employees, accountants or attorneys, wherever those Documents might be located.

2.     These Requests are continuing in nature. Under Rule 26(e) of the Federal Rules of Civil Procedure, You are required to supplement Your responses and produce additional Documents if You obtain further or different information, and Plaintiffs specifically reserve the right to seek supplementary production of Documents before trial.

3.     All Documents that exist in electronic format are to be produced in their native format, or in another mutually agreeable format that provides Plaintiffs with all metadata associated with such electronic Documents and allows Plaintiffs to search and organize such electronic Documents in a manner that is as effective and efficient as that enjoyed by the producing party.

4. Provide all electronically stored information ("ESI") in the form and manner agreed upon by the parties to this Action for producing ESI in the ESI protocol that the parties are currently negotiating or, if it has been signed by the parties, so-ordered by the Court ("ESI Protocol").

5. All Documents are to be produced as they are kept in the ordinary course of business or be organized and labeled to correspond to the categories in these Requests.

6. If any Document was, but is no longer, in Your possession or subject to Your control, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred, voluntarily or involuntarily, to others, or (d) has been otherwise disposed of, and in each instance explain the circumstances of such disposition and state the approximate Date thereof.

7. Wherever You are asked to produce a Document that was formerly in Your possession, custody or control but has been lost or destroyed, You shall designate the type of document, (i.e., letter, report, book, brochure, email, etc.) and state:

a) information sufficient to enable Plaintiffs to Identify the Document, Including the title or subject heading, Date, name(s) and address(es) of the author or signer(s), and Person(s) copied;

b) the substance or content of the Document;

c) the last known location of the Document;

d) the Date on which the Document was lost or destroyed; and

e) if destroyed, the circumstances of or reason for such destruction and the Persons requesting and performing such destruction.

8. In the event You withhold any Document called for by these Requests on the basis of a claim of privilege or other right of nondisclosure, any non-privileged portion of such Document must be provided.

7

9.      Notwithstanding the assertion of any privilege or other right of nondisclosure, any requested Document that You object to producing, but that nevertheless contains non-privileged information that is responsive to these Requests, must be produced, but that portion of the Document as to which the privilege or right of nondisclosure is asserted may be redacted in conformance with the Protective Order provided that such portion of the Document is marked "redacted."  Where any Document is produced in redacted form on the basis of such assertion, You shall Identify (i) the nature of the objection that is being claimed and (ii) otherwise follow the procedure in the Protective Order.

10.      Wherever You assert that a Document is properly withheld from production for inspection or copying on the grounds of evidentiary privilege or immunity from discovery, You shall designate the type of Document (i.e., letter, report, book, brochure, email, etc.) and state:

a)      information sufficient to enable Plaintiffs to Identify the Document, Including: (i) the title or subject heading; (ii) Date; (iii) name(s) and address(es) of the author or signer(s); (iv) recipients; and (v) Person(s) copied;

b)      the general subject matter dealt with in the Document with reasonable specificity; and

c)      an explanation of the privilege asserted.

11.      If an objection is made to any of these Requests, the response shall state whether Documents are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive Documents will occur notwithstanding such objection.

12.      These Requests shall not be deemed to call for identical copies of Documents. "Identical" means precisely the same in all respects; for example, a document with handwritten

notes or editing marks shall not be deemed identical to one without such notes or marks. However, You shall not de-duplicate across custodians; if the same Document was received or maintained by more than one individual, You shall produce the same Document for each and every individual from whom it was gathered.

13.     In producing Documents in connection with these Requests, each Document to be produced should include all attachments and all enclosures referred to in the Documents or originally attached or enclosed with the Document requested or to be produced.

14.     If any portion of a Document is considered responsive to any Request, the Request shall be construed as requesting production of the entire Document, Including all attachments and enclosures, and in their original folder, binder, or other cover or container unless it is not possible to do so. Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the Document.

15.     If You cannot respond to these Requests in full after exercising due diligence to secure the Documents requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

16.     If no Documents exist which are responsive to a particular Request, state this assertion in writing.

17.     In the case of any Document relating in any way to any meeting or conversation, all participants in the meeting or conversation are to be identified.

18.     Wherever You object that a request is overly broad, burdensome, or oppressive, You shall state all facts demonstrating the nature of the burden.

19.     The specificity of any Request or part of a Request shall not limit the generality of

9

any other Request or part of a Request.

