# EXHIBIT 2



**2025 REVIEW & ANALYSIS**

# Securities Class Action Settlements

REVIEW & ANALYSIS

**CORNERSTONE RESEARCH**
Economic and Financial Consulting and Expert Testimony

# Table of Contents

| | |
|---|---|
| 2025 Highlights | 1 |
| Author Commentary | 2 |
|     Findings | 2 |
|     Looking Ahead | 2 |
| Total Settlement Dollars | 3 |
| Industry Sectors | 4 |
| Settlement Size | 5 |
| Type of Claim and Potential Investor Losses | 6 |
|     Rule 10b-5 Claims and Plaintiff-Style Damages | 6 |
|     '33 Act Claims and Statutory Damages | 8 |
| Analysis of Settlement Characteristics | 10 |
|     GAAP Violations | 10 |
|     Derivative Actions | 11 |
|     Institutional Investors | 12 |
| Time to Settlement and Case Complexity | 13 |
| Case Stage at the Time of Settlement | 14 |
| Cornerstone Research's Settlement Analysis | 15 |
|     Determinants of Settlement Outcomes | 15 |
| Research Sample | 16 |
| Endnotes | 17 |
| Appendices | 18 |
| About the Authors | 22 |

# Figures and Appendices

Figure 1: Settlement Statistics ........................................................................................... 1

Figure 2: Total Settlement Dollars .................................................................................... 3

Figure 3: Mega Settlements ............................................................................................... 3

Figure 4: Total Settlement Dollars by Year and Industry Sectors ................................. 4

Figure 5: Number of Settlements by Year and Industry Sectors .................................... 4

Figure 6: Proportion of Settled Cases by Settlement Dollar Range ............................... 5

Figure 7: Median and Average Plaintiff-Style Damages ................................................ 6

Figure 8: Median Settlement as a Percentage of Plaintiff-Style Damages by Damages Ranges ... 7

Figure 9: Median and Average Statutory Damages ......................................................... 8

Figure 10: Median Settlement Amount and Settlement as a Percentage of Statutory Damages ... 9

Figure 11: Percentage of Settled Cases Involving Accounting Allegations .................... 10

Figure 12: Median Settlement Amount for Cases with an Accompanying Derivative Action ... 11

Figure 13: Median Statistics by Institutional Investor Participation as Lead or Co-Lead Plaintiff ... 12

Figure 14: Median Settlement Amount by Institutional Investor Participation as
        Lead or Co-Lead Plaintiff ............................................................................... 12

Figure 15: Median Settlement Amount and Settlement as a Percentage of Plaintiff-Style Damages by
        Duration from Filing Date to Settlement Hearing Date ............................... 13

Figure 16: Median Settlement Amount and Stage of Litigation at Time of Settlement ... 14

Figure 17: Median Statistics for Cases that Settled Prior to and After MCC Filing ....... 14

Appendix 1: Settlements by Industry Sectors ................................................................. 18

Appendix 2: Distribution of Settlements Amounts ......................................................... 18

Appendix 3: Median and Average Settlements as a Percentage of Plaintiff-Style Damages ... 19

Appendix 4: Settlement Statistics by Federal Circuit Court ........................................... 19

Appendix 5: Median Settlement as a Percentage of Statutory Damages by Damages Ranges ... 20

Appendix 6: Median and Average Settlement as a Percentage of Statutory Damages ... 20

Appendix 7: Settlements by Nature of Claim ................................................................... 21

CORNERSTONE RESEARCH REVIEW & ANALYSIS



CORNERSTONE RESEARCH REVIEW & ANALYSIS

# 2025 Highlights

While the number of securities class action settlements declined 16% from 2024, the median settlement amount grew by 20%, driven by an increase in settlement sizes for cases with only Securities Act of 1933 ('33 Act) claims.

In 2025, there were 74 securities class action settlements totaling $3.0 billion, compared to 88 settlements totaling $3.8 billion in 2024. (page 3)

The median settlement amount of $17.3 million was the highest since 1997. For cases with only '33 Act claims, the median settlement amount more than tripled year-over-year to a historic high of $32.5 million. Excluding cases with only '33 Act claims, the median settlement amount increased 11% from 2024 to $16.0 million. (page 5)

The average settlement amount ($40.6 million) decreased 7% from 2024, which reflects in part mega settlements (of $100 million or greater) that were smaller compared to those in recent years. (page 5)

Median plaintiff-style damages for cases with Section 10(b) claims[1] were flat year-over-year.[2] (page 6)

Median statutory damages for cases with only '33 Act claims declined 19%. (page 8)

Defendant firms involved in 2025 settlements were 9% smaller, as measured by median total assets, reflecting an eight-year low. (page 6)

The median "time to settle" (duration of case from filing to settlement hearing) of 3.5 years continues to be historically elevated, in line with the median in 2023–2024 (3.4 years). (page 13)

Health Care and Financials/Real Estate have historically been the industry sectors with the largest share of settlement dollars. However, in 2025, settlement dollars for these sectors declined to 10-year lows. (page 4)

**Figure 1: Settlement Statistics**
(Dollars in millions)

|  | 2016–2024 | 2024 | 2025 |
|---|---|---|---|
| Number of Settlements | 752 | 88 | 74 |
| Total Amount | $38,135.6 | $3,833.8 | $3,006.5 |
| Minimum | $0.4 | $0.6 | $0.3 |
| Median | $12.1 | $14.4 | $17.3 |
| Average | $50.7 | $43.6 | $40.6 |
| Maximum | $3,849.7 | $503.3 | $433.5 |

Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented.

