**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SOLAREDGE TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:23-cv-09748-GHW |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | |

**PLAINTIFFS' AMENDED MEMORANDUM OF LAW IN SUPPORT OF AMENDED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

Page(s)

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  NATURE OF THE ACTION ..................................................................................... 3

    A.  Procedural History of the Litigation ............................................................. 3

        1.  The Initial Complaint and the Lead Plaintiff Appointment Process ........... 3

        2.  Lead Counsel's Investigation and the Amended Complaint ...................... 3

        3.  Defendants' Motion to Dismiss the Amended Complaint ......................... 4

        4.  Lead Counsel's Further Investigation and Second Amended Complaint ... 5

        5.  Request for Letters Rogatory ................................................................. 6

        6.  Class Certification ................................................................................ 6

        7.  Mediation ............................................................................................ 6

    B.  Summary of Key Terms of the Proposed Settlement ..................................... 7

        1.  Relief to Settlement Class Members and Release of Claims ..................... 7

        2.  Class Notice and Settlement Administration ........................................... 7

            a)  Notice ......................................................................................... 7

            b)  Settlement Administration ............................................................ 8

        3.  Papers in Support of the Settlement, Award of Attorneys' Fees and
            Expenses, and Plaintiffs' Compensatory Awards ..................................... 8

        4.  Objections ............................................................................................ 9

        5.  Requests for Exclusion ......................................................................... 9

        6.  Termination of the Settlement ............................................................... 9

        7.  No Admission of Liability .................................................................... 10

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) .................. 10

IV.  ARGUMENT ........................................................................................................ 11

    A.  The Settlement Is Fair, Reasonable, and Adequate .................................... 11

        1.  Plaintiffs and Lead Counsel Adequately Represented the Class .............. 11

        2.  The Settlement Is the Result of Arm's Length Negotiations .................... 12

        3.  The Settlement Is a Highly Favorable Result for the Class ...................... 13

            a)  Complexity, Expense and Duration of Litigation .......................... 13

            b)  Establishing Liability and Damages ............................................. 14

            c)  Risks of Maintaining Class Action Status ..................................... 16

d)     Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation ................................................. 16

4.     Rule 23(e)(2)(C)(ii)-(iv) .............................................................. 18

5.     The Plan of Allocation Treats All Settlement Class Members Equitably Relative to Each Other .............................................................. 20

6.     The Remaining *Grinnell* Factors Support Preliminary Approval ............. 21

B.     Certification of the Settlement Class for Settlement Purposes Is Appropriate ..... 21

1.     The Settlement Class Satisfies the Requirements of Rule 23(a) ............... 22

a)     Numerosity ................................................................. 22

b)     Commonality ................................................................ 22

c)     Typicality ................................................................. 23

d)     Adequacy .................................................................. 23

2.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3) .......... 24

3.     Lead Counsel Should Be Appointed Counsel for the Settlement Class ... 25

4.     The Court Should Approve the Proposed Form and Method of Notice ... 26

V.     PROPOSED SCHEDULE OF EVENTS .......................................................... 28

VI.     CONCLUSION ................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................22, 24

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013).........................................................................................................23

*Cent. States SE & SW Areas Health and Welf. Fund v. Merck-Medco Mngd. Care*,
   504 F.3d 229 (2d Cir. 2007).................................................................................................23

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................................16

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................................20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...........................................................................11, 17, 20, 21

*Consol. Edison, Inc. v. Ne. Utilities*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004)...................................................................................26

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...................................................................................................13

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)..................................................................................................21

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..............................................................................................................20

*Fishoff v. Coty Inc.*,
   2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................................23, 27

*In re "Agent Orange" Prods. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)................................16

*In re AIG*,
   689 F.3d at 242 ...............................................................................................................24, 25

iii

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................21

*In re Blue Apron Holdings, Inc. Securities Litigation*,
   No. 1:17-cv-04846-NGG-PK (E.D.N.Y.)....................................................................26

*In Re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
   1:17-CV-1580 (S.D.N.Y.) (Schofield, J.), ECF No. 446............................................19

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................................................17

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................................20

*In re EVCI Career Colls.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020)........................12

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)...........................................................13, 14, 16

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................20

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................................................................21

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) .........................................................................23, 25

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................12

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020) .......................................................11, 12, 23

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019).........................24

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................................22

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ...............................................................................22

*In re SolarEdge Techs., Inc. Sec. Litig.*,
  2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) ...................................................................4, 5

*In re SolarEdge Techs., Inc. Sec. Litig. ("SEDG II")*,
  2025 WL 1031154 (S.D.N.Y. Apr. 6, 2025)..........................................................................5

*In re Tufin Software Tech. Ltd. Sec. Litig.*,
  No. 1:20-cv-5656-GHW (S.D.N.Y. Aug. 10, 2023)...............................................................19

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...................................................................................23

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016)....................................24

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...............................15

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)..................................................................17, 19

*Lillien v. Olaplex Holdings, Inc.*,
  2025 WL 3050229 (C.D. Cal. Aug. 8, 2025)........................................................................13

*Lokman v. Azure Power Global Ltd, et al*,
  1:22-cv-07432-GHW (S.D.N.Y. Apr. 30, 2023), ECF No. 123 ............................................18

