**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SOLAREDGE TECHNOLOGIES, INC. SECURITIES LITIGATION | No. 1:23-cv-09748-GHW |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**AMENDED DECLARATION OF BRIAN CALANDRA IN**
**SUPPORT OF PLAINTIFFS' AMENDED UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, BRIAN CALANDRA, declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a Partner of the law firm of Pomerantz LLP ("Pomerantz" or "Lead Counsel"), which is court-appointed Lead Counsel for Lead Plaintiffs Mivtachim the Workers Social Insurance Fund Ltd., Keren Hgimlaot Hmerkazit Histadrut Central Pension Fund Ltd., Kerren Makefet Pension and Provident Center Cooperative Society Ltd., and the Hadassah Workers Pension Fund Ltd. (collectively, "Amitim"), and Hachshara Insurance Company Ltd. ("Hachshara"), and Named Plaintiff Javier Alcides Cascallar ("Cascallar," and, together with Amitim and Hachshara, "Plaintiffs"). I am admitted to practice before this Court.

2.      I respectfully submit this declaration in support of Plaintiffs' Amended Unopposed Motion to (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to potential Settlement Class Members; (iii) certify the Class for settlement purposes; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters (the "Amended Preliminary Approval Motion"). I have personal knowledge of the statements herein and, if called upon as a witness, could and would competently testify thereto.

## I.      PROCEDURAL HISTORY OF THE LITIGATION

3.      On November 3, 2023, Daphne Shen filed the initial complaint in this Action, which was then styled as *Shen v. SolarEdge Technologies, Inc., et al.*, No. 1:23-cv-09748-GHW. ECF No. 1. On December 13, 2023, Cascallar filed a complaint alleging substantively the same claims as the complaint as *Shen*, captioned *Cascallar v. SolarEdge Technologies, Inc.*, No. 1:23-cv-10847-GHW (S.D.N.Y. Dc. 13, 2023), ECF No. 1. Concurrently with his complaint, Cascallar filed a certification attesting that he had purchased SolarEdge common stock and been damaged as a result of Defendants' alleged violations of the federal securities laws. *See id.*, ECF No. 1-1.

4.      On January 2, 2024, Amitim and Hachshara jointly filed a motion to be appointed lead plaintiffs in this Action. ECF No. 34. As part of that motion Amitim and Hachshara each filed certifications attesting that they had purchased SolarEdge common stock and been damaged as a result of Defendants' alleged violations of the federal securities laws. *See* ECF No. 34-3. On February 8, 2024, the Court appointed Amitim and Hachshara as lead plaintiffs in the Action and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. ECF No. 47.

5.      Following its appointment, Pomerantz investigated Defendants' allegedly wrongful acts. Each of the Plaintiffs oversaw Pomerantz's investigation. *See* ECF Nos. 111-2 ¶11 (describing Amitim's oversight of the Action), 111-3 ¶11 (describing Hachshara's oversight of the Action), 111-4 ¶10 (describing Cascallar's oversight of the Action). Pomerantz's investigation included, among other things:

      a.  reviewing and analyzing (a) SolarEdge's regulatory filings, (b) public reports and announcements, research reports prepared by analysts, and news articles concerning Defendants, and (c) other publicly available material related to Defendants;

      b.  conducting an extensive investigation (with the aid of a private investigator) that involved, *inter alia*, numerous interviews of former SolarEdge employees; and

      c.  consulting with damages, loss causation, market efficiency, and document preservation experts.

6.      On April 22, 2024, Plaintiffs filed their Consolidated Amended Complaint ("First Amended Complaint"). ECF No. 55. The First Amended Complaint asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and

Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act.