20.     Whenever necessary to bring within the scope of these Requests Documents that might otherwise be construed to be outside its scope, the use of a verb in any tense shall be construed as the use of that verb in all other tenses, and the use of the feminine, masculine or neutral genders shall include all genders.

21.     The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary, to bring within the scope of this demand for production any Documents that might otherwise be construed to be outside their scope.

22.     The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense, as necessary, to bring within the scope of this demand for production any Documents that might otherwise be construed as outside their scope.

23.     These requests apply to materials written in any language. Materials that are responsive to these requests shall be produced regardless of what language the materials are written in.

**RELEVANT TIME PERIOD**

Unless otherwise indicated, the time period covered by these Requests is from June 1, 2022 through December 31, 2023 (the "Relevant Time Period"). If, however, information generated prior to or after the Relevant Time Period is necessary for a correct or complete understanding of these Document Requests, such Documents shall be disclosed. To the extent any Request uses the phrase "at any time" or otherwise indicates that the Relevant Time Period does not apply, the Request is not limited by this time period. If any Document is undated and the Date of its

10

preparation cannot be determined, the Document shall be disclosed if otherwise responsive to these Document Requests.

## **DOCUMENT REQUESTS**

1.     Documents sufficient to show the overall organizational, corporate, and operating structure of SolarEdge and all its direct or indirect parent or subsidiary entities, Including organizational charts and other Documents that Identify the employees and reporting structure of SolarEdge and all its direct or indirect parent or subsidiary entities.

2.     Documents sufficient to show the members of SolarEdge's strategy team in Israel, as alleged in paragraph 80 of the Complaint.

3.     All Communications to or from the Individual Defendants, and all Documents and Communications where the Individual Defendants were cc'd or bcc'd, Concerning the allegations in the Complaint.

4.     All Documents Concerning the Alleged Misstatements, or any other similar public statements, Including all Documents and Communications Concerning the preparation, review, editing, approval, modification, and/or distribution the Alleged Misstatements or any other similar public statements.

5.     Documents sufficient to Identify all SolarEdge Customers in Europe, Including the Customer's full name, present or last known address, telephone number, and email address.

6.     Documents sufficient to Identify a contact Person for each SolarEdge Customer in Europe, Including the Person's full name, present or last known address, telephone number, and email address, to the extent this information is different from the information provided in response to Request 5 above.

7.      All Documents and Communications Concerning Defendants' statements Concerning "low", or "not high" channel inventory levels as alleged in, for example, paragraphs 9, 10, 15, 110, 116, 138, 156, 157, 167, 176, 177, and 208 of the Complaint.

8.      All Documents and Communications Concerning demand for SolarEdge Products in Europe.

9.      All Documents and Communications between SolarEdge and/or its agents, on the one hand, and analysts, investors, and/or members of the media, on the other hand, Concerning the sales of the Company's Products in Europe, demand for the Company's Products in Europe, or sales of the Company's Products in the United States or elsewhere worldwide to make up for sales of the Company's Products in Europe.

10.     All Documents and Communications Concerning SolarEdge and/or its agents statements to analysts, investors, and/or members of the media Concerning the sales of the Company's Products in Europe, demand for the Company's Products in Europe, or sales of the Company's Products in the United States or elsewhere worldwide to make up for sales of the Company's Products in Europe.

11.     All Documents and Communications Concerning requests for and/or approvals of discounts to Customers Concerning demand for the Company's Products in Europe.

12.     Documents sufficient to show the contents of any inventory management system and/or inventory reports used or created by the Company for each day of the Relevant Time Period, Including, but not limited to, "Priority," as alleged in paragraph 86 of the Complaint, Qlik Sense, as alleged in paragraph 101 of the Complaint.

12

13.     All Documents and Communications Concerning requests from Customers and/or End Users to delay orders, Including, but not limited to, the requests described by Fair in paragraph 104 of the Complaint.

14.     All Documents and Communications Concerning daily inventory reports as alleged in paragraphs 89-90 of the Complaint.

15.     All Documents and Communications to or from the Individual Defendants Concerning the price of the Company's common stock.

16.     All Documents and Communications to or from the Individual Defendants Concerning statements by analysts Concerning the Company.