# Author Commentary

## FINDINGS

Securities class action settlement activity declined in 2025 as measured by the 16% drop in the number of settled cases. Aggregate settlement dollars were also lower, reflecting in part mega settlements that were significantly smaller compared to prior years.

The median settlement amount, however, reached a historic high, even though median plaintiff-style damages—a proxy for the amount of potential investor losses that plaintiffs may claim in a securities class action with Rule 10b-5 claims—remained essentially unchanged from 2024.

The higher median settlement amount in 2025 is attributable in part to larger settlements for cases with only '33 Act claims. The median settlement amount for cases with only '33 Act claims surged to a historic high of $32.5 million in 2025, despite a decrease in median statutory damages. One factor that may explain these larger settlements is that these cases may have been unusually complex; the median number of docket entries—a proxy for the time and effort expended by the litigants and/or case complexity—was at an all-time high.

**Eric Tam**, Principal at Cornerstone Research

*"The shift of settlement dollars from the Health Care and Financials/Real Estate sectors to the Communication Services/Information Technology sectors in recent years may reflect changes in case filing trends."*

Only nine settlements (12%) were related to special purpose acquisition companies (SPACs), down from 17 such settlements (19%) in 2024.

**Laarni T. Bulan**, Vice President at Cornerstone Research

*"Median plaintiff-style damages stayed flat as the median size (measured by total assets) of issuer defendants declined 9% from 2024. In contrast, the median settlement amount reached the highest level since 1997, due in part to larger '33 Act only settlements."*

For the second year in a row, the median ($11.0 million) and average ($31.4 million) settlement amounts for SPAC cases were substantially smaller than the corresponding amounts for non-SPAC cases. The smaller number of SPAC-related settlements may also have contributed to the higher median settlement amount in 2025.

Longer-term settlement trends are potentially evolving across industry sectors. While the Health Care and Financials/Real Estate sectors had the largest aggregate settlement dollars and number of mega settlements during 2016–2020, the Communication Services/Information Technology sectors took the lead in the most recent five-year period.

## LOOKING AHEAD

The lower number of settled cases compared to prior years may continue given the relatively stable number of securities case filings in the first half of this decade. In addition, COVID-19-related cases, while comprising a large percentage of filings in 2022–2023, have been dismissed at a high rate.[3] On the other hand, several large settlements pending court approval may boost aggregate settlement dollars in 2026.

# Total Settlement Dollars

CORNERSTONE RESEARCH REVIEW & ANALYSIS

In 2025, total settlement dollars declined by 22%, consistent with a 16% decline in the number of settled cases from the prior year.

Mega settlements (of $100 million or greater) that were smaller compared to those in recent years also contributed to the lower total settlement dollars. While the number of mega settlements (eight) increased by one from 2024, the average mega settlement in 2025 was $200 million, down 33% from the prior year.

## −22%

Change in total settlement dollars from 2024 to 2025

## −16%

Change in number of settled cases from 2024 to 2025

### Figure 2: Total Settlement Dollars
2016–2025
(Dollars in billions)



| | 2016 N=84 | 2017 N=78 | 2018 N=78 | 2019 N=74 | 2020 N=76 | 2021 N=86 | 2022 N=105 | 2023 N=83 | 2024 N=88 | 2025 N=74 |
|---|---|---|---|---|---|---|---|---|---|---|
| | $7.6 | $1.9 | $6.5 | $2.6 | $5.2 | $2.1 | $4.2 | $4.2 | $3.8 | $3.0 |

Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. "N" refers to the number of settlements.

### Figure 3: Mega Settlements
(Dollars in millions)

| Year | Number of Mega Settlements | Number of Mega Settlements as a Percentage of All Settlements | Total Mega Settlement Dollars as a Percentage of All Settlement Dollars | Median Mega Settlement | Average Mega Settlement |
|---|---|---|---|---|---|
| 2016–2024 | 56 | 7% | 65% | $214 | $441 |
| 2024 | 7 | 8% | 54% | $205 | $298 |
| 2025 | 8 | 11% | 53% | $144 | $200 |

Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. Mega settlements are defined as total settlement funds of $100 million or greater before adjusting for inflation.