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................19

*Menaldi v. Och-Ziff Capital Management Group LLC et al.*,
  No. 1:14-cv-03251-JPO (S.D.N.Y.)......................................................................................26

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .........................................................................................11, 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)............................................................................................................28

*Phillips Petrol. Co. v. Shutts*,
  472 U.S. 797 (1985).............................................................................................................25

*Pirnik v. Fiat Chrysler Automobiles N.V. et al.*,
  No. 1:15-cv-07199-JMF (S.D.N.Y)......................................................................................25

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015).................................................................................................24

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................................26

*Shen v. SolarEdge Technologies, Inc., et al.*,
   No. 1:23-cv-09748-GHW (S.D.N.Y.), ECF No. 1 ....................................................................3

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ............................................................................................26

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982).....................................................................................................21

**Statutes**

15 U.S.C. § 78u-4(a) .......................................................................................................19, 26, 27

Class Action Fairness Act, 28 U.S.C. § 1715 .................................................................................8

Private Securities Litigation Reform Act of 1995 ........................................................................26

PSLRA .....................................................................................................................................26, 28

Securities Exchange of 1934 ..........................................................................................................4

**Rules**

Fed. R. Civ. P. 23....................................................................................................... *passim*

Local Civil Rule 7.1(c) .................................................................................................................1

**Other Authorities**

Laarni Bulan and Eric Tam, *2025 Review & Analysis, Securities Class Action
   Settlements* (Cornerstone Research 2025 (Fig. 8)) .................................................................17

United States Constitution Due Process Clause..........................................................................26

Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd. (the "Amitim"), and Hachshara Insurance Company Ltd. ("Hachshara"), and Named Plaintiff Javier Alcides Cascallar ("Cascallar," and, together with Amitim and Hachshara, "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this amended memorandum in support of their amended unopposed motion seeking: (i) preliminary approval of the proposed Settlement presented in the Stipulation of Settlement dated April 21, 2026 (the "Stipulation")[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; and (iv) a date for a Settlement Fairness Hearing (the "Settlement Hearing") and deadlines for the mailing and publication of notice to the Settlement Class, for Settlement Class Member objections and opt-out notices, for the filing of Plaintiffs' motion for Final Approval, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and compensatory awards to Plaintiffs.

## I.    PRELIMINARY STATEMENT

Plaintiffs have achieved a highly favorable resolution of this litigation. The proposed Settlement will resolve claims against Defendants[2] in exchange for a cash payment of $55,000,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately 5.7% to 9.6% of the maximum recoverable damages which is above the median

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as in the Stipulation, attached as Ex. 1 to the Amended Declaration of Brian Calandra ("Am. Calandra Decl."), filed concurrently herewith.

[2] Defendants are SolarEdge Technologies, Inc. ("SolarEdge") and Zvi Lando, Ronen Faier, Lior Danziger, and J.B. Lowe (together, the "Individual Defendants," and collectively with SolarEdge, the "Defendants"). The "Parties" are Plaintiffs and Defendants.

recovery of 4.3% of damages in similarly sized securities class action settlements between 2016 and 2024, the median recovery of 6.5% of damages in similarly sized securities class action settlements in 2025, and recoveries in general that courts regularly approve. This evidence shows that the Settlement is substantively fair to investors.

The Settlement is also procedurally fair. By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and defenses. *See* Am. Calandra Decl. ¶24. Before reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed an 80-page Amended Complaint (ECF No. 55); (iii) successfully defeated in part Defendants' motion to dismiss the Amended Complaint (ECF Nos. 70); (iv) drafted and filed an 86-page Second Amended Complaint (ECF No. 72); (v) successfully defeated in part Defendants' motion to dismiss the Second Amended Complaint, substantially expanding the scope of the Action (ECF No. 81); (vi) drafted and served party discovery requests and responses; (vii) drafted discovery requests to be served on overseas third-parties and fully briefed a contested motion seeking permission serve those requests through the Hague Convention (ECF Nos. 121-37; (viii) fully briefed a motion for class certification (ECF Nos. 109-12, 116-20, 130-35); (ix) reviewed over 17,000 documents produced by Defendants totaling over 136,000 pages; (x) deposed Defendants' class certification expert and an employee of SolarEdge concerning the company's document preservation systems; (x) drafted and exchanged mediation statements; (xi) participated in a full-day, in-person mediation session before David Murphy, Esq., an experienced Philips ADR mediator ("Murphy"), and follow-up settlement discussions; and (xii) negotiated the proposed Settlement. The Settlement is, therefore, the result of arm's-length negotiations conducted by informed and experienced counsel, together with a well-respected mediator. *See id.*

2

For these reasons, and those discussed further below, the proposed Settlement meets the standard for preliminary approval and is in the best interests of the Settlement Class.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and omissions covering up SolarEdge's deteriorating business, including assuring investors that demand for SolarEdge's products in Europe, the Company's most important market was strong, when demand was declining, and that channel inventory levels, *i.e.*, products held by distributors to be sold through to end users, were low, when those inventories were saturated.

### A.    Procedural History of the Litigation

#### 1.    The Initial Complaint and the Lead Plaintiff Appointment Process

On November 3, 2023, Daphne Shen filed the initial complaint in this Action, which was then styled as *Shen v. SolarEdge Technologies, Inc., et al.*, No. 1:23-cv-09748-GHW. ECF No. 1; Am. Calandra Decl. ¶3. The Court appointed Amitim and Hachshara as lead plaintiffs in the Action and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. ECF No. 47; Am. Calandra Decl. ¶4.