7. The First Amended Complaint alleged, among other things, that during the initial class period (from February 13, 2023 to October 19, 2023), when millions of SolarEdge shares were actively traded on the NASDAQ, Defendants had misrepresented and/or failed to disclose that (i) the Company had reached financial targets, including obtaining "record" revenues, by forcing customers to take delivery of unneeded products at the end of fiscal quarters; (ii) the Company's "finished goods" inventories (*i.e.*, inventories of completed products available for sale) and its channel inventories (*i.e.*, inventories held by SolarEdge customers that had not been sold through to installers or end users) were skyrocketing because of declining demand and the above-mentioned forcing of customers to take unneeded products; (iii) demand for the Company's products in Europe, its most important region, was declining sharply; and (iv) the Company's projections for "sell-through" (*i.e.*, sales of its products by distributors through to installers and other end users) were inflated and not based on market reports or SolarEdge's own internal data.

8. Defendants filed a motion to dismiss the First Amended Complaint on July 15, 2024, with the briefing completed on September 16, 2024. ECF Nos. 65-69.

9. On December 4, 2024, the Court granted and denied the motion in part, holding that Plaintiffs had sufficiently alleged that statements describing inventory levels as "low" were misleading and made with scienter. *See In re SolarEdge Techs., Inc. Sec. Litig.* ("*SEDG I*"), 2024 WL 4979296, at *4 n.9, 13, 15-16 (S.D.N.Y. Dec. 4, 2024). The Court further held that Plaintiffs had sufficiently alleged channel stuffing, and thus Defendants had misled investors by attributing (i) revenues to rising energy prices and an expanded product portfolio and (ii) inventory increases to factors other than channel stuffing, but that those statements were not actionable for failure to

allege scienter. *See id.* at 13-21, 23-26.The Court then held that statements concerning demand in Europe and sell-through rates were not sufficiently alleged to be misleading. *See id.* at 19-22. The Court granted Plaintiffs leave to amend. *Id.* at 29.

10. After reviewing *SEDG I*, Pomerantz reopened its investigation into Defendants' alleged misrepresentations and omissions and (with the aid of a private investigator) interviewed additional former SolarEdge employees in the United States, Europe, Africa, and the Middle East. Each of the Plaintiffs oversaw Pomerantz's investigation. *See* ECF Nos. 111-2 ¶11, 111-3 ¶11, 111-4 ¶10.

11. On January 3, 2025, Plaintiffs filed their Second Consolidated Amended Complaint ("SAC"). ECF No. 72.

12. On February 10, 2025, Defendants moved to Dismiss the Second Amended Complaint. ECF Nos. 76-78. On February 24, 2025,

13. Plaintiffs filed an opposition to the motion to dismiss. ECF No. 79. Defendants filed their reply brief on March 3, 2025. ECF Nos. 80.

14. On April 6, 2025, the Court again granted and denied in part Defendants' motion and granted Plaintiffs leave to amend. *See In re SolarEdge Techs., Inc. Sec. Litig. ("SEDG II")*, 2025 WL 1031154 (S.D.N.Y. Apr. 6, 2025. In *SEDG II*, the Court reaffirmed its holdings in *SEDG I*, including that Plaintiffs had sufficiently alleged the existence of channel stuffing, and further held that Defendants had made 18 additional misleading statements to investors with scienter regarding declines in demand in Europe. *See id.* at 16-17, 22-24. The Court further held that Plaintiffs had failed to allege scienter for statements that were misleading for failing to disclose channel stuffing and dismissed those statements, as well as statements concerning sell-through rates, but granted Plaintiffs leave to file a third amended complaint. *See id.* at 17-21, 25.

5

15.     On May 6, 2025, Plaintiffs apprised the Court that they would stand on their SAC. *See* ECF No. 82. Defendants filed their answer and affirmative defenses to the SAC on November 11, 2024. ECF No. 86.

16.     Plaintiffs moved for issuance of letters of request pursuant to the Hague Convention on January 22. 2026, to obtain documents concerning channel inventory letters and demand for SolarEdge products in Europe from foreign non-parties. ECF Nos. 121-24. Defendants opposed the motion, and briefing—including associated letter motions for leave to file under seal certain documents—was completed as of February 3, 2026. *See* ECF Nos. 131-37.