17.     All agreements between SolarEdge and Customers, Including, but not limited to master service agreements as alleged in paragraphs 89-90 of the Complaint and special pricing agreements as alleged in paragraph 92 of the Complaint.

18.     All Documents and Communications Concerning reports from Customers and/or End Users to SolarEdge, Including, but not limited to, channel inventory, point-of-sale, and inventory-on-hand reports as alleged in paragraphs 91-93 of the Complaint.

19.     All Documents and Communications Concerning Complaints from Customers to SolarEdge.

20.     All Documents and Communications Concerning orders placed from China as alleged in paragraph 96 of the Complaint.

21.     All Documents and Communications between SolarEdge and/or its agents, on the one hand, and SolarEdge Customers or End Users, Concerning sales of Products to Customers or End Users in Europe, Including, but limited to, Documents and communications Concerning any refusal by Customers to purchase Products.

13

22.     All Documents and Communications Concerning requests by Customers and/or End Users to cancel orders of Products.

23.     All Documents and Communications Concerning requests by Customers and/or End Users to move orders to different fiscal quarters, Including, but not limited to, requests to "push out" orders as described by Lando in paragraph 133 of the Complaint.

24.     All Documents and Communications Concerning installation rates of the Company's Products, Including, but not limited to, the installation rate decline described by Lando in paragraph 131 of the Complaint.

25.     All Documents and Communications Concerning the efforts to go "deeper into our channels to understand what's happening there," as described by Faier in paragraph 134 of the Complaint.

26.     All Documents and Communications Concerning the Company's sales strategy in Europe.

27.     All Documents and Communications Concerning guidance provided to investors and analysts.

28.     All Documents and Communications Concerning requests from Customers and/or End Users to delay orders, Including, but not limited to, the requests described by Fair in paragraph 104 of the Complaint.

29.     All Documents and Communications Concerning Defendants' statements Concerning "excess inventory" and "slower growth rates in Europe" as alleged in paragraphs 13, the Complaint.

14

30.     All Documents and Communications Concerning SolarEdge's the shipment of Products early, as alleged in paragraphs 64-65 of the Complaint, in connection with declining demand in Europe.

31.     All Documents and Communications Concerning SolarEdge's extension of payment terms, as alleged in paragraphs 64 and/or 82 of the Complaint, in spite of Concerns regarding declining demand in Europe.

32.     All Documents and Communications Concerning offering free carrier shipping terms, as alleged in paragraph 66 of the Complaint, in connection with declining demand in Europe.

33.     All Documents and Communications Concerning offering "FOB" shipping terms, as alleged in paragraph 71 of the Complaint, in connection with declining demand in Europe.

34.     All Documents and Communications Concerning SolarEdge's recognition of revenue "under the core principle that transfer of control to customers" as alleged in paragraph 54 of the Complaint.

35.     All Documents and Communications Concerning Customers' reducing prices of SolarEdge Products to increase sales to End Users in response to overstocked channel inventories or declining demand in Europe.

36.     All Documents and Communications Concerning SolarEdge's finished goods inventories, Including, but not limited to, Documents and Communications Concerning increases of SolarEdge's finished goods inventory.

37.     All Documents and Communications Concerning channel inventories, Including, but not limited to, Documents and Communications Concerning increases of channel inventories.

15

38.    All Documents and Communications Concerning communications from the Individual Defendants directly or indirectly to Employees Concerning demand for and/or sales of Products.

39.    All Documents and Communications Concerning any meetings of SolarEdge's Board of Directors, Including All minutes (Including All drafts), summaries, presentations, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings (Including All drafts) Concerning sales of the Company's Products in Europe.

40.    All Documents and Communications Concerning any meetings of SolarEdge's Board of Directors, Including All minutes (Including All drafts), summaries, presentations, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings (Including All drafts).

41.    All Documents and Communications Concerning any all hands meetings, *e.g.*, as described in paragraph 84 of the Complaint, Including All minutes (Including All drafts), summaries, presentations, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings (Including All drafts).

42.    All Documents and Communications Concerning quarterly and/or annual in-person, telephonic, or virtual meetings and/or calls with Employees, Including All minutes (Including All drafts), summaries, presentations, audio and video recordings, agendas, notes, and any Documents circulated in connection with such events (Including All drafts).