# Industry Sectors

CORNERSTONE RESEARCH REVIEW & ANALYSIS

Consistent with case filing trends, Health Care and Financials/Real Estate represent the industry sectors with the largest share of settlement dollars over the last 10 years (2016–2025).[4] However, total settlement dollars in the Health Care and Financials/Real Estate sectors in 2025 declined by 56% and 37%, respectively, year-over-year and reached their lowest levels in the past 10 years.

For the fourth time in the past five years, settlement dollars in the Communication Services/Information Technology sectors were greater than any other industry sector.

See Appendix 1 for additional analysis of settlements by industry sectors.

**Figure 4: Total Settlement Dollars by Year and Industry Sectors**
2016–2025
(Dollars in Millions)

| Year | Communication Services/ Information Technology | Consumer Discretionary | Consumer Staples | Energy/ Materials | Financials/ Real Estate | Health Care | Industrials | Utilities |
|---|---|---|---|---|---|---|---|---|
| 2016 | $239 | $712 | $63 | $422 | $3,192 | $2,903 | $29 | $2 |
| 2017 | $134 | $206 | $4 | $429 | $434 | $614 | $106 | $4 |
| 2018 | $572 | $246 | $54 | $3,863 | $1,129 | $437 | $117 | $81 |
| 2019 | $135 | $802 | $247 | $611 | $167 | $504 | $164 | $0 |
| 2020 | $609 | $469 | $77 | $112 | $1,432 | $1,940 | $333 | $240 |
| 2021 | $715 | $32 | $65 | $164 | $212 | $574 | $229 | $120 |
| 2022 | $1,318 | $621 | $259 | $175 | $188 | $1,169 | $466 | $7 |
| 2023 | $453 | $278 | $504 | $202 | $1,663 | $735 | $134 | $183 |
| 2024 | $1,281 | $570 | $225 | $224 | $164 | $853 | $517 | $0 |
| 2025 | $705 | $664 | $121 | $502 | $104 | $377 | $511 | $23 |
| 2016–2025 | $6,162 | $4,599 | $1,621 | $6,703 | $8,683 | $10,107 | $2,607 | $661 |

| $0–$249 | $250–$749 | $750–$1,499 | $1,500+ |
|---|---|---|---|

Note: Industry sectors are based on the Global Industry Classification Standard (GICS). Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented.

**Figure 5: Number of Settlements by Year and Industry Sectors**
2016–2025

| Year | Communication Services/ Information Technology | Consumer Discretionary | Consumer Staples | Energy/ Materials | Financials/ Real Estate | Health Care | Industrials | Utilities |
|---|---|---|---|---|---|---|---|---|
| 2016 | 18 | 12 | 1 | 11 | 10 | 26 | 5 | 1 |
| 2017 | 16 | 10 | 2 | 10 | 14 | 14 | 11 | 1 |
| 2018 | 23 | 8 | 3 | 2 | 8 | 24 | 8 | 2 |
| 2019 | 10 | 13 | 4 | 5 | 10 | 22 | 10 | 0 |
| 2020 | 14 | 10 | 4 | 6 | 7 | 24 | 10 | 1 |
| 2021 | 23 | 5 | 3 | 10 | 8 | 26 | 8 | 3 |
| 2022 | 18 | 16 | 5 | 7 | 10 | 30 | 18 | 1 |
| 2023 | 16 | 8 | 4 | 10 | 12 | 22 | 10 | 1 |
| 2024 | 19 | 9 | 5 | 11 | 12 | 21 | 11 | 0 |
| 2025 | 19 | 10 | 4 | 6 | 7 | 19 | 8 | 1 |
| 2016–2025 | 176 | 101 | 35 | 78 | 98 | 228 | 99 | 11 |

| 0–4 | 5–14 | 15–24 | 25+ |
|---|---|---|---|

Note: Industry sectors are based on the Global Industry Classification Standard (GICS).

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Settlement Size

The median settlement amount in 2025 was $17.3 million, a 20% increase from 2024 and the highest since 1997.

The average settlement amount of $40.6 million declined 7% from 2024, reflecting in part the smaller mega settlements in 2025.

The proportion of settlements involving issuers that had been delisted from a major exchange and/or declared bankruptcy prior to settlement increased from 15% in 2024 to 23% in 2025. The number of settled cases related to SPACs declined nearly 50% from 2024 to nine such

*Settlements in the $10 million to $50 million range accounted for 43% of settlements in 2025.*

cases in 2025. The median and average settlement amounts for these cases were $11.0 million and $31.4 million, respectively, compared to $19.5 million and $41.9 million for non-SPAC cases in 2025.

See Appendix 2 for a distribution of settlement amounts.

**Figure 6: Proportion of Settled Cases by Settlement Dollar Range**
2025
(Dollars in millions)



Note: Percentages indicate the proportion of settled cases in the given settlement dollar range. Percentages may not sum to 100% due to rounding.