#### 2.    Lead Counsel's Investigation and the Amended Complaint

Following its appointment, Lead Counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) SolarEdge's regulatory filings, (b) public reports and announcements, research reports prepared by analysts, and news articles concerning Defendants, and (c) other publicly available material related to Defendants; and (2) conducting an extensive investigation (with the aid of a private investigator) that involved, *inter alia*, numerous interviews of former SolarEdge employees. Am. Calandra Decl. ¶5. Lead Counsel also consulted with damages, loss causation,

3

market efficiency, and document preservation experts. *Id.*

On April 22, 2024, Plaintiffs filed their Consolidated Amended Complaint ("First Amended Complaint"). ECF No. 55; Am. Calandra Decl. ¶6. The First Amended Complaint asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. *See id.* The First Amended Complaint alleged, among other things, that during the initial class period (from February 13, 2023 to October 19, 2023), Defendants had misrepresented and/or failed to disclose that (i) the Company had reached financial targets, including obtaining "record" revenues, by forcing customers to take delivery of unneeded products at the end of fiscal quarters; (ii) the Company's "finished goods" inventories (*i.e.*, inventories of completed products available for sale) and its channel inventories (*i.e.*, inventories held by SolarEdge customers that had not been sold through to installers or end users) were skyrocketing because of declining demand and the above-mentioned forcing of customers to take unneeded products; (iii) demand for the Company's products in Europe, its most important region, was declining sharply; and (iv) the Company's projections for "sell-through" (*i.e.*, sales of its products by distributors through to installers and other end users) were inflated and not based on market reports or SolarEdge's own internal data. *See* ECF No. 55, Am. Calandra Decl. ¶7.

### 3.    Defendants' Motion to Dismiss the Amended Complaint

Defendants filed a motion to dismiss the First Amended Complaint on July 15, 2024, with the briefing completed on September 16, 2024. ECF Nos. 65-69; Am. Calandra Decl. ¶8. On December 4, 2024, the Court granted and denied the motion in part, holding that Plaintiffs had sufficiently alleged that statements describing inventory levels as "low" were misleading and made with scienter. *See* Am. Calandra Decl. ¶9 (citing *In re SolarEdge Techs., Inc. Sec. Litig.* ("*SEDG I*"), 2024 WL 4979296, at *4 n.9, 13, 15-16 (S.D.N.Y. Dec. 4, 2024)). The Court further held that

4

Plaintiffs had sufficiently alleged channel stuffing, and thus Defendants had misled investors by attributing (i) revenues to rising energy prices and an expanded product portfolio and (ii) inventory increases to factors other than channel stuffing, but that those statements were not actionable for failure to allege scienter. *See id.* The Court then held that statements concerning demand in Europe and sell-through rates were not sufficiently alleged to be misleading. *See id.* The Court granted Plaintiffs leave to amend. *See id.*

### 4.    Lead Counsel's Further Investigation and Second Amended Complaint

After reviewing *SEDG I*, Lead Counsel reopened its investigation into Defendants' alleged misrepresentations and omissions and  (with the aid of a private investigator) interviewed additional former SolarEdge employees in the United States, Europe, Africa, and the Middle East. Am. Calandra Decl. ¶10. On January 3, 2025, Plaintiffs filed their Second Consolidated Amended Complaint ("SAC"). ECF No. 72; Am. Calandra Decl. ¶11. On February 10, 2025, Defendants moved to Dismiss the Second Amended Complaint. ECF Nos. 76-78; Am. Calandra Decl. ¶12. On February 24, 2025, Plaintiffs filed an opposition to the motion to dismiss. ECF No. 79; Am. Calandra Decl. ¶13. Defendants filed their reply brief on March 3, 2025. ECF Nos. 80; Am. Calandra Decl. ¶13.

On April 6, 2025, the Court again granted and denied in part Defendants' motion and granted Plaintiffs leave to amend. *See* Am. Calandra Decl. ¶14 (citing *In re SolarEdge Techs., Inc. Sec. Litig. ("SEDG II")*, 2025 WL 1031154 (S.D.N.Y. Apr. 6, 2025)). In *SEDG II*, the Court reaffirmed its holdings in *SEDG I*, including that Plaintiffs had sufficiently alleged the existence of channel stuffing, and further held that Defendants had made 18 additional misleading statements to investors with scienter regarding declines in demand in Europe. *See id.* The Court further held that Plaintiffs had failed to allege scienter for statements that were misleading for failing to disclose channel stuffing and dismissed those statements, as well as statements concerning sell-through

5

rates, but granted Plaintiffs leave to file a third amended complaint. *See id.*

On May 6, 2025, Plaintiffs apprised the Court that they would stand on their SAC. *See* ECF No. 82; Am. Calandra Decl. Ex. 15. Defendants filed their answer and affirmative defenses to the SAC on November 11, 2024. ECF No. 86; Am. Calandra Decl. Ex. 15.