17.     Plaintiffs moved for class certification on October 17, 2025. ECF Nos. 109-112. Defendants opposed the motion, and briefing—including associated letter motions for leave to file under seal certain documents—was completed as of February 20, 2026. *See* ECF Nos. 140-46. Although Plaintiffs and Pomerantz are confident that the Settlement Class meets the requirements for class certification, they are aware that there is a risk the motion could be denied or that the class could be decertified at a later stage of the proceeding.

18.     On February 5, 2026, the Parties and certain providers of D&O insurance to Defendants participated in a full-day in-person mediation session with David Murphy of Philips ADR ("Murphy"). Prior to the mediation, the Parties exchanged mediation statements on January 16 and 26, 2026, which addressed issues related to liability, class certification, loss causation, and damages.

19.     The Parties participated in a full day, in-person mediation session at the offices of Gibson, Dunn & Crutcher LLP in New York. The Parties did not reach agreement at the mediation, but continued discussions through Mr. Murphy. Several weeks after the mediation session, the Parties reached an agreement in principle to settle the Action, accepting Mr. Murphy's mediator's

6

proposal, of a payment of $55 million for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers. The Parties executed a term sheet on March 27, 2026. On March 27, 2026, the parties notified the Court that they had reached a settlement in principle to resolve the Action.

## II.    STIPULATION OF SETTLEMENT

20.    Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation of Settlement, dated as of April 21, 2026 ("Stipulation"). The exhibits to the Stipulation are as follows:

  a. Exhibit A: [Proposed] Order Granting Preliminarily Approval of Class Action Settlement.

  b. Exhibit A-1: Notice of Pendency and Proposed Settlement of Class Action.

  c. Exhibit A-2: Proof of Claim and Release Form.

  d. Exhibit A-3: Summary Notice of Pendency and Proposed Class Action Settlement.

  e. Exhibit A-4: Postcard Notice.

  f. Exhibit B: [Proposed] Final Order and Judgment.

21.    Defendants agreed to settle the Action for $55 million. Ex. A ¶8. The funds will be deposited in an escrow account and held in instruments or accounts backed by the Full Faith & Credit of the U.S. Government. *Id.* ¶11. If the Settlement is approved, none of the funds will revert to Defendants or their insurance carriers. *See id.* ¶13. If the Settlement is not approved, or does not become effective, the funds other than notice and administrative expenses already incurred will revert. *See id.* ¶38.

## III.    STANDING AND EXPERIENCE OF COUNSEL

22.     Attached as **<u>Exhibit 2</u>** is a true and correct copy of the firm resume of Pomerantz.

23.     As reflected in Exhibit 2, Pomerantz is an exceptionally experienced securities class action firm that has recovered billions of dollars for its clients in some of the largest and most complex securities class actions. In this District and others, Pomerantz has recovered hundreds of millions of dollars for investors, including the fifth-largest securities class action settlement achieved in the United States—a $2.95 billion settlement in a securities class action against Petroleo Brasileiro S.A. and other defendants (*In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y)); a $172.5 million settlement in a securities class action against Danaher Corporation (*Hawkins v. Danaher Corporation, et al.*, No. 1:23-cv-02055 (AHA) (D.D.C.); a $74 million settlement in a securities class action against Arconic (*Howard v. Arconic. et al.*, No. 2:17-cv-01057 (W.D. Pa.); a $135 million recovery in a securities class action in an insider trading case against S.A.C. Capital Advisors LP (*Kaplan v. S.A.C. Capital Advisors, LP*, No. 12-cv-9350 (S.D.N.Y.); a $225 million settlement in a securities class action against Comverse Technology, Inc. (*In re Comverse Technology, Inc. Sec. Litig.*, No. 06-cv-1825 (E.D.N.Y.)); *see also Karimi v. Deutsche Bank AG,* No. 1:22-cv-02854 (S.D.N.Y.) (a $26.25 million settlement in a securities class action); *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373 (N.D. Cal.) (a $80 million settlement in a securities class action).