43.    All Documents and Communications Concerning quarterly and/or annual in-person, telephonic, or virtual meetings between any of the Individual Defendants and Alfred Karlstetter, Including All minutes (Including All drafts), summaries, presentations, audio and

16

video recordings, agendas, notes, and any Documents circulated in connection with such events (Including All drafts).

44.    All Documents and Communications Concerning quarterly and/or annual in-person, telephonic, or virtual Quarterly Business Review meetings, Including All minutes (Including All drafts), summaries, presentations, audio and video recordings, agendas, notes, and any Documents circulated in connection with such events (Including All drafts).

45.    All Documents and Communications Concerning any directors' meetings, as alleged in paragraph 76 of the Complaint, Including All minutes (Including All drafts), summaries, presentations, audio and video recordings, agendas, notes, and any Documents circulated in connection with such meetings (Including All drafts).

46.    All Documents Concerning Plaintiffs. This Request is not limited to the Relevant Time Period.

47.    All Communications with former Employees Concerning this Action. This Request is not limited to the Relevant Time Period.

48.    All Documents Concerning any investigation, examination, audit, review or inquiry, whether formal or informal, of SolarEdge, by any federal or state agency or stock exchange, Including the FDA, SEC, Department of Justice, U.S. Attorney, or State Attorneys General, Concerning any of the facts alleged in the Complaint. This request covers all Documents and Communications between SolarEdge and the agencies and stock exchanges. This Request is not limited to the Relevant Time Period.

49.    All Documents, Communications, and Correspondence Concerning any contemplated or actual transactions in SolarEdge securities by Defendants, Including SolarEdge officers and any members of SolarEdge's Board of Directors.

17

50.    All Documents Concerning Your document destruction and retention policies or procedures during the Relevant Time Period and since this Action was commenced, any document retention or destruction policy with respect to ESI (Including e-mail, text messages, instant messages, computer records, disk files, or other electronic records) as well as handheld devices (Including smartphones, Blackberries, PDAs, or other mobile phones), and any actual, suggested or contemplated policy, program, procedure, instruction, direction or request Concerning the destruction, alteration, removal, concealment, non-disclosure, secrecy, or confidentiality of any of the Documents requested herein.

51.    Documents sufficient to Identify each Person who received any legal hold, preservation notice, or the equivalent thereof with respect to Documents potentially related to the subject matter of this Action, Including the date(s) on which they received such Communication(s).

52.    All Documents and Communications Concerning All investigation(s) conducted into SolarEdge's policies, procedures, or practices Concerning record retention and destruction, legal holds, and/or preservation of Documents.

53.    Documents sufficient to Identify or describe SolarEdge's efforts to preserve and collect Documents relevant to this Action. This Request is not limited to the Relevant Time Period.

54.    All Documents Concerning insurance contracts, Policies, or agreements that may provide coverage for any Defendant in connection with this Action, Including a possible judgment in this Action or indemnification or reimbursement for payments made to satisfy any such judgment. This Request is not limited to the Relevant Time Period.

55.    For all policies or agreements identified in connection with the request above, Documents sufficient to Identify the amount of insurance coverage that has been depleted or remains on such policies or agreements. This Request is not limited to the Relevant Time Period.

56.    All Documents reviewed, considered, and relied on by any experts engaged by Defendants in this Action.

57.    All Documents produced to You in connection with this Action by anyone other than Plaintiffs. This Request is not limited to the Relevant Time Period.

58.    All Documents Defendants intend to use to oppose or advance any claim or defense in the Action, Including:

    a.  all Documents that support any affirmative defense that Defendants include or plan to include in their Answer to the Complaint;

    b.  all Documents Defendants intend to introduce as evidence in the Action;

    c.  all Documents Defendants intend to use at any deposition or examination in the Action;

    d.  all Documents Defendants intend to attach to any filing in the Action; and

    e.  all Documents Defendants intend to use to oppose Plaintiffs' motion for class certification.

Dated: June 20, 2025

**POMERANTZ LLP**

By: */s/ Brian Calandra*
Brian Calandra
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bcalandra@pomlaw.com
       jalieberman@pomlaw.com

*Lead Counsel for Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and*

19

*Hachshara Insurance Company Ltd., and*
*Named Plaintiff Javier Alcides Cascallar*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 20th day of June, 2025, I served the attached document, Plaintiffs' First Set of Requests for Production of Documents to Defendants via electronic mail to counsel of record.

*/s Brian Calandra*
Brian Calandra