CORNERSTONE RESEARCH REVIEW & ANALYSIS

# Type of Claim and Potential Investor Losses

## RULE 10B-5 CLAIMS AND PLAINTIFF-STYLE DAMAGES

For cases with Rule 10b-5 claims, Cornerstone Research's analysis finds a proxy for potential investor losses—referred to here as plaintiff-style damages—to be the most important determinant of settlement outcomes based on regression analysis. However, plaintiff-style damages do not represent actual economic losses borne by shareholders. Determining any such economic losses for a given case requires more in-depth analysis.

## −0.6%

Change in median plaintiff-style damages from 2024 to 2025

## $16.0 million

Median settlement for cases with Rule 10b-5 claims in 2025

In 2025, median plaintiff-style damages were essentially unchanged year-over-year and remained at the elevated levels observed in recent years.

Median total assets of issuer defendants decreased 9% from 2024 to an eight-year low.

**Figure 7: Median and Average Plaintiff-Style Damages**
2016–2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)



Note: Plaintiff-style damages are adjusted for inflation based on class period end dates and are estimated for common stock/ADR/ADS only; 2025 dollar equivalent figures are presented. Plaintiff-style damages are estimated for cases that allege a claim under Rule 10b-5 (whether alone or in addition to other claims).

Type of Claim and Potential Investor Losses (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

Larger cases, as measured by plaintiff-style damages, typically settle for a smaller percentage of those damages.

In 2025, nearly 40% of settlements were in the Ninth Circuit, the highest percentage since 1999. The median settlement as a percentage of plaintiff-style damages (4.7%) was the lowest ever observed for Ninth Circuit settlements.

For the second year in a row, the Second Circuit comprised 23% of settlements in 2025, below the prior nine-year average (2016–2024) of 28%. The median settlement as a percentage of plaintiff-style damages (11.9%) was the highest observed in the Second Circuit since 2019.

The median settlement as a percentage of plaintiff-style damages for issuers in the

*In 2025, the median settlement as a percentage of plaintiff-style damages was 6.5%—a decrease from 2024 (7.0%) and lower than the 2016–2024 median (7.3%).*

Financials/Real Estate industry sector was 9.9% over the past 10 years, higher than the median of 6.8% for issuers in all other industry sectors.

See Appendix 3 and Appendix 4 for more information on settlements as a percentage of plaintiff-style damages and settlement statistics by federal circuit court, respectively.

**Figure 8: Median Settlement as a Percentage of Plaintiff-Style Damages by Damages Ranges**
2016–2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)



Note: Plaintiff-style damages are adjusted for inflation based on class period end dates and are estimated for common stock/ADR/ADS only; 2025 dollar equivalent figures are presented. Plaintiff-style damages are estimated for cases that allege a claim under Rule 10b-5 (whether alone or in addition to other claims).

Type of Claim and Potential Investor Losses (continued)

## '33 ACT CLAIMS AND STATUTORY DAMAGES

For cases with only '33 Act claims—those involving Section 11 and/or Section 12(a)(2) claims and no Rule 10b-5 claims—potential investor losses (referred to here as "statutory damages") are estimated based on the difference between the statutory purchase and sales prices for those shares that are assumed to be traceable to the registration statement at issue.[5]

There were nine settlements with only '33 Act claims in 2025, of which six cases involved an initial public offering (IPO).

### −19%

Change in median statutory damages from 2024 to 2025

### $32.5 million

Median settlement for cases with only '33 Act claims in 2025

The median settlement amount for cases with only '33 Act claims ($32.5 million) reached an all-time high in 2025 and was 3.1 times the median for the prior nine years.

**Figure 9: Median and Average Statutory Damages**
2016–2025, Settlements with Only '33 Act Claims
(Dollars in millions)



Note: Statutory damages are adjusted for inflation; 2025 dollar equivalent figures are presented. This analysis excludes cases that allege Rule 10b-5 claims.

Type of Claim and Potential Investor Losses (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

In 2025, the median settlement as a percentage of statutory damages (12.9%) reached its highest level since 2018.

Similarly, the median number of docket entries for cases with only '33 Act claims reached an all-time high in 2025. This is consistent with the historically high median settlement and the increase in median settlement as a percentage of statutory damages for these cases. Cornerstone Research's analysis finds that the number of docket entries—a proxy for the time and effort expended by the litigants and/or case complexity—is positively associated with settlement amounts.

See Appendix 5 and Appendix 6 for additional information on statutory damages and settlement as a percentage of statutory damages, respectively.

# 12.9%

Median settlement as a percentage of statutory damages in 2025

# 206

Median number of docket entries for cases with only '33 Act claims in 2025

**Figure 10: Median Settlement Amount and Settlement as a Percentage of Statutory Damages**
2016–2025, Settlements with Only '33 Act Claims
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. This analysis excludes cases that allege Rule 10b-5 claims.