### 5.    Request for Letters Rogatory

Plaintiffs moved for issuance of letters of request pursuant to the Hague Convention on January 22. 2026, to obtain documents concerning channel inventory letters and demand for SolarEdge products in Europe from foreign non-parties. ECF Nos. 121-24; Am. Calandra Decl. ¶16. Defendants opposed the motion, and briefing—including associated letter motions for leave to file under seal certain documents—was completed as of February 3, 2026. *See* ECF Nos. 131-37; Am. Calandra Decl. ¶16.

### 6.    Class Certification

Plaintiffs moved for class certification on October 17, 2025 (ECF Nos. 109-112); Defendants opposed the motion; and briefing—including associated letter motions for leave to file under seal certain documents—was completed as of February 20, 2026 (*see* ECF Nos. 140-46). Am. Calandra Decl. ¶17.

### 7.    Mediation

On February 5, 2026, the Parties participated in a full-day in-person mediation session with Mr. Murphy. Am. Calandra Decl. ¶18. Prior to the mediation, the Parties exchanged mediation statements on January 16 and 26, 2026, which addressed issues related to liability, class certification, loss causation, and damages. Am. Calandra Decl. ¶18.

The Parties participated in a full day, in-person mediation session at the offices of Gibson, Dunn & Crutcher LLP in New York. Am. Calandra Decl. ¶19. The Parties did not reach agreement at the mediation, but continued discussions through Mr. Murphy. *Id.* Several weeks after the

mediation session, the Parties reached an agreement in principle to settle the Action, accepting Mr. Murphy's mediator's proposal, of a payment of $55 million for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers. *Id.* The Parties executed a term sheet on March 27, 2026. On March 27, 2026, the parties notified the Court that they had reached a settlement in principle to resolve the Action. *Id.*

**B.      Summary of Key Terms of the Proposed Settlement**

**1.      Relief to Settlement Class Members and Release of Claims**

Defendants agreed to settle the Action for $55 million. Am. Calandra Decl. Ex. A ¶8. The funds will be deposited in an escrow account and held in instruments or accounts backed by the Full Faith & Credit of the U.S. Government. *Id.* ¶11. If the Settlement is approved, none of the funds will revert to Defendants or their insurance carriers. *See id.* ¶13. If the Settlement is not approved, or does not become effective, the funds other than notice and administrative expenses already incurred will revert. *See id.* ¶38.

**2.      Class Notice and Settlement Administration**

**a)      Notice**

Within 14 days of Preliminary Approval, links to the location of the electronic Notice of Pendency and Proposed Settlement of Class Action (the "Long Notice") and Proof of Claim and Release Form ("Claim Form") substantially in the form set forth in Exhibits A-1 and A-2 to the Stipulation will be emailed or, if no email address can be obtained, a Postcard Notice substantially in the form set forth in Exhibit A-4 to the Stipulation will be mailed to each Settlement Class Member identified by records maintained by SolarEdge's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. Am. Calandra Decl., Ex. A to Ex. 1, ¶¶ 13-14. The Postcard Notice will direct Settlement Class Members to the website maintained by the Claims Administrator, Angeion Group, LLC

7

("Angeion"), where they can find the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Claim Form containing directions on how to complete and submit Claim Forms electronically, as well as directions on how to request that a Claim Form and other documents, including the Long Notice, are mailed to them. Am. Calandra Decl., Ex. A-4 to Ex. 1. In addition, a Summary Notice will be published through the internet, since that medium is most frequently accessed by investors and is cost-effective. Am. Calandra Decl., Ex. A to Ex. 1, ¶ 16. The Postcard Notice also describes key terms of the Settlement in plain English (including the Settlement Amount, the release of claims, and the maximum attorneys' fees award and expense reimbursement) and provides the date of the Settlement Hearing, as well as the deadline for filing claims and objecting to, or opting out of, the Settlement.[3] These notice provisions and processes are standard for securities class action settlements. *See* Am. Calandra Decl., Ex. A to Ex. 3 ("Schachter Decl.") ¶¶5-11, 16.

### b)      Settlement Administration

Lead Counsel selected Angeion as the Claims Administrator, to administer the notice program and process claims for the Settlement. Angeion is well known and experienced in the administration of securities fraud class action settlements. *See* Am. Calandra Decl. ¶¶30-33; Schachter Decl. ¶¶4-5.

### 3.      Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Plaintiffs' Compensatory Awards

No later than 35 days before the Settlement Hearing, Lead Counsel will submit papers in

---

[3] It is respectfully requested that the Settlement Hearing be held no earlier than 100 days after entry of the Preliminary Approval Order. This will allow emailing of the Long Notice and Claim Form or the mailing of the Postcard Notice to be commenced within 10 business days; Settlement Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Settlement Class; time for the parties to respond to such objections; and service of notices under the Class Action Fairness Act, 28 U.S.C. § 1715.

support of the Settlement and Plan of Allocation, as well as the request for the awards of attorneys' fees, expenses, and Plaintiffs' compensatory awards. Am. Calandra Decl., Ex. A to Ex. 1, ¶ 28. Those papers will explain why the Settlement should be approved and Lead Counsel's efforts on behalf of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome). No less than 7 days before the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of the Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses, and request for compensatory awards to Plaintiffs. *Id.*

### 4.    Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so by 21 days before the Settlement Hearing and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Ex. A to Ex. 1, ¶¶ 20, 24. Any Settlement Class Member who does not file a timely written objection to the Settlement shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

### 5.    Requests for Exclusion

Any Settlement Class Member who wishes to be excluded from the Settlement must do so by written request including documentation of their transactions, received no later than 21 days before the Settlement Hearing. Am. Calandra Decl., Ex. A to Ex. 1, ¶¶ 20, 24. The request for exclusion must be sent to the Claims Administrator (but not the Court).