24.     Since the inception of this litigation, Pomerantz has vigorously prosecuted this action under the oversight and for the benefit of Plaintiffs (*see* ECF Nos. 111-2 ¶11, 111-3 ¶11, 111-4 ¶10), and for the benefit of the Settlement Class. Pomerantz's efforts included, among other things, (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed an 80-page Amended Complaint (ECF No. 55); (iii) successfully defeated in part Defendants' motion to dismiss the Amended Complaint (ECF Nos. 70); (iv) drafted and filed

an 86-page Second Amended Complaint (ECF No. 72); (v) successfully defeated in part Defendants' motion to dismiss the Second Amended Complaint, substantially expanding the scope of the Action (ECF No. 81); (vi) drafted and served party discovery requests and responses; (vii) drafted discovery requests to be served on overseas third-parties and fully briefed a contested motion seeking permission serve those requests through the Hague Convention (ECF Nos. 121-37; (viii) fully briefed a motion for class certification (ECF Nos. 109-12, 116-20, 130-35); (ix) reviewed over 17,000 documents produced by Defendants totaling over 136,000 pages; (x) deposed Defendants' class certification expert and an employee of SolarEdge concerning the company's document preservation systems; (xi) drafted and exchanged mediation statements on January 16 and 26, 2026; (xii) participated in a full-day, in-person mediation session before Murphy, an experienced Philips ADR mediator, and follow-up settlement discussions; and (xii) negotiated the proposed Settlement.

25.     This Settlement was the result of serious negotiations between the Parties. The negotiations began eight months after discovery commenced when the Parties engaged in an all-day mediation on February 5, 2026, before Murphy. That mediation session was ultimately unsuccessful, and the Parties continued to engage in written discovery. Concurrently, however, the Parties continued to hold multiple follow up rounds of discussions and negotiations over the ensuing weeks through Murphy.

26.     In late March 2026, after Plaintiffs' motion for class certification was fully briefed, Defendants had deposed each of the Plaintiffs individually or through a representative, and Plaintiffs had deposed one employee of Defendants, Murphy made a mediator's proposal to both Parties of terms on which to settle this Action. On March 27, 2026 the Parties accepted the terms of Murphy's proposal, executed a term sheet, and notified the Court that they had reached a

settlement in principle to resolve the Action. Plaintiffs and Pomerantz strongly believe the claims asserted against Defendants have merit. Plaintiffs and Pomerantz acknowledge, however, that there are substantial risks to their claims in the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, including in obtaining class certification and discovery from overseas entities, as well as in establishing liability, loss causation, and damages, and thus believe that the settlement is in the best interests of Settlement Class Members. Indeed, were the litigation to continue, any potential recovery would occur years from now, substantially delaying payment to the Settlement Class.

## IV.    COURT REVIEW OF DESIGNATION OF A BENEFICIARY OF THE RESIDUAL NET SETTLEMENT FUND

27.    On April 23, 2026, the Court ordered that Plaintiffs' initial motion for preliminary approval of the Settlement (ECF Nos. 151-53) be amended to include, among other things, supporting affidavits, and ordered that "Plaintiffs clarify whether they expect that their designation of a beneficiary of the residual fund will be subject to Court review." ECF No. 155 at 2 ("April 23 Order").

28.    Should this Court grant final approval of the Settlement, Plaintiffs and the Claims Administrator will process claims submitted by potential Settlement Class Members. Once this process is complete, Plaintiffs will file a motion for distribution with the Court with a proposed order seeking approval to distribute the Net Settlement Funds to Settlement Class Members who submitted valid claims. The proposed distribution order will designate a beneficiary of the residual Net Settlement Fund and ask the Court to approve that beneficiary. Plaintiffs will not distribute any residual Net Settlement Fund without the Court's approval of the beneficiary.

10

29. To clarify this process, Plaintiffs have filed an Amended Proposed Order and Final Judgment with the Amended Preliminary Approval Motion that states in Paragraph 26 (italicized text indicates revisions in response to the April 23 Order):

> **Retention of Jurisdiction**. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (i) implementation of the Settlement; (ii) the allowance, disallowance, or adjustment of any Settlement Class Member's Claim on equitable grounds and any award or distribution of the Settlement Fund; (iii) disposition of the Settlement Fund; (iv) any applications for attorneys' fees, costs, interest, and payment of Litigation Expenses in the Action; (v) all Parties for the purpose of construing, enforcing, and administering the Settlement and this Judgment; and (vi) other matters related or ancillary to the foregoing, *until such time as the funds are distributed pursuant to a further order of the Court*.