# Analysis of Settlement Characteristics

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## GAAP VIOLATIONS

This analysis examines allegations of GAAP violations in settlements of securities class actions with Rule 10b-5 claims, including two subcategories of GAAP violations—financial restatements and accounting irregularities.[6]

The percentages of settled cases involving GAAP violations generally and financial restatements specifically have declined substantially in the past five years (2021–2025) compared to the prior five years (2016–2020).

While cases with accounting irregularities comprised only a small proportion of total settled cases between 2016 and 2025, the median settlement amount for cases with Rule 10b-5 claims involving accounting irregularities was $32 million, significantly higher than the $13 million median for cases without such allegations.

For additional details regarding securities class action settlements that involve accounting allegations, see Cornerstone Research's forthcoming annual report on *Accounting Class Action Filings and Settlements*.[7]

---

Figure 11: Percentage of Settled Cases Involving Accounting Allegations

| | 2016–2020 | 2021–2025 |
|---|---|---|
| GAAP Violations | 50% | 37% |
| Financial Restatements | 24% | 14% |
| Accounting Irregularities | 3% | 1% |
| Auditor Codefendant | 7% | 3% |

Note: This analysis is limited to cases that allege Rule 10b-5 claims (whether alone or in addition to other claims).

Analysis of Settlement Characteristics (continued)

## DERIVATIVE ACTIONS

Securities class actions often involve an accompanying (parallel) derivative action with similar claims, and all else being equal, such cases have historically settled for higher amounts than securities class actions without an accompanying derivative matter.[8]

In 2025, the median settlement for cases with an accompanying derivative action declined by 16% from the 2024 median.

For more information on settlement outcomes of the accompanying derivative actions, see Cornerstone Research's *Parallel Derivative Action Settlement Outcomes*.[9]

### 49%

Percentage of 2025 cases involving an accompanying derivative action

### $16.0 million

Median settlement for 2025 cases involving an accompanying derivative action

CORNERSTONE RESEARCH REVIEW & ANALYSIS

**Figure 12: Median Settlement Amount for Cases with an Accompanying Derivative Action**
2016–2025
(Dollars in millions)

| Year | With Accompanying Derivative Action | Without Accompanying Derivative Action | Percentage of Cases with Accompanying Derivative Action |
|---|---|---|---|
| 2016 | $16.1 | $11.4 | 41.7% |
| 2017 | $5.9 | $8.2 | 47.4% |
| 2018 | $23.8 | $7.7 | 51.3% |
| 2019 | $12.3 | $17.6 | 54.1% |
| 2020 | $19.3 | $10.6 | 53.9% |
| 2021 | $10.0 | $8.9 | 41.9% |
| 2022 | $15.5 | $12.1 | 44.8% |
| 2023 | $20.6 | $13.2 | 41.0% |
| 2024 | $19.1 | $10.4 | 52.3% |
| 2025 | $16.0 | $19.8 | 48.6% |
| 2016–2025 | $15.1 | $11.0 | 47.5% |

Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented.

Analysis of Settlement Characteristics (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

## INSTITUTIONAL INVESTORS

Institutional investors are often involved as lead or co-lead plaintiff in larger cases,[10] that is, cases with higher plaintiff-style damages and higher issuer defendant total assets.

In 2025, settlements involving an institutional investor as lead or co-lead plaintiff had median plaintiff-style damages and median total assets that were 4.1 times and 5.6 times higher, respectively, than the median values for cases without an institutional investor in that role.

Similarly, the median settlement amount for cases with an institutional investor lead or co-lead plaintiff was 4.8 times higher than for cases without such participation.

### Figure 13: Median Statistics by Institutional Investor Participation as Lead or Co-Lead Plaintiff
2025
(Dollars in millions)

| | With an Institutional Investor | Without an Institutional Investor |
|---|---|---|
| Settlement Amount | $38 | $8 |
| Plaintiff-Style Damages | $669 | $164 |
| Settlement Amount as a Percentage of Plaintiff-Style Damages | 6.6% | 6.3% |
| Issuer Defendant Total Assets | $3,303 | $594 |
| Percentage of Settlements | 45% | 55% |

Note: Plaintiff-style damages are estimated for cases that allege Rule 10b-5 claims (whether alone or in addition to other claims) and are adjusted for inflation based on class period end dates; 2025 dollar equivalent figures are presented.

### Figure 14: Median Settlement Amount by Institutional Investor Participation as Lead or Co-Lead Plaintiff
2016–2025
(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented.

# Time to Settlement and Case Complexity

The median duration from case filing to settlement hearing was 3.5 years, which increased nearly 10% from the median time to settle in 2024 (3.2 years) and was slightly below the peak over the last decade observed in 2023 (3.7 years). The median time to settle in 2025 was the second-longest duration in the last decade.

This finding is consistent with heightened case activity among 2025 settled cases, as measured by the number of docket entries—a proxy for the time and effort expended by the litigants and/or case complexity. In 2025, the median number of docket entries was at its highest level since 2010.