### 6.    Termination of the Settlement

SolarEdge has the right to terminate the Settlement if Settlement Class Members owning a previously negotiated threshold amount of SolarEdge common stock elect to be excluded from the Settlement Class. Am. Calandra Decl. Ex 1 ¶36. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless SolarEdge chooses to exercise its termination right or as otherwise directed by the Court. *Id.* In the event the Settlement is not approved, or does

not become final, the parties will return to their positions before the Settlement and the litigation will proceed apace. *Id.*

### 7.    No Admission of Liability

By entering into the Stipulation, Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law or that Plaintiffs or the Settlement Class have been damaged. *Id.* ¶¶42-43.

### III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

A class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[4] Preliminary approval should be granted where "the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for [settlement] purposes." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

   i.    the costs, risks, and delay of trial and appeal;

   ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

   iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

---

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

10

These Rule 23(e)(2) factors do "not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). The following factors that the Second Circuit set out in *City of Detroit v. Grinnell Corp.* to evaluate class action settlements (some of which overlap with Rule 23(e)(2)) are thus still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[5] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974). As set forth below, the Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors and the *Grinnell* factors.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, and Adequate

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases).

Plaintiffs and Lead Counsel satisfy these criteria. *First*, Plaintiffs, like Settlement Class Members, suffered losses as a result of Defendants' allegedly wrongful conduct, and their interest

---

[5] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been sent. Lead Counsel and Lead Plaintiffs will update the Court as to the Settlement Class's reaction in connection with their motion for final approval of the Settlement.

in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See* Am. Calandra Decl. ¶¶3-4; *Patriot*, 828 Fed. Appx. at 764 (finding adequacy where plaintiffs were "motivated to recover as much as possible for each class member"). Plaintiffs also diligently oversaw the litigation, assisted in the investigation of the claims, and communicated with Lead Counsel to discuss case developments, including settlement. *See* Am. Calandra Decl. ¶¶5, 10, 24; *In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (holding "a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness").

*Second*, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests, as explained in the discussion below regarding certification of the Settlement Class. (*See infra* pp. 20-21).

*Third*, Plaintiffs retained counsel that are highly experienced in securities litigation and who have a long and successful record of representing investors in such cases. *See* Am. Calandra Decl. ¶¶22-23 & Ex. 2; *infra* pp. 23-24. Lead Counsel vigorously prosecuted the Settlement Class's claims and were acutely aware of the strengths and weaknesses of the case before settling the action. *See* Am. Calandra Decl. ¶¶24-26; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("great weight" given to counsel's recommendation).

### 2. The Settlement Is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Although the fact that a settlement is negotiated at arm's length no longer gives rise to a presumption of fairness, it does support a settlement's approval. *Moses*, 79 F.4th at 243. Further, a mediator's involvement in settlement negotiations supports the fairness of a settlement. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (involvement of a third-party mediator makes the settlement

12

procedurally fair). Here, as explained above, the parties engaged in mediation with Mr. Murphy. Am. Calandra Decl. ¶¶18-19, 24-26. The arm's-length nature of the negotiations, and the involvement of a mediator with substantial experience in complex securities class actions, support finding the Settlement fair and free of collusion. *Compare* Am. Calandra Decl. ¶¶18-19, 24-26 *with D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Lillien v. Olaplex Holdings, Inc.*, 2025 WL 3050229, at \*2-3 (C.D. Cal. Aug. 8, 2025) (settlement reached as a result of mediation before Mr. Murphy weighs in favor of approval).

### 3. The Settlement Is a Highly Favorable Result for the Class

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Each factor supports preliminary approval.

#### a)      Complexity, Expense and Duration of Litigation

This case involves alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe the claims asserted against Defendants have merit. *See* Am. Calandra Decl. ¶26. They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages. *See id.* Assuming Plaintiffs' claims were certified to proceed as a class action under Rule 23 (and not reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. *See id.* Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *See id.*; *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("[c]ourts favor settlement when litigation is likely to be complex, expensive, or drawn out"). By contrast, the Settlement provides an immediate and substantial recovery for the

13

Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b)      Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *GSE*, 414 F. Supp. 3d at 694. While Lead Counsel believes Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages. Am. Calandra Decl. ¶26.  When compared to the certainty of the significant benefit the Settlement confers, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**<u>Establishing Liability</u>:** The fact that Plaintiffs overcame Defendants' motions to dismiss in part is not a guarantee of ultimate success. Indeed, while the Court sustained certain of Plaintiffs' claims for purposes of Defendants' motion to dismiss, Defendants continued to contest them through the parties' mediation and discovery. Defendants would inevitably raise these issues in an effort to eliminate or limit the scope of the case.

Plaintiffs thus would face ongoing risks associated with Defendants' forthcoming summary judgment motions, motions *in limine*, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. Moreover, while Plaintiffs believe they could demonstrate that Defendants made materially false and misleading statements in violation of the federal securities laws (Am. Calandra Decl. ¶26), Defendants would argue at summary judgment and trial that their alleged statements and omissions were inactionable because they were not material to a reasonable investor, they were contradicted by Defendants own internal documents, and because Defendants publicly warned of the risks at issue or the truth was on the market.