## V.    RETENTION OF ANGEION GROUP, LLC & STANFORD CONSULTING GROUP, INC.

30. In connection with Plaintiffs' Amended Motion for Preliminary Approval of the Settlement, Pomerantz requests that the Court approve the retention of Angeion Group, LLC ("Angeion"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions, to provide notice and claims administration services in the Action under the supervision of Pomerantz. These services will include disseminating notice of the Settlement to potential Settlement Class Members, receiving requests for exclusion from the Settlement Class, receiving and processing of Claim Forms, calculating payment amounts for eligible Claimants under the Court-approved plan of allocation, distributing payments to eligible Claimants, and responding to Settlement Class Member inquiries.

31. Pomerantz selected Angeion after a "request for proposal" process in which Pomerantz solicited proposals for notice and administration services from four experienced settlement administration firms. Angeion's proposed fees and cost structures resulted in the lowest estimated total cost of the four bids received. In addition, based on their prior experience with

Angeion, Pomerantz believes Angeion possesses the requisite experience and capacity to perform its duties reliably and competently. Accordingly, Pomerantz has selected Angeion to serve as Claims Administrator for this engagement, subject to the Court's approval.

*32.* Angeion has successfully administered numerous complex securities class action settlements before this Court, in this District, and elsewhere. *See*, *e.g.*, *In re: Applied Therapeutics Sec. Litig.*, 1:24-cv-09715-DLC (S.D.N.Y.); *Lokman v. Azure Power Global Ltd, et al*, 1:22-cv-07432-GHW (S.D.N.Y.); *Altimeo Asset Management v. Qihoo 360 Technology Co Ltd. et al*, 1:19-cv-10067-PAE (S.D.N.Y.). A copy of Angeion's resume is attached as Exhibit A to the Declaration of Eric Schachter, Executive Vice President of Angeion ("Schachter Declaration"). The Schachter Declaration is attached hereto as **Exhibit 3**.

33. As set forth in the Schachter Declaration, the proposed notice plan uses customary procedures designed to provide notification to all investors that are Settlement Class Members and can be identified with reasonable effort. *See* Schacter Decl. ¶¶6-11. These notice provisions and processes are standard for securities class action settlements. *See id.* ¶17.

34. Similarly, as set forth in the Schachter Declaration, the proposed plan for obtaining, reviewing, processing, and accepting or rejecting proofs of claim from potential class members is standard for securities class action settlements. *See id.* ¶¶12-17.

35. Attached as **Exhibit 4** is a true and correct copy of the declaration of Zachary Nye, Ph.D. of Stanford Consulting Group, Inc. regarding the development of the Plan of Allocation, the calculation of Recognized Loss, and the calculation of damages in this Action ("Nye Declaration").

36. The proposed Plan of Allocation has been revised from the plan of allocation submitted with Plaintiffs' initial motion for preliminary approval because the original plan of allocation only compensated Settlement Class Members who purchased SolarEdge common stock

before either of two disclosure dates: August 2, 2023 and October 19, 2023. The revised proposed Plan of Allocation reflects a more inclusive method for allocating the Net Settlement Fund among Settlement Class Members because it compensates purchasers based on the timing of purchases after the August 2, 2023 disclosure and before the October 19, 2023 disclosure when the truth about Defendants' alleged misrepresentations was being absorbed by the market. *See* Nye Decl. ¶¶21-24.

37.      Attached hereto as **Exhibit 5** is a true and correct copy of a report by Cornerstone Research, authored by Laarni Bulan and Eric Tam, titled *2025 Review & Analysis, Securities Class Action Settlements* (2026).

I declare, under penalty of perjury, that the foregoing is true and correct to the best of our knowledge.

Executed this 30th day of April, 2026.

/s/ Brian Calandra
Brian Calandra
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: bcalandra@pomlaw.com