## 3.5 years

2025 median time to settlement

## 150

Median number of docket entries for 2025 cases

**Figure 15: Median Settlement Amount and Settlement as a Percentage of Plaintiff-Style Damages by Duration from Filing Date to Settlement Hearing Date**
2016–2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. This analysis is limited to cases that allege Rule 10b-5 claims (whether alone or in addition to other claims).

# Case Stage at the Time of Settlement

CORNERSTONE RESEARCH REVIEW & ANALYSIS

In 2025, 8% of cases settled prior to the filing of a motion to dismiss (MTD), up from 2% in 2024 and equal to the 2016–2024 average.

Moreover, 54% of settlements occurred prior to the filing of a motion for class certification (MCC), up from 48% in 2024 and equal to the 2016–2024 average. Cases that settled after the filing of a MCC were twice as likely to have an

institutional investor serving as lead or co-lead plaintiff than cases that settled prior to the filing of a MCC.

In the 10-year period from 2016 to 2025, median plaintiff-style damages for cases that settled after the filing of a motion for summary judgment (MSJ) was over six times the median for cases that settled before a MSJ filing.

**Figure 16: Median Settlement Amount and Stage of Litigation at Time of Settlement**
2016–2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)



Note: "N" refers to the number of cases. Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. MTD refers to "motion to dismiss," MCC refers to "motion for class certification," and MSJ refers to "motion for summary judgment." This analysis is limited to cases that allege Rule 10b-5 claims (whether alone or in addition to other claims).

**Figure 17: Median Statistics for Cases that Settled Prior to and After MCC Filing**
2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)

|  | Settled Prior to MCC Filing | Settled After MCC Filing |
|---|---|---|
| Settlement Amount | $6 | $38 |
| Plaintiff-Style Damages | $94 | $490 |
| Settlement Amount as a Percentage of Plaintiff-Style Damages | 5.3% | 7.1% |
| Total Assets | $599 | $6,069 |
| Percentage of Settlements | 58% | 42% |

Note: MCC refers to "motion for class certification." Plaintiff-style damages are estimated for cases that allege Rule 10b-5 claims (whether alone or in addition to other claims) and are adjusted for inflation based on class period end dates; 2025 dollar equivalent figures are presented.

# Cornerstone Research's Settlement Analysis

This research examines the relationship between settlement outcomes and certain securities case characteristics. Regression analysis is employed to better understand the factors that inform case settlements given the characteristics of a particular securities class action.

## DETERMINANTS OF SETTLEMENT OUTCOMES

Based on regression analysis, important determinants of settlement amounts include the following:

- Plaintiff-style damages
- The most recently reported total assets prior to the settlement hearing date for the defendant issuer
- Whether there were accounting irregularities
- Whether there were criminal charges against the issuer, officers, directors, or other defendants with allegations similar to those included in the underlying class action complaint
- Whether there was a derivative action with allegations similar to those included in the underlying class action complaint

- Whether, in addition to Rule 10b-5 claims, Section 11 claims were alleged and not dismissed prior to settlement
- Whether the issuer had been delisted from a major exchange and/or had declared bankruptcy
- Whether an institutional investor acted as lead or co-lead plaintiff
- Whether securities other than common stock/ADR/ADS were included in the alleged class

Cornerstone Research analyses show that, all else being equal, settlement amounts tended to be higher in cases involving larger plaintiff-style damages, greater issuer defendant total assets, or cases in which Section 11 claims were alleged in addition to Rule 10b-5 claims.

Settlement amounts also tended to be higher in cases that involved accounting irregularities, criminal charges, an accompanying derivative action, an institutional investor lead or co-lead plaintiff, or with securities in addition to common stock/ADR/ADS included in the alleged class.

Settlement amounts tended to be lower if the issuer had been delisted from a major exchange and/or had declared bankruptcy.

Collectively, the factors above explain approximately 75% of the variation in settlement outcomes.

# Research Sample

The database compiled for this report is limited to cases that allege Rule 10b-5, Section 11, and/or Section 12(a)(2) claims brought by purchasers of a corporation's common stock.

Cases with alleged classes of only bondholders, preferred stockholders, etc.; cases that allege fraudulent deflation in price; and mergers and acquisitions cases are excluded. These criteria are imposed to ensure data availability and to utilize a relatively homogeneous set of cases in terms of the nature of the allegations.

The database includes over 2,340 securities class actions filed after passage of the Reform Act (1995) and settled from 1996 through 2025. These securities class actions correspond to approximately $155.5 billion in total settlement dollars, adjusted for inflation and expressed in 2025 dollars. These settlements are identified based on a review of case activity collected by Securities Class Action Services LLC (SCAS).[11]

The designated settlement year, for purposes of this report, corresponds to the year in which the hearing to approve the settlement was held.[12] Cases involving multiple settlements are reflected in the year of the most recent partial settlement, provided certain conditions are met.[13]

In addition to SCAS, data sources include Bloomberg, the Center for Research in Security Prices (CRSP) at the University of Chicago Booth School of Business, LSEG Workspace, court filings and dockets, SEC registrant filings, SEC litigation releases and administrative proceedings, LexisNexis, Stanford Securities Litigation Analytics (SSLA), and public press.