In addition, Defendants would argue that no allegedly false and misleading statements were made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. While Plaintiffs strongly disagree with this assertion, had the litigation continued there is simply no guarantee that the finder of fact would ultimately adopt Plaintiffs' view of the case. *See* Am. Calandra Dec. ¶26. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**Loss Causation and Damages:** Plaintiffs would have also faced the significant risk that Defendants could demonstrate that Plaintiffs' losses were not causally connected to the alleged false and misleading statements. Plaintiffs allege that the truth about SolarEdge's manufacturing issues was revealed over the course of two corrective disclosures: Defendants' initial disclosure of "excess inventory" and "slowing growth" in Europe on August 1, 2023, followed by Defendants' October 19, 2023 disclosure of "unexpected cancellations and pushouts of existing backlog from our European distributors," third quarter revenues, gross margin, and operating income "below the low end of the prior guidance range," and "significantly lower revenues in the fourth quarter of 2023." SAC ¶¶ 197-213. However, Defendants would likely argue that (a) the market was also reacting to the August 1, 2023 revelation of declines in the United States, and (b) that the October 19, 2023 disclosures could not have been corrective because they reiterated the Company's disclosures from August. If Defendants prevailed on these arguments, the amount of recoverable damages could be greatly diminished. Thus, even if Plaintiffs prevailed at trial, that victory would not guarantee the class a larger recovery than the Settlement Amount.

15

c)      **Risks of Maintaining Class Action Status**

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for class certification, no class has been certified, and Plaintiffs are aware there is a risk the Court could disagree. *See* Am. Calandra Decl. ¶17. Then, even if the Court certified the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See id.*; *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Thus, the risks and uncertainty surrounding class certification support approval of the Settlement, as Defendants will certainly oppose class certification given the arguments they asserted in their motion to dismiss. *See GSE*, 414 F. Supp. 3d at 694 ("this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated").

d)      **Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The proposed Settlement provides an all-cash payment of $55,000,000 for the benefit of the Settlement Class. This is a significant recovery in light of the risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory, the maximum potential damages would be approximately $958 million. *See* Am. Calandra Decl. Ex. 4 at ¶¶15-17 (Declaration of Zach Nye ("Nye Decl.")). Conversely, accepting Defendants' assertion that there was no corrective disclosure on August 1, 2023, the maximum potential damages would be approximately $571 million. *Id.*

16

Accordingly, the $55 million Settlement represents a recovery of approximately 5.7% to 9.6% of the maximum recoverable damages, above the median recovery in similarly sized securities class actions. *See id.* For settlements with alleged damages between $500 million and $999 million, the average settlement recovery of damages was 4.3% between 2016 and 2024, and 6.5% in 2025. *See* Am. Calandra Decl., Ex. 5 (Laarni Bulan and Eric Tam, *2025 Review & Analysis, Securities Class Action Settlements* (Cornerstone Research 2025 (Fig. 8)). The recovery the Settlement provides also exceeds those courts in the Second Circuit regularly hold to be reasonable. *See Grinnell,* 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving 5.3% recovery as it "represents a fair deal for the settlement class."); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting average settlements of securities class actions recover on average 3% to 7% of damages). Moreover, the Settlement represents an even higher proportion of damages if Defendants were to succeed in arguing that a large portion of SolarEdge's stock price decline is not attributable to the market's reaction to the August 1, 2023 disclosures.

Finally, based on the gross settlement amount of $55,000,000 and the estimated 26.745 million affected shares, the average gross recovery per share is $2.06. *See* Nye Decl. ¶18. Lead Counsel's intent to seek total fees and maximum expenses[6] in this matter of $15.230 million (including $13.75 million in attorneys' fees; $750,000 in expenses; an award of $230,000 to the Class Representatives; and $500,000 administrative expenses) equates to $0.57 per share. *Id.* ¶19.

---

[6] Pomerantz anticipates that legal expenses and administrative expenses in this action will be less that $750,000 and $500,000, respectively.

Accordingly, the estimated average recovery, after deducting attorneys' fees, expenses, administrative costs, and the Class Representatives award, is approximately $1.49 per share. *Id.* ¶20.

### 4.    Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for insufficiency of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims includes well-established and effective procedures. *See* Schachter Decl. ¶¶6-11. Subject to Court approval, Angeion will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. *See id.* ¶¶6-17. Claims processing, like the method proposed here, is standard in securities class action settlements. *See id.* ¶17. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process.[7] *See* Order Granting Prelim. Approval Class Action Settlement, Approving Form and Manner ¶9, *Lokman v. Azure Power Global Ltd, et al*, 1:22-cv-07432-GHW (S.D.N.Y. Apr. 30, 2023), ECF No. 123; Order Granting Pls.' Am. Mot.

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶ 13.

Prelim. Approval Class Action Settlement ¶19, *In re Tufin Software Tech. Ltd. Sec. Litig.*, No. 1:20-cv-5656-GHW (S.D.N.Y. Aug. 10, 2023), ECF No. 111.