# Endnotes

CORNERSTONE RESEARCH REVIEW & ANALYSIS

[1]   For purposes of the settlement research and modeling, this report utilizes a measure of potential investor losses that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends. This measure, "settlement model plaintiff-style damages" ("plaintiff-style damages" as referred to in this report), is estimated using a methodology that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment. For example, when estimating the number of shares eligible for damages, the plaintiff-style damages approach adjusts for short interest positions and shares estimated to be held by institutional investors throughout the entire class period.

[2]   Plaintiff-style damages are calculated for cases that settled in 2014 or later, and account for the U.S. Supreme Court's 2005 landmark decision in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336. Plaintiff-style damages are based on the stock-price movements associated with the alleged disclosure dates that are described in the settlement plan of allocation.

[3]   *Securities Class Action Filings—2025 Year in Review*, Cornerstone Research (2026).

[4]   *Securities Class Action Filings—2025 Year in Review*, Cornerstone Research (2026).

[5]   Statutory damages are estimated using an approach that more closely aligns with approaches used by plaintiffs in the current securities class action litigation environment. For example, when estimating the number of shares eligible for damages, the statutory damages approach adjusts for short interest positions. Statutory damages are calculated using data through the settlement hearing date.

[6]   The two subcategories of accounting issues analyzed in this report are (1) financial restatements—cases involving a restatement (or announcement of a restatement) of financial statements, and (2) accounting irregularities—cases in which the defendant has reported the occurrence of accounting irregularities (intentional misstatements or omissions) in its financial statements.

[7]   *Accounting Class Action Filings and Settlements—2025 Review and Analysis*, Cornerstone Research, forthcoming in spring 2026.

[8]   To be considered an accompanying (parallel) derivative action, the derivative action must have underlying allegations that are similar or related to the underlying allegations of the securities class action and either be active or settling at the same time as the securities class action.

[9]   *Parallel Derivative Action Settlements Update: August 2025*, Cornerstone Research (2025).

[10]  As discussed in prior reports, increasing institutional investor participation as lead plaintiff in securities litigation was a focus of the Private Securities Litigation Reform Act of 1995 (Reform Act). In the years following passage of the Reform Act, institutional investor involvement as lead plaintiff did increase, particularly in cases with higher plaintiff-style damages.

[11]  Available on a subscription basis. For further details, see https://www.issgovernance.com/securities-class-action-services/.

[12]  Movements of partial settlements between years can cause settlement amounts reported for prior years to differ from those presented in earlier reports.

[13]  This categorization is based on the timing of the settlement hearing date. If a new partial settlement equals or exceeds 50% of the then-current settlement fund amount, the entirety of the settlement amount is recategorized to reflect the settlement hearing date of the most recent partial settlement. If a subsequent partial settlement is less than 50% of the then-current total, the partial settlement is added to the total settlement amount and the settlement hearing date is left unchanged.

# Appendices

CORNERSTONE RESEARCH REVIEW & ANALYSIS

**Appendix 1: Settlements by Industry Sectors**
2016–2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)

| Industry | Number of Settlements | Median Settlement | Median Plaintiff-Style Damages | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|---|
| Consumer Services/ Information Technology | 142 | $10.1 | $242.4 | 6.4% |
| Consumer Discretionary | 92 | $14.1 | $278.0 | 6.9% |
| Consumer Staples | 28 | $14.9 | $361.0 | 6.0% |
| Energy/Materials | 70 | $17.3 | $281.1 | 8.4% |
| Financials/Real Estate | 90 | $19.3 | $252.5 | 9.9% |
| Health Care | 209 | $12.1 | $226.7 | 6.7% |
| Industrials | 87 | $8.7 | $180.6 | 6.6% |
| Utilities | 10 | $15.4 | $147.4 | 9.4% |

Note: Settlement dollars and plaintiff-style damages are adjusted for inflation; 2025 dollar equivalent figures are presented. This analysis is limited to cases that allege Rule 10b-5 claims (whether alone or in addition to other claims). Industry sectors are based on the Global Industry Classification Standard (GICS).

**Appendix 2: Distribution of Settlements Amounts**
2016–2025
(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. Percentages may not sum to 100% due to rounding.

Appendices (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

### Appendix 3: Median and Average Settlements as a Percentage of Plaintiff-Style Damages
2016–2025, Settlements with Rule 10b-5 Claims



Note: Plaintiff-style damages are calculated for cases that allege Rule 10b-5 claims (whether alone or in addition to other claims).