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 25% to compensate them for the services they have rendered on behalf of the Settlement Class. *See, e.g.*, Am. Calandra Decl. Ex. A-1 to Ex. 1 at 2. A proposed attorneys' fee of up to 25% of the Settlement Fund (which includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained, as well as less than awards that are routinely awarded in similar complex class actions. *See Lea,* 2021 WL 5578665, at *12 ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit.") (citing cases); *In Re Chicago Bridge & Iron Company N.V. Sec. Litig.*, 1:17-CV-1580 (S.D.N.Y.) (Schofield, J.), ECF No. 446 (request for 33 1/3% was "reasonable and appropriate"); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("request [for 33.33%] falls comfortably within the range of fees typically awarded in securities class actions") More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, which may not be terminated based on a ruling with respect to attorneys' fees. *See* Stipulation ¶ 18. Plaintiffs will also seek an award of no more than $230,000 in the aggregate to reimburse Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

**Rule 23(e)(2)(C)(iv):** The parties have entered into a confidential agreement that establishes certain conditions under which SolarEdge may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of SolarEdge's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. *See* Stipulation ¶ 36. "This type of agreement is standard in securities class action

19

settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*15 (S.D.N.Y. Oct. 16, 2019). The parties will produce this supplemental agreement for the Court's review, if requested. *See* Stipulation ¶ 36.

### 5. The Plan of Allocation Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on pages 7-12 of the proposed Long Notice (Ex. A-1 to Ex. 1 of the Am. Calandra Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Nye Decl.[8] ¶¶21-24. The Plan does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the revelation of the alleged truth. *See id.*; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See id.* Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

---

[8] The proposed Plan of Allocation has been revised from the plan of allocation submitted with Plaintiffs' initial motion for preliminary approval because the original plan of allocation only compensated Settlement Class Members who purchased SolarEdge common stock before either of two disclosure dates: August 2, 2023 and October 19, 2023. The revised proposed Plan of Allocation reflects a more inclusive method for allocating the Net Settlement Fund among Settlement Class Members because it compensates purchasers based on the timing of purchases after the August 2, 2023 disclosure and before the October 19, 2023 disclosure when the truth about Defendants' alleged misrepresentations was being absorbed by the market. Am. Calandra Decl. ¶36; *see* Nye Decl. ¶¶21-24.

6.      **The Remaining *Grinnell* Factors Support Preliminary Approval**

*Grinnell* also outlined several factors that are not co-extensive with Rule 23(e)(2). These factors further support preliminary approval of the Settlement.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Plaintiffs and Lead Counsel conducted an extensive investigation into the allegations here; the parties submitted substantial briefing relating to the motion to dismiss the Amended Complaint, request for leave to amend, and motions to dismiss the SAC; the parties commenced written discovery; Plaintiffs filed their class certification pre-motion letter; and they exchanged detailed mediation briefs. *See* Am Calandra Decl. ¶¶5-16, 24.

**The Ability of Defendants to Withstand a Greater Judgment:** Although Defendants have D&O insurance that may potentially contribute towards a settlement of this action (*see* Am. Calandra Decl. ¶18), "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

B.      **Certification of the Settlement Class for Settlement Purposes Is Appropriate**

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy the requirements of Fed. R. Civ. P. 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns

21

of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation ¶ 2. Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation for settlement purposes. The Settlement Class comprises "all persons who purchased or otherwise acquired SolarEdge common stock between February 13, 2023 and October 19, 2023, inclusive," subject to certain exceptions for those related to Defendants and those that exclude themselves from the Settlement. *Id.* ¶¶ 1(f), 1(gg). As set forth below, the proposed Settlement Class satisfies all applicable requirements of Rule 23(a) and 23(b)(3).

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

#### a)    Numerosity

The first element of the class certification standard requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In securities fraud class actions relating to publicly traded corporations, numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class consists of purchasers of SolarEdge common stock. Millions of SolarEdge shares traded during the relevant period, and the stock actively traded on the NASDAQ. *See* SAC ¶¶ 25, 28, 217; Am. Calandra Decl. ¶7. The number of Settlement Class Members is therefore likely to be at least in the thousands and is thus sufficiently numerous.

#### b)    Commonality

Securities fraud cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions."

22

*In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, questions of law and fact regarding Plaintiffs' claims are common to the Settlement Class, including whether Defendants' representations were materially misleading and made with scienter. These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's or class member's identity. Commonality is therefore met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

### c)    Typicality

Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welf. Fund v. Merck-Medco Mngd. Care*, 504 F.3d 229, 245 (2d Cir. 2007). Plaintiffs' claims are typical of the Settlement Class because they are based on the same set of alleged misrepresentations and omissions that apply to the Settlement Class as a whole. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002).

### d)    Adequacy

As explained in Sec. IV.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives. *First*, Plaintiffs and Settlement Class Members purchased or otherwise acquired SolarEdge common stock on an open market, during the Settlement Class Period, and they were all injured by the Defendants' allegedly materially false statements and omissions. Am. Calandra Decl. ¶¶3-4. Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their losses. *See id.* ¶¶3-5, 10, 24. *Patriot*, 828 Fed. Appx. at 764. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). *Second*, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Pomerantz

23

LLP has extensive experience and a stellar reputation in the field of class action and securities litigation.").

## 2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Settlement Class satisfies these requirements.

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has explained that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625. Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class. These questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

Furthermore, "manageability concerns" relevant to the predominance inquiry "do not stand in the way of certifying a settlement class." *In re AIG*, 689 F.3d at 242. That is because "the predominance requirement differs between trial and settlement" in that "with a settlement class, the manageability concerns posed by numerous individual questions [] disappear." *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (citing *In re AIG*, 689 F.3d at 241); *see also Amchem*, 521 U.S. at 593 (whether trial would present management problems is not a consideration when settlement-only certification is requested "for the proposal is that there be no trial").

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be

24

considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities class actions easily satisfy the superiority requirement, because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, "would have no realistic day in court if a class action were not available." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985). It is also desirable to concentrate claims in this Court as it is already familiar with the issues in the case. Finally, because this request is for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *In re AIG*, 689 F.3d at 242.

### 3. Lead Counsel Should Be Appointed Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Pomerantz was appointed to serve as Lead Counsel on February 8, 2024 and has vigorously prosecuted the action on behalf of Plaintiffs and the Settlement Class. Am. Calandra Decl. ¶¶4-5, 10, 24-26. Indeed, Lead Counsel has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. *See id.* Moreover,

25

Lead Counsel is highly experienced and has secured recoveries for investors in numerous securities class action litigation in which they worked together. *See* Am. Calandra Decl. ¶23 & Ex. 2; *see also, e.g,, Pirnik v. Fiat Chrysler Automobiles N.V. et al.,* No. 1:15-cv-07199-JMF (S.D.N.Y); *Menaldi v. Och-Ziff Capital Management Group LLC et al.,* No. 1:14-cv-03251-JPO (S.D.N.Y.); *In re Blue Apron Holdings, Inc. Securities Litigation*, No. 1:17-cv-04846-NGG-PK (E.D.N.Y.). For these reasons, among others, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.

### 4.    The Court Should Approve the Proposed Form and Method of Notice

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

Here, the proposed Notice provides detailed information concerning: (1) the proposed Settlement; (2) the rights of Settlement Class Members, including the manner in which objections can be lodged; (3) the nature, history, and progress of the litigation; (4) how to file a Claim Form; (5) the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead Counsel; and (7) necessary information to examine Court records. Stipulation, Exs. A-1, A-3, and A-4.

The proposed Notice also informs Settlement Class Members how to request exclusion

26

from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for the Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. *Id.*; 15 U.S.C. § 78u-4(a)(7).

The Amended Proposed Preliminary Approval Order, Ex. A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by either emailing links of the Long Notice and Claim Form or by mailing the Postcard Notice by first-class mail to Settlement Class Members who can be identified with reasonable effort. Am. Calandra Decl., Ex. A to Ex. 1, ¶13. The Postcard Notice describes key information about the Settlement and directs Settlement Class Members to the Settlement website, where they can find the Long Notice, the Stipulation and exhibits, the Preliminary Approval Order, and the Claim Form, as well as a description of other ways Settlement Class Members can obtain Settlement documents. Am. Calandra Decl., Ex. A-4 to Ex. 1. Additionally, the Summary Notice will be published once in *PR Newswire*. Am. Calandra Decl., Ex. A to Ex. 1, ¶ 16.

As set forth in the Schachter Declaration, this notice process is standard for securities class action settlements (*see* Am. Calandra Decl., Ex. A to Ex. 3 ("Schachter Decl.") ¶¶5-11, 16) and has been previously approved by this Court and its sister courts, *see* Order ¶9, *Lokman*, 1:22-cv-07432-GHW, ECF No. 123; Order ¶19, *Tufin*, No. 1:20-cv-5656-GHW, ECF No. 111; *see also Advanced Battery*, 298 F.R.D. 171 at 182 n.3 ("[t]he use of a combination of a mailed post card

27

directing class members to a more detailed online notice[,] has been approved by courts").

Accordingly, this proposed program for dissemination of notice to potential Settlement Class

Members is "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections," *Mullane v.*

*Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950), and the form and manner of providing

notice to Settlement Class Members are therefore the best practicable under the circumstances and

satisfy due process, Rule 23, and the PSLRA.

## V.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement

Hearing, as set forth in the Amended Proposed Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing | No earlier than one hundred (100) calendar days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 5) |
| Emailing of links to the location of the electronic Long Notice and Claim Form or Mailing of the Postcard Notice | No later than fourteen (14) business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 13) (the "Notice Date") |
| Publication of Summary Notice | No later than fourteen (14) business days after the entry of Preliminary Approval Order (Preliminary Approval Order ¶ 16) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than thirty-five (35) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 28) |
| Filing deadline for requests for exclusion | No later than twenty-one (21) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 20) |
| Filing deadline for objections | No later than twenty-one (21) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 24) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 28) |

| Date for Claims to be Filed | Electronically submitted or postmarked no later than seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 17(a)) |
|---|---|

## VI.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant preliminary

approval of the Settlement.

DATED: April 30, 2026                                         Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brian Calandra*
Brian Calandra
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: bcalandra@pomlaw.com
E-mail: jalieberman@pomlaw.com

*Counsel for Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., the Hadassah Workers Pension Fund Ltd., and Hachshara Insurance Company Ltd., Named Plaintiff Javier Alcides Cascallar, and the Class*

29

**<u>WORD COUNT CERTIFICATE</u>**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing document contains 9,126 words, excluding the exempted portions, and that it complies with the appliable word count limitation.

*/s/ Brian Calandra*
Brian Calandra