### Appendix 4: Settlement Statistics by Federal Circuit Court
2016–2025, Settlements with Rule 10b-5 Claims
(Dollars in millions)

| Circuit | Number of Settlements | Median Settlement | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|
| First | 21 | $23.2 | 4.1% |
| Second | 203 | $9.8 | 7.7% |
| Third | 90 | $9.2 | 7.0% |
| Fourth | 24 | $30.3 | 4.6% |
| Fifth | 40 | $13.8 | 5.6% |
| Sixth | 32 | $18.1 | 9.7% |
| Seventh | 38 | $20.1 | 6.7% |
| Eighth | 12 | $51.1 | 5.6% |
| Ninth | 205 | $11.0 | 7.0% |
| Tenth | 23 | $20.0 | 10.1% |
| Eleventh | 36 | $12.7 | 7.8% |
| DC | 4 | $29.5 | 4.8% |

Note: Settlement dollars are adjusted for inflation; 2025 dollar equivalent figures are presented. This analysis is limited to cases that allege Rule 10b-5 claims (whether alone or in addition to other claims).

Appendices (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

### Appendix 5: Median Settlement as a Percentage of Statutory Damages by Damages Ranges
2016–2025, Settlements with Only '33 Act Claims
(Dollars in millions)



Note: "N" refers to the number of cases. Statutory damages are adjusted for inflation; 2025 dollar equivalent figures are presented. This analysis excludes cases that allege Rule 10b-5 claims.

### Appendix 6: Median and Average Settlement as a Percentage of Statutory Damages
2016–2025, Settlements with Only '33 Act Claims



Note: This analysis excludes cases that allege Rule 10b-5 claims.

Appendices (continued)

CORNERSTONE RESEARCH REVIEW & ANALYSIS

### Appendix 7: Settlements by Nature of Claim
2016–2025

| | Number of Settlements | Median Settlement | Median Statutory Damages | Median Settlement as a Percentage of Statutory Damages |
|---|---|---|---|---|
| '33 Act Only | 98 | $10.8 | $155.9 | 7.8% |

| | Number of Settlements | Median Settlement | Median Plaintiff-Style Damages | Median Settlement as a Percentage of Plaintiff-Style Damages |
|---|---|---|---|---|
| Both Rule 10b-5 and '33 Act Claims | 123 | $16.7 | $244.7 | 10.8% |
| Rule 10b-5 Only | 605 | $12.3 | $236.3 | 6.8% |

Note: Settlement dollars and damages are adjusted for inflation; 2025 dollar equivalent figures are presented.

# About the Authors

### Laarni T. Bulan
*Vice President, Cornerstone Research*

Laarni Bulan has over 14 years of experience consulting on complex litigation involving economic and financial issues. Dr. Bulan specializes in securities, mergers and acquisitions and other corporate transactions, firm valuation, risk management, executive compensation, and corporate governance matters.

Dr. Bulan serves as co-head of the firm's corporate governance practice. She is a member of the Advisory Board of the Institute for Law and Economics, University of Pennsylvania Carey Law School.

Dr. Bulan has published numerous articles in peer-reviewed journals, including *Financial Management*, the *Journal of Banking and Finance*, the *Journal of Economics and Business*, and the *Journal of Urban Economics*. Her research covers dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan held a joint appointment at Brandeis University, where she served as an assistant professor of finance in the International Business School and also in the economics department.

### Eric Tam
*Principal, Cornerstone Research*

Eric Tam specializes in securities litigation. Mr. Tam has more than 20 years of experience consulting to clients and addressing financial economics issues and class actions in federal and state courts, including the Delaware Court of Chancery. His experience spans all stages of the litigation process, including exposure analysis, class certification, expert support, summary judgment filings, mediation and settlement analysis, trial preparation, and regulatory proceedings.

Mr. Tam has extensive expertise with securities litigation involving alleged misrepresentations under Section 10(b) of the Exchange Act and Sections 11 and 12 of the Securities Act. He also addresses allegations of market manipulation under Sections 9 and 10(b) of the Exchange Act and claims under Section 14(a) of the Exchange Act.

Mr. Tam has analyzed class certification issues (market efficiency, price impact, and evaluation of damages methodologies in the context of *Comcast* standards), as well as loss causation, damages, and materiality in numerous securities class actions.

The views expressed herein are solely those of the authors and do not necessarily represent the views of Cornerstone Research.

# CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

The authors request that you reference Cornerstone Research in any reprint of the information or figures included in this report.

Please direct any questions to:

**Laarni Bulan**
617-927-3093
lbulan@cornerstone.com

**Eric Tam**
650-470-7071
etam@cornerstone.com

**Cornerstone Research**

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. With a reputation for high quality and effectiveness, Cornerstone Research has consistently delivered rigorous, state-of-the-art analysis since 1989. The firm has more than 1,000 professionals in nine offices across the United States, UK, and EU.

www.cornerstone.com

© 2026 by Cornerstone Research

All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc. C and design is a registered trademark of Cornerstone Research, Inc